## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

_____
                                        )
In re:                                  )      Chapter 11
                                        )
Perkins & Marie Callender's, LLC, *et al.*,[1]   )      Case No. 19-11743 (KG)
                                        )
                                        )      (Jointly Administered)
            Debtors.                    )
_____ )

## INITIAL MONTHLY OPERATING REPORT

File report and attachments with Court and submit copy to United States Trustee within 15 days after order for relief.

Certificates of insurance must name United States Trustee as a party to be notified in the event of policy cancellation. Bank accounts and checks must bear the name of the debtor, the case number, and the designation "Debtor in Possession." Examples of acceptable evidence of Debtor in Possession Bank accounts include voided checks, copy of bank deposit agreement/certificate of authority, signature card, and/or corporate checking resolution.

| REQUIRED DOCUMENTS | Document Attached | Explanation Attached |
|---|---|---|
| **12-Month Cash Flow Projection (Form IR-1)** | Exhibit A | SEE NOTE 1 |
| **Certificates of Insurance:** | Exhibit B | |
| Workers Compensation | | |
| Property | | |
| General Liability | | |
| Vehicle | | |
| Other: | | |
| Identify areas of self-insurance with liability caps | | |
| **Evidence of Debtor in Possession Bank Accounts** | Exhibit C | SEE NOTE 2 |
| Tax Escrow Account | | |
| General Operating Account | | |
| Money Market Account Pursuant to Local Rule 4001-3 for the District of Delaware *only*. Refer to: http://www.deb.uscourts.gov | | |
| Other: | | |
| **Retainers Paid (Form IR-2)** | Exhibit D | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached are true and correct to the best of my knowledge and belief.

_____*/s/ Jeffrey D. Warne*_____          August 21, 2019_____
Signature of Authorized Individual*       Date


_____Jeffrey D. Warne_____          President and Chief Executive Officer
Printed Name of Authorized Individual     Title of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor is a partnership; a manager or member if debtor is a limited liability company.

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225). The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

**NOTE 1:**    In lieu of a 12-month cash flow projection, a copy of the approved budget attached as Exhibit 1 to the *Interim Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. 58], is attached hereto as **Exhibit A**.

**NOTE 2:**    Please refer to the *Motion of Debtors for Interim and Final Orders ((I) Authorizing Continued Use of the Debtors' Existing Cash Management System and Bank Accounts; (II) Authorizing Continued Performance of Intercompany Transactions; (III) Waiving Certain United States Trustee Requirements; and (IV) Granting Related Relief* [Docket No. 8] (the "**Cash Management Motion**") and the *Interim Order (I) Authorizing Continued Use of the Debtors' Existing Cash Management System and Bank Accounts; (II) Authorizing Continued Performance of Intercompany Transactions; (III) Waiving Certain United States Trustee Requirements; and (IV) Granting Related Relief* [Docket No. 56] (the "**Interim Cash Management Order**").  Copies of the Cash Management Motion and the Interim Cash Management Order are attached hereto as **Exhibit C**.

# EXHIBIT A

## Cash Flow Projections

Form IR (4/07)

**PERKINS & MARIE CALLENDER'S**
Weekly Cash Flow
*DIP Budget*

| ($ in Thousands) | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | |
|---|---|---|---|---|---|---|---|---|---|---|
| Year: | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | 2019 | |
| Week Ending (Friday): | 9-Aug | 16-Aug | 23-Aug | 30-Aug | 6-Sep | 13-Sep | 20-Sep | 27-Sep | 4-Oct | Total |
| **CASH FLOW** | | | | | | | | | | |
| Company Owned – Perkins | $ 4,141 | $ 3,774 | $ 3,741 | $ 3,695 | $ 3,726 | $ 3,715 | $ 3,578 | $ 3,734 | $ 3,856 | 33,960 |
| Company Owned – Marie Callender's | 600 | 204 | 211 | 206 | 206 | 205 | 214 | 234 | 239 | 2,320 |
| Franchise | 553 | 331 | 331 | 539 | 530 | 345 | 345 | 535 | 535 | 4,046 |
| Foxtail | 738 | 688 | 676 | 790 | 790 | 688 | 658 | 658 | 658 | 6,343 |
| Other | 7 | 4 | 3 | 6 | 0 | 6 | (2) | 38 | 4 | 65 |
| Total Operating Receipts | $ 6,039 | $ 5,002 | $ 4,962 | $ 5,237 | $ 5,253 | $ 4,959 | $ 4,792 | $ 5,197 | $ 5,292 | $ 46,733 |
| Vendor Payments | (2,028) | (3,031) | (2,442) | (3,413) | (2,052) | (2,305) | (2,323) | (2,257) | (2,302) | (22,154) |
| Payroll & Benefits | (2,690) | (2,210) | (2,220) | (2,199) | (2,194) | (2,210) | (2,162) | (2,194) | (2,206) | (20,284) |
| Occupancy | (85) | - | - | (1,492) | - | - | - | - | (1,493) | (3,069) |
| Utilities | (227) | (217) | (217) | (217) | (217) | (202) | (202) | (202) | (202) | (1,902) |
| Sales Tax | (134) | (119) | (1,104) | (98) | (52) | (96) | (758) | (163) | (45) | (2,569) |
| Insurance | (50) | (50) | (50) | (133) | (50) | (50) | (50) | (50) | (133) | (615) |
| Other | (947) | (37) | (37) | (37) | (904) | (37) | (37) | (37) | (37) | (2,110) |
| Total Operating Disbursements | $ (6,161) | $ (5,664) | $ (6,069) | $ (7,589) | $ (5,469) | $ (4,900) | $ (5,532) | $ (4,903) | $ (6,416) | $ (52,703) |
| Interest & Fees | (216) | - | - | (10) | - | - | - | (47) | - | (274) |
| Bank Fees | (212) | - | - | - | (12) | - | - | - | (12) | (236) |
| Professional Fees | - | - | - | (83) | - | - | - | (80) | - | (163) |
| Other | (352) | (3) | - | - | (64) | - | - | - | - | (418) |
| Non-Debtor Net Cash Flow (1) | (32) | 5 | - | - | (13) | - | - | - | - | (40) |
| Total Non-Operating Disbursements | $ (812) | $ 2 | $ - | $ (93) | $ (89) | $ - | $ - | $ (127) | $ (12) | $ (1,131) |
| Net Cash Flow | $ (934) | $ (660) | $ (1,107) | $ (2,445) | $ (305) | $ 59 | $ (739) | $ 167 | $ (1,136) | $ (7,101) |
| **LIQUIDITY** | | | | | | | | | | |
| Beginning Balance – Book (2) | $ 1,796 | $ 1,468 | $ 1,493 | $ 1,516 | $ 1,947 | $ 1,712 | $ 1,535 | $ 1,505 | $ 1,414 | $ 1,796 |
| Net Cash Flow | (934) | (660) | (1,107) | (2,445) | (305) | 59 | (739) | 167 | (1,136) | (7,101) |
| Change in Outstanding Gift Card Cash | 6 | (15) | 30 | 377 | (230) | (136) | (91) | (59) | (25) | (142) |
| DIP Revolver Borrowing / (Repayment) | 600 | 700 | 1,100 | 2,500 | 300 | (100) | 800 | (200) | 1,100 | 6,800 |
| Ending Balance – Book | $ 1,468 | $ 1,493 | $ 1,516 | $ 1,947 | $ 1,712 | $ 1,535 | $ 1,505 | $ 1,414 | $ 1,353 | $ 1,353 |
| Plus:  Check & ACH Float | 644 | 558 | 546 | 1,282 | 558 | 561 | 549 | 549 | 1,297 | 1,297 |
| Ending Balance – Bank | $ 2,112 | $ 2,051 | $ 2,062 | $ 3,229 | $ 2,270 | $ 2,096 | $ 2,054 | $ 1,962 | $ 2,650 | $ 2,650 |
| **DIP Facility** | | | | | | | | | | |
| Beginning Availability | $ - | $ 7,150 | $ 6,450 | $ 5,350 | $ 2,850 | $ 2,550 | $ 2,650 | $ 1,850 | $ 2,050 | |
| Availability Increase | 7,750 | - | - | - | - | - | - | - | - | |
| Net (Borrowings) / Repayments | (600) | (700) | (1,100) | (2,500) | (300) | 100 | (800) | 200 | (1,100) | |
| Ending Availability | $ 7,150 | $ 6,450 | $ 5,350 | $ 2,850 | $ 2,550 | $ 2,650 | $ 1,850 | $ 2,050 | $ 950 | |
| DIP Loan – Amount Outstanding | $ 600 | $ 1,300 | $ 2,400 | $ 4,900 | $ 5,200 | $ 5,100 | $ 5,900 | $ 5,700 | $ 6,800 | |

*(1) Non-Debtor Net Cash Flow includes approx. $217k of disbursements and approx. $176k of receipts to/from non-debtor entities.*
*(2) Beginning cash balance for the week ending August 9, 2019 is an estimate.*

# **EXHIBIT B**

## **Certificates of Insurance**



# EVIDENCE OF PROPERTY INSURANCE

DATE (MM/DD/YYYY)
08/13/2019

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW.  THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| AGENCY | PHONE (A/C, NO, Ext): (866) 283-7122 | COMPANY |
|---|---|---|

AGENCY
Aon Risk Services Central, Inc.
Minneapolis MN Office
5600 West 83rd Street
8200 Tower,  Suite 1100
Minneapolis MN 55437 USA

PHONE (A/C, NO, Ext): (866) 283-7122

COMPANY
Lexington Insurance Company

FAX (A/C, No): (800) 363-0105

E-MAIL ADDRESS:

CODE:

SUB CODE:

AGENCY CUSTOMER ID #: 570000063775

INSURED
Perkins & Marie Callender's,  LLC
6075 Poplar Ave Suite 800
Memphis TN 38119 USA

LOAN NUMBER

POLICY NUMBER 044065064

EFFECTIVE DATE 03/01/2019

EXPIRATION DATE 03/01/2020

CONTINUED UNTIL TERMINATED IF CHECKED ☐

THIS REPLACES PRIOR EVIDENCE DATED:

Holder Identifier :

Certificate No : 57007783730 2

## PROPERTY INFORMATION

LOCATION/DESCRIPTION
RE:  Event.

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE  INFORMATION

| PERILS INSURED | BASIC | BROAD | SPECIAL | X | ALL RISK - subject to exclusions |
|---|---|---|---|---|---|

| COVERAGES/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Commercial Property Coverage Loss Limit Real & Personal Property | $ 50,000,000 | $ 25,000 |

## REMARKS (Including Special Conditions)

Notice of Cancellation Endorsement: Ten (10) day cancellation clause for non-payment and/or non-renewal and thirty (30) day cancellation clause for any other reason are, in each case, provided in favor of United States Trustee., as Administrative Agent for the Perkins & Marie Callendar's LLC., A.T.I.M.A.

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

## ADDITIONAL INTEREST

NAME AND ADDRESS
Office of the United States Trustee
844 King Street, Suite 2207
Wilmington DE 19801 USA

| | ADDITIONAL INSURED | LENDER'S LOSS PAYABLE | LOSS PAYEE |
|---|---|---|---|
| | MORTGAGEE | | |

LOAN  #

AUTHORIZED REPRESENTATIVE
Aon Risk Services Central Inc.

ACORD 27 (2016/03)

© 1993-2015 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's, LLC |

| POLICY NUMBER | | |
|---|---|---|
| See Certificate Number:    570077837302 | | |

| CARRIER | NAIC CODE | EFFECTIVE DATE: |
|---|---|---|
| See Certificate Number:    570077837302 | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

**FORM NUMBER:** ACORD 27    **FORM TITLE:** Evidence of Property Insurance

Commercial Property

Policy Number: 044065064
Effective & Expiration Date: 3/1/19-3/1/20
Insurer: Lexington Insurance Company
Limit: $300,000,000 p/o $400,000,000

Policy Number: NAP200043605
Effective & Expiration Date: 3/1/19-3/1/20
Insurer: Westport Insurance Corporation
Limit: $100,000,000 p/o $400,000,000

Policy Number: NAP200043605
Effective & Expiration Date: 3/1/19-3/1/20 Insurer: Westport Insurance Corporation Limit:
$100,000,000 p/o $400,000,000
Notice of Cancellation Endorsement: Ten (10) day cancellation clause for non-payment and/or non-
renewal and thirty (30) day cancellation clause for any other reason are, in each case, provided
in favor of United States Trustee., as Administrative Agent for the Perkins & Marie Callendar's
LLC., A.T.I.M.A.

   © 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD



# EVIDENCE OF PROPERTY INSURANCE

| | |
|---|---|
| | DATE (MM/DD/YYYY) 08/13/2019 |

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| AGENCY | PHONE (A/C, NO, Ext): (866) 283-7122 | COMPANY |
|---|---|---|
| Aon Risk Services Central, Inc.<br>Minneapolis MN Office<br>5600 West 83rd Street<br>8200 Tower, Suite 1100<br>Minneapolis MN 55437 USA | | Lexington Insurance Company |

| FAX (A/C, No): (800) 363-0105 | E-MAIL ADDRESS: |
|---|---|

| CODE: | SUB CODE: |
|---|---|

| AGENCY CUSTOMER ID #: 570000063775 |
|---|

| INSURED | LOAN NUMBER | POLICY NUMBER 044065064 |
|---|---|---|
| Perkins & Marie Callender's, LLC<br>6075 Poplar Ave Suite 800<br>Memphis TN 38119 USA | EFFECTIVE DATE 03/01/2019 | EXPIRATION DATE 03/01/2020 | CONTINUED UNTIL TERMINATED IF CHECKED ☐ |

THIS REPLACES PRIOR EVIDENCE DATED:

**Holder Identifier :**

57007783302

**Certificate No :**

## PROPERTY INFORMATION

LOCATION/DESCRIPTION

RE: Event.

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| COVERAGE INFORMATION | PERILS INSURED | BASIC | BROAD | SPECIAL | X | ALL RISK - subject to exclusions |
|---|---|---|---|---|---|---|

| COVERAGES/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Commercial Property Coverage Loss Limit Real & Personal Property | $ 50,000,000 | $ 25,000 |

## REMARKS (Including Special Conditions)

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | ADDITIONAL INSURED | LENDER'S LOSS PAYABLE | LOSS PAYEE |
|---|---|---|---|
| Office of the United States Trustee<br>844 King Street, Suite 2207<br>Wilmington DE 19801 USA | MORTGAGEE | | |
| | LOAN # | | |
| | AUTHORIZED REPRESENTATIVE | | *Aon Risk Services Central Inc.* |

| ACORD 27 (2016/03) | © 1993-2015 ACORD CORPORATION. All rights reserved. |
|---|---|

The ACORD name and logo are registered marks of ACORD



# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's, LLC |
| **POLICY NUMBER** | |
| See Certificate Number:    570077837302 | |

| CARRIER | | NAIC CODE | EFFECTIVE DATE: |
|---|---|---|---|
| See Certificate Number:    570077837302 | | | |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

**FORM NUMBER:**    ACORD 27    **FORM TITLE:**    Evidence of Property Insurance

Commercial Property

Policy Number: 044065064
Effective & Expiration Date: 3/1/19-3/1/20
Insurer: Lexington Insurance Company
Limit: $300,000,000 p/o $400,000,000

Policy Number: NAP200043605
Effective & Expiration Date: 3/1/19-3/1/20
Insurer: Westport Insurance Corporation
Limit: $100,000,000 p/o $400,000,000

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

 **ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE(MM/DD/YYYY) |
|---|
| 08/13/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Central, Inc. Minneapolis MN Office 5600 West 83rd Street 8200 Tower, Suite 1100 Minneapolis MN 55437 USA | PHONE (A/C, No, Ext): (866) 283-7122 | | FAX (A/C, No): (800) 363-0105 |
| | E-MAIL ADDRESS: | | |
| | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| INSURED | INSURER A: ACE American Insurance Company | | 22667 |
| Perkins & Marie Callender's, LLC 6075 Poplar Ave Suite 800 Memphis TN 38119 USA | INSURER B: ACE Fire Underwriters Insurance Co. | | 20702 |
| | INSURER C: Indemnity Insurance Co of North America | | 43575 |
| | INSURER D: | | |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES    CERTIFICATE NUMBER: 570077837305    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Limits shown are as requested

| INSR LTR | | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|---|
| A | X | COMMERCIAL GENERAL LIABILITY | | | XSLG71236444 | 03/01/2019 | 03/01/2020 | EACH OCCURRENCE | $1,000,000 |
| | | CLAIMS-MADE ☐  X  OCCUR | | | SIR applies per policy terms & conditions | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | | | | | | | | MED EXP (Any one person) | |
| | | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $10,000,000 |
| | X | POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | | OTHER: | | | | | | Liquor Liability Lim | $1,000,000 |
| A | | AUTOMOBILE LIABILITY | | | CAL H25274611 | 03/01/2019 | 03/01/2020 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X | ANY AUTO | | | | | | BODILY INJURY ( Per person) | |
| | | OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | |
| | | HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | |
| | | UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | |
| | | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | |
| | | DED ☐ RETENTION | | | | | | | |
| C | | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y/N | | | WLRC65889547 AOS | 03/01/2019 | 03/01/2020 | X PER STATUTE ☐ OTH-ER | |
| | | ANY PROPRIETOR / PARTNER / EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N | N/A | SCFC65889626 WI | 03/01/2019 | 03/01/2020 | E.L. EACH ACCIDENT | $1,000,000 |
| B | | | | | | | | E.L. DISEASE-EA EMPLOYEE | $1,000,000 |
| | | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE-POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

RE: Event.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Office of the United States Trustee 844 King Street, Suite 2207 Wilmington DE 19801 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |
| | *Aon Risk Services Central, Inc.* |

©1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

Holder Identifier :

Certificate No : 570077837305

**AGENCY CUSTOMER ID:** 570000063775

**LOC #:**

ACORD®

# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's,  LLC |

| POLICY NUMBER | | |
|---|---|---|
| See Certificate Number: 570077837305 | | |

| CARRIER | NAIC CODE |
|---|---|
| See Certificate Number: 570077837305 | |

**EFFECTIVE DATE:**

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**
**FORM NUMBER:** ACORD 25   **FORM TITLE:** Certificate of Liability Insurance

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER | |
| INSURER | |
| INSURER | |
| INSURER | |

**ADDITIONAL  POLICIES**   If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | WORKERS  COMPENSATION | | | | | | | |
| A | | N/A | | WLRC65889584 CA | 03/01/2019 | 03/01/2020 | | |
| A | | N/A | | WLRC65889663 CA | 03/01/2019 | 03/01/2020 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

**ACORD 101 (2008/01)**

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

 **ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

**DATE(MM/DD/YYYY)**
08/19/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Aon Risk Services Central, Inc.<br>Minneapolis MN Office<br>5600 West 83rd Street<br>8200 Tower, Suite 1100<br>Minneapolis MN 55437 USA | PHONE (A/C. No. Ext): (866) 283-7122 | | FAX (A/C. No.): (800) 363-0105 |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| INSURED | INSURER A: ACE American Insurance Company | | 22667 |
| Perkins & Marie Callender's, LLC<br>6075 Poplar Ave Suite 800<br>Memphis TN 38119 USA | INSURER B: ACE Fire Underwriters Insurance Co. | | 20702 |
| | INSURER C: Indemnity Insurance Co of North America | | 43575 |
| | INSURER D: ACE Property & Casualty Insurance Co. | | 20699 |
| | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES        CERTIFICATE NUMBER: 570077884994        REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

Limits shown are as requested

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** X | | | XSLG71236444<br>SIR applies per policy terms & conditions | 03/01/2019 | 03/01/2020 | EACH OCCURRENCE | $1,000,000 |
| | CLAIMS-MADE ☐  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | | | | | | | MED EXP (Any one person) | |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $10,000,000 |
| | X POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $2,000,000 |
| | OTHER: | | | | | | Liquor Liability | $1,000,000 |
| A | **AUTOMOBILE LIABILITY** | | | CAL H25274611 | 03/01/2019 | 03/01/2020 | COMBINED SINGLE LIMIT (Ea accident) | $1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY ( Per person) | |
| | OWNED AUTOS ONLY   SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | |
| | HIRED AUTOS ONLY   NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | |
| D | **UMBRELLA LIAB** X   X OCCUR | | | X0OM00786913005 | 03/01/2019 | 03/01/2020 | EACH OCCURRENCE | $25,000,000 |
| | **EXCESS LIAB**   CLAIMS-MADE | | | | | | AGGREGATE | $25,000,000 |
| | DED  X RETENTION $10,000 | | | | | | | |
| C | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**   Y/N | | | WLRC65889547<br>AOS | 03/01/2019 | 03/01/2020 | X PER STATUTE   OTH-ER | |
| B | ANY PROPRIETOR / PARTNER / EXECUTIVE OFFICER/MEMBER EXCLUDED? N **(Mandatory in NH)** | N/A | | SCFC65889626<br>WI | 03/01/2019 | 03/01/2020 | E.L. EACH ACCIDENT | $1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE-EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE-POLICY LIMIT | $1,000,000 |
| | Excess Liability | | | ECO2058519614 | 03/01/2019 | 03/01/2020 | EACH OCCURRENCE | $25,000,000 |
| | | | | | | | AGGREGATE | $25,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
RE: Event.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Office of the United States Trustee<br>844 King Street, Suite 2207<br>Wilmington DE 19801 USA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>*Aon Risk Services Central, Inc.* |

©1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)        The ACORD name and logo are registered marks of ACORD

*Holder Identifier :*

*Certificate No : 570077884994*

**AGENCY CUSTOMER ID:** 570000063775

**LOC #:**

ACORD®

# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY<br>Aon Risk Services Central, Inc. | NAMED INSURED<br>Perkins & Marie Callender's,  LLC |
|---|---|
| POLICY NUMBER<br>See Certificate Number: 570077884994 | |
| CARRIER<br>See Certificate Number: 570077884994 | NAIC CODE | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**
**FORM NUMBER:**  ACORD 25   **FORM TITLE:**  Certificate of Liability Insurance

| INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|
| INSURER | |
| INSURER | |
| INSURER | |
| INSURER | |

**ADDITIONAL  POLICIES**   If a policy below does not include limit information, refer to the corresponding policy on the ACORD certificate form for policy limits.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YYYY) | POLICY EXPIRATION DATE (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | WORKERS COMPENSATION | | | | | | | |
| A | | N/A | | WLRC65889584 CA | 03/01/2019 | 03/01/2020 | | |
| A | | N/A | | WLRC65889663 CA | 03/01/2019 | 03/01/2020 | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** 570000063775

LOC #:

**ACORD®**

# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's,  LLC |
| POLICY NUMBER | |
| See Certificate Number: 570077884994 | |
| CARRIER                    NAIC CODE | EFFECTIVE DATE: |
| See Certificate Number: 570077884994 | |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**    ACORD 25   **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: WLRC65889584
Effective Date: 8/12/19

A. If we cancel this Policy prior to its expiration date by notice to you or the first Named insured for
any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of
cancellation, via such electronic or other form of notification as we determine, to the persons or
organizations listed in the schedule set out below (the "Schedule"). You or your representative must
provide us with both the physical and e-mail address of such persons or organizations, and we will utilize
such e-mail address or physical address that you or your representative provided to us on such Schedule.
B. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding
to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date
applicable to the Policy.
C. The notice referenced in this endorsement is intended only to be a courtesy notification to the
person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We
have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide
advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall
impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any
Policy cancellation date and will not negate any cancellation of the Policy.

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

ACORD®

## ADDITIONAL  REMARKS SCHEDULE

| AGENCY | | NAMED INSURED |
|---|---|---|
| Aon Risk Services Central, Inc. | | Perkins & Marie Callender's, LLC |
| **POLICY NUMBER** | | |
| See Certificate Number: 570077884994 | | |
| **CARRIER** | **NAIC CODE** | |
| See Certificate Number: 570077884994 | | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**     ACORD 25    **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT – SPECIFIC PARTIES
Policy Number: WLRC65889584
Effective Date: 8/12/19

D. We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.
E. We may arrange with your representative to send such notice in the event of any such cancellation.
F. You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.
G. This endorsement does not apply in the event that you cancel the Policy.

All other terms and conditions of this Policy remain unchanged.

      © 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD



# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's,  LLC |

| POLICY NUMBER | | |
|---|---|---|
| See Certificate Number: 570077884994 | | |

| CARRIER | NAIC CODE | |
|---|---|---|
| See Certificate Number: 570077884994 | | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**    ACORD 25    **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: WLRC65889663
Effective Date: 8/12/19

A. If we cancel this Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.
B. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.
C. The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

ACORD®

# ADDITIONAL REMARKS SCHEDULE

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's, LLC |
| **POLICY NUMBER** | |
| See Certificate Number: 570077884994 | |
| **CARRIER** | **NAIC CODE** | |
| See Certificate Number: 570077884994 | | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**    ACORD 25    **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: WLRC65889663
Effective Date: 8/12/19

D. We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.
E. We may arrange with your representative to send such notice in the event of any such cancellation.
F. You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.
G. This endorsement does not apply in the event that you cancel the Policy.

All other terms and conditions of this Policy remain unchanged.

ACORD 101 (2008/01)                                      © 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD



LOC #:

# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's, LLC |
| **POLICY NUMBER** | |
| See Certificate Number: 570077884994 | |
| **CARRIER**                                    **NAIC CODE** | |
| See Certificate Number: 570077884994 | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**    ACORD 25    **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: WLRC65889547
Effective 8/12/19

A. If we cancel this Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.
B. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.
C. The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

ACORD®

# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY | | NAMED INSURED |
|---|---|---|
| Aon Risk Services Central, Inc. | | Perkins & Marie Callender's,  LLC |
| **POLICY NUMBER** | | |
| See Certificate Number: 570077884994 | | |
| **CARRIER** | **NAIC CODE** | |
| See Certificate Number: 570077884994 | | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**     ACORD 25    **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: WLRC65889547
Effective 8/12/19

D. We are not responsible for verifying any information provided to us in any Schedule, nor are we
responsible for any incorrect information that you or your representative provide to us. If you or your
representative does not provide us with the information necessary to complete the Schedule, we have no
responsibility for taking any action under this endorsement. In addition, if neither you nor your
representative provides us with e-mail and physical address information with respect to a particular
person or organization, then we shall have no responsibility for taking action with regard to such person
or entity under this endorsement.
E. We may arrange with your representative to send such notice in the event of any such cancellation.
F. You will cooperate with us in providing, or in causing your representative to provide, the e-mail
address and physical address of the persons or organizations listed in the Schedule.
G. This endorsement does not apply in the event that you cancel the Policy.

All other terms and conditions of this Policy remain unchanged.

ACORD 101 (2008/01)                                    © 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD



# ADDITIONAL  REMARKS  SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's, LLC |
| **POLICY NUMBER** | |
| See Certificate Number: 570077884994 | |
| **CARRIER**               **NAIC CODE** | |
| See Certificate Number: 570077884994 | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**    ACORD 25   **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others Endorsement

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: XSLG71236444
Effective Date:  8/12/19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

A. If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of cancellation, via such electronic or other form of notification as we determine, to the persons or organizations listed in the schedule set out below (the "Schedule"). You or your representative must provide us with both the physical and e-mail address of such persons or organizations, and we will utilize such e-mail address or physical address that you or your representative provided to us on such Schedule.
B. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date applicable to the Policy.
C. The notice referenced in this endorsement is intended only to be a courtesy notification to the person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any Policy cancellation date and will not negate any cancellation of the Policy.

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

LOC #:

**ACORD®**

# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's, LLC |

| POLICY NUMBER | | |
|---|---|---|
| See Certificate Number: 570077884994 | | |

| CARRIER | NAIC CODE | |
|---|---|---|
| See Certificate Number: 570077884994 | | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**     ACORD 25   **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: XSLG71236444
Effective Date:  8/12/19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
D. We are not responsible for verifying any information provided to us in any Schedule, nor are we
responsible for any incorrect information that you or your representative provide to us. If you or your
representative does not provide us with the information necessary to complete the Schedule, we have no
responsibility for taking any action under this endorsement. In addition, if neither you nor your
representative provides us with e-mail and physical address information with respect to a particular
person or organization, then we shall have no responsibility for taking action with regard to such person
or entity under this endorsement.
E. We may arrange with your representative to send such notice in the event of any such cancellation.
F. You will cooperate with us in providing, or in causing your representative to provide, the e-mail
address and physical address of the persons or organizations listed in the Schedule.
G. This endorsement does not apply in the event that you cancel the Policy.

All other terms and conditions of the Policy remain unchanged.

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD



LOC #:

# ADDITIONAL  REMARKS SCHEDULE

Page _ of _

| AGENCY | | NAMED INSURED |
|---|---|---|
| Aon Risk Services Central, Inc. | | Perkins & Marie Callender's,  LLC |
| **POLICY NUMBER** | | |
| See Certificate Number: 570077884994 | | |
| **CARRIER** | **NAIC CODE** | |
| See Certificate Number: 570077884994 | | EFFECTIVE DATE: |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**    ACORD 25    **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: CAL H25274611
Effective Date: 8/12/19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

A. If we cancel the Policy prior to its expiration date by notice to you or the first Named insured for
any reason other than nonpayment of premium, we will endeavor, as set out below, to send written notice of
cancellation, via such electronic or other form of notification as we determine, to the persons or
organizations listed in the schedule set out below (the "Schedule"). You or your representative must
provide us with both the physical and e-mail address of such persons or organizations, and we will utilize
such e-mail address or physical address that you or your representative provided to us on such Schedule.
B. We will endeavor to send or deliver such notice to the e-mail address or physical address corresponding
to each person or organization indicated in the Schedule at least 30 days prior to the cancellation date
applicable to the Policy.
C. The notice referenced in this endorsement is intended only to be a courtesy notification to the
person(s) or organization(s) named in the Schedule in the event of a pending cancellation of coverage. We
have no legal obligation of any kind to any such person(s) or organization(s). Our failure to provide
advance notification of cancellation to the person(s) or organization(s) shown in the Schedule shall
impose no obligation or liability of any kind upon us, our agents or representatives, will not extend any
Policy cancellation date and will not negate any cancellation of the Policy.

ACORD 101 (2008/01)                                    © 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

**ACORD®**

# ADDITIONAL REMARKS SCHEDULE

Page _ of _

| AGENCY | NAMED INSURED |
|---|---|
| Aon Risk Services Central, Inc. | Perkins & Marie Callender's, LLC |

| POLICY NUMBER | |
|---|---|
| See Certificate Number: 570077884994 | |

| CARRIER | NAIC CODE |
|---|---|
| See Certificate Number: 570077884994 | |

EFFECTIVE DATE:

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:**    ACORD 25    **FORM TITLE:**  Certificate of Liability Insurance

Notice to Others

NOTICE TO OTHERS ENDORSEMENT - SPECIFIC PARTIES
Policy Number: CAL H25274611
Effective Date: 8/12/19

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

D. We are not responsible for verifying any information provided to us in any Schedule, nor are we responsible for any incorrect information that you or your representative provide to us. If you or your representative does not provide us with the information necessary to complete the Schedule, we have no responsibility for taking any action under this endorsement. In addition, if neither you nor your representative provides us with e-mail and physical address information with respect to a particular person or organization, then we shall have no responsibility for taking action with regard to such person or entity under this endorsement.
E. We may arrange with your representative to send such notice in the event of any such cancellation.
F. You will cooperate with us in providing, or in causing your representative to provide, the e-mail address and physical address of the persons or organizations listed in the Schedule.
G. This endorsement does not apply in the event that you cancel the Policy.

All other terms and conditions of the Policy remain unchanged.

**ACORD 101 (2008/01)**

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

# **EXHIBIT C**

**Evidence of Bank Accounts**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Perkins & Marie Callender's, LLC, *et al.*,[1] | ) | Case No. 19-[●] ([●]) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | |

### MOTION OF DEBTORS FOR INTERIM AND FINAL
### ORDERS (I) AUTHORIZING CONTINUED USE OF THE DEBTORS'
### EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS;
### (II) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY
### TRANSACTIONS; (III) WAIVING CERTAIN UNITED STATES TRUSTEE
### REQUIREMENTS; AND (IV) GRANTING RELATED RELIEF

Perkins & Marie Callender's, LLC ("**P&MC**") and its above-captioned affiliated debtor

entities (collectively, with P&MC, the "**Debtors**") in the above-captioned chapter 11 cases (the

"**Chapter 11 Cases**") hereby file this motion (the "**Motion**") for entry of an interim order (the

"**Interim Order**") and a final order (the "**Final Order**") pursuant to sections 105(a), 345(b), and

363(c), of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"),

Rule 2015 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule

2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "**Local Rules**") (i) authorizing the Debtors to continue to

use their cash management system (the "**Cash Management System**") and bank accounts and

open the Restricted Account (as defined below); (ii) authorizing continued performance of

intercompany transactions; (iii) waiving certain bank account and related requirements of the

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225).  The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); and (iv) granting related relief.   In support of this Motion, the Debtors submit and incorporate by reference herein the *Declaration of Jeffrey D. Warne in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] filed contemporaneously with this Motion.  In further support of this Motion, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

2.      Venue of these Chapter 11 Cases and the Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing the Chapter 11 Cases for relief under the Bankruptcy Code.  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the First Day Declaration.

RLF1 21407199v.10

4.      No request has been made for the appointment of a trustee or examiner, and no official committee has been appointed in the Chapter 11 Cases.

5.      Additional information about the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the First Day Declaration, which is incorporated herein by reference.

## CASH MANAGEMENT SYSTEM

### A.      General Overview

6.      The Debtors' Cash Management System is an integrated network of bank accounts that is critical to the Debtors' operations during these Chapter 11 Cases.  In the ordinary course of their business, the Debtors use the Cash Management System to fund the Debtors' operations.  By use of the Cash Management System, the Debtors collect, concentrate, and disburse funds generated by their businesses.  The Cash Management System enables the Debtors to facilitate their cash forecasting and reporting, monitor the global collection and disbursement of funds, and maintain control over the administration of their bank accounts.

7.      In connection with the Cash Management System, the Debtors maintain approximately 133 bank accounts listed on **Exhibit C** to this Motion (the "**Bank Accounts**") at various banks (collectively, the "**Banks**").   The Debtors routinely deposit, withdraw, and otherwise transfer money to, from, and between the Bank Accounts by various methods, including by checks, drafts, ACH transfers, and other electronic funds transfers.   A general overview of the movement of cash through the Debtors' Cash Management System is illustrated by the flow of funds charts attached hereto as **Exhibit D**.  The following is an overview of the Cash Management System and related Bank Accounts.

### (i)    Cash Management for Perkins Operations

8.    <u>P&MC Collections Accounts</u>.    Each of the Debtors' 111[3] Perkins restaurants collects and deposits daily cash receipts from their restaurant operations into its respective restaurant-level collections account (the "**P&MC Collections Accounts**"), each of which is held by P&MC.  Of the P&MC Collections Accounts, 101 such accounts are maintained at one of Regions Bank ("**Regions**"), Wells Fargo Bank, N.A. ("**Wells Fargo**"), or U.S. Bank, National Association ("**U.S. Bank**").  The remaining 11 P&MC Collections Accounts are maintained at one of eight local banking institutions (the "**Local Banks**").

9.    <u>P&MC Concentration Accounts</u>.  With the exception of the 11 P&MC Collections Accounts maintained at the Local Banks, the P&MC Collections Accounts are swept daily and consolidated into one of three master concentration accounts maintained at either Regions (6732) (the "**P&MC Master Depository Account**"), Wells Fargo (0418) (the "**Wells Fargo Concentration Account**"), or U.S. Bank (0115) (the "**U.S. Bank Concentration Account**" and together with the P&MC Master Depository Account and the Wells Fargo Concentration Account, the "**P&MC Concentration Accounts**").  The balance held in each of the P&MC Collections Accounts maintained at Regions is swept daily into the P&MC Master Depository Account.  The balance held in each of the P&MC Collections Accounts maintained at Wells Fargo is swept daily into the Wells Fargo Concentration Account.  The balance held in each of the P&MC Collections Accounts maintained at U.S. Bank is swept daily into the U.S. Bank Concentration Account.

---

[3] Prior to, or substantially contemporaneously with, the Petition Date, the Debtors have closed 11 corporate-owned Perkinss restaurants.  Notwithstanding these closures, certain of the Bank Accounts necessary to continue operation of the Cash Management System with respect to the Marie Perkins business remain open, and the Debtors seek authority to continue using such accounts in the ordinary course for the time being.

RLF1 21407199v.10

10.     P&MC Master Depository Account.     Balances held in the Wells Fargo Concentration Account and the U.S. Bank Concentration Account are swept daily to the P&MC Master Depository Account.   The balances held in the 11 P&MC Collections Accounts maintained at the Local Banks are transferred via manual ACH transfer each Tuesday to the P&MC Master Depository Account.   Credit card payments received at each of the Perkins restaurants are processed by the applicable credit card processor (collectively, the "**Credit Card Processors**") and deposited directly into the P&MC Master Depository Account.   Accounts receivable, Perkins restaurant franchisee deposits, certain royalty and trademark licensing payments for use of the Perkins brand name, and receipts from Foxtail sales that relate to the Perkins business[4] are also deposited into the P&MC Master Depository Account.   The P&MC Master Depository Account also receives miscellaneous receipts and deposits from the Perkins restaurant operations, including, for example, vendor refunds, insurance proceeds, and other miscellaneous rebates, refunds, and deposits.

11.     P&MC Main Operating Account.   Amounts held in the P&MC Master Depository Account are swept daily into a main operating account (5342) (the "**P&MC Main Operating Account**") held by P&MC and maintained at Regions.   The P&MC Main Operating Account is funded, ultimately, by receipts from both the Perkins business operations and the Marie Callender's business operations.   Disbursements for the majority of accounts payable, insurance obligations, and certain vendor payments for both the Perkins restaurant and the Marie Callender's restaurant business operations are made from the P&MC Main Operating Account. The P&MC Main Operating Account also funds payroll for Perkins employees as well as the

---

[4] The receipts are generated from sales of Foxtail products from the Debtors' manufacturing facility in Fairfield, Ohio, which produces pies, pancake mixes, cookies, brownies, muffin batters, syrups and other baking products primarily for the Perkins restaurants and various third-party customers.

related payroll taxes and sales taxes incurred from the Perkins business.  The P&MC Main Operating Account also funds payroll for Marie Callender's employees that are paid through the Debtors' payroll processor.

12.    In addition, the P&MC Main Operating Account funds, on an as-needed basis, a disbursement account (1686) held at Regions for quarterly federal tax payments.  The P&MC Main Operating Account also funds, on as-needed basis, an account (0584) held by Debtor P&MC at Regions to make disbursements on account of Foxtail operations and accounts payable and funds an account (0539) held by P&MC at Regions to make disbursements that are not otherwise made via ACH transfer.

13.    Perkins Promotions Account.    Debtor Perkins Promotions LLC ("**Perkins Promotions**") holds an account (6986) (the "**Perkins Promotions Account**") maintained at Regions to receive and disburse funds in connection with the Gift Card Program (as defined in the Customer Programs Motion)[5] related to the Perkins restaurant operations.  Sales of Perkins Gift Cards (as defined in the Customer Programs Motion) are deposited into each P&MC Collections Account and, through the Cash Management System described above, are ultimately transferred to the P&MC Main Operating Account.  Each Tuesday funds are swept from the P&MC Main Operating Account to cover amounts required for Perkins Gift Cards as they are redeemed.  In addition to receiving funds on account of Perkins Gift Card sales at corporate-owned restaurants, the Perkins Promotions Account also receives funds directly from restaurants owned and operated by franchisees on account of Perkins Gift Cards sold at such franchisee restaurants.

---

[5] The "**Customer Programs Motion**" means the *Motion of Debtors for Interim and Final Orders (I) Authorizing Debtors to (A) Maintain Customer Programs and (B) Pay and Honor Related Prepetition Obligations and (II)Granting Related Relief*, filed contemporaneously herewith.

14.     <u>Perkins Marketing Fund Accounts</u>.  P&MC holds an account (5371) (the "**Perkins Domestic Marketing Fund Account**") maintained at Regions to fund marketing and advertising expenses with respect to Perkins restaurants as well as the Perkins Marketing Program (as defined in the Customer Programs Motion).  The Perkins Domestic Marketing Fund Account receives contributions every four weeks from franchisees of Perkins restaurants and from the P&MC Main Operating Account in accordance with the terms of the applicable franchise agreements.

15.     P&MC also holds two accounts (5063) (the "**Perkins Canadian Operating Account**") and (8897) (the "**Perkins Canadian Collections Account**" and together with the Perkins Canadian Operating Account and the Perkins Domestic Marketing Fund Account, the "**Perkins Marketing Fund Accounts**") maintained at Bank of Montreal.  The Perkins Canadian Operating Account receives contributions from franchisees of Perkins restaurants located in Canada in accordance with the terms of the applicable franchise agreements.  The Perkins Canadian Operating Account maintains a daily balance of CDN $9,000 to cover marketing and advertising expenses.  Funds are transferred to and from the Perkins Canadian Collections Account each day to maintain this balance in the Perkins Canadian Operating Account.

**(ii)     Cash Management for Marie Callender's Operations**

16.     <u>Marie Callender's Depository Account</u>.  Each of the Debtors' 28[6] Marie Callender's restaurants collects and deposits daily cash receipts from their restaurant operations into a collections account (4983) (the "**Marie Callender's Depository Account**") held by P&MC at Wells Fargo.  The Marie Callender's Depository Account also receives customer

---

[6] Prior to, or substantially contemporaneously with, the Petition Date, the Debtors have closed 21 corporate-owned Marie Callender's restaurants.  Notwithstanding these closures, certain of the Bank Accounts necessary to continue operation of the Cash Management System with respect to the Marie Callender's business remain open, and the Debtors seek authority to continue using such accounts in the ordinary course for the time being.

RLF1 21407199v.10

receipts from the sale of Gift Cards for Marie Callender's operations, which are ultimately deposited in the Marie Callender's Promotions Account (as defined below).

17.     <u>Marie Callender's Concentration Account</u>.   Cash held in the Marie Callender's Depository Account is swept daily into an account (2110) (the "**Marie Callender's Concentration Account**") held by Debtor Marie Callender's Pie Shops LLC ("**MCPS**") at Wells Fargo.  Credit card payments received at each of the Marie Callender's restaurants are processed by the applicable Credit Card Processor and deposited into settlement accounts (0606 and 0614) held by MCPS at Wells Fargo and then swept daily into the Marie Callender's Concentration Account.  Amounts held in the Marie Callender's Concentration Account are used primarily to fund an account (1150) held by MCPS at Wells Fargo to fund payroll not otherwise processed by the Debtors' payroll processor for the Debtors' employees in the Marie Callender's business. The Marie Callender's Concentration Account also disburses funds on account of sales taxes incurred by the Marie Callender's operations.   Periodically, the balance held in the Marie Callender's Concentration Account is transferred to the P&MC Main Operating Account

18.     <u>Marie Callender's Main Operating Account</u>.    Amounts held in the Marie Callender's Concentration Account are transferred manually via wire transfer to an operating account (7312) (the "**Marie Callender's Main Operating Account**") held by P&MC at Regions.  The Marie Callender's Main Operating Account also receives deposits and other receipts from the Debtors' Foxtail operations that specifically relate to the Marie Callender's business operations,[7] Marie Callender's franchisee deposits, and certain royalty and trademark licensing payments for use of the Marie Callender's brand name, as well as other miscellaneous deposits, including rebates and refunds.  The Marie Callender's Main Operating Account funds,

---

[7] The receipts are generated from sales of Foxtails products from the Debtors' manufacturing facility in Corona, California, which produces pies and other bakery products primarily for the Marie Callender's restaurants.

on an as-needed basis, certain other disbursement accounts necessary for the Marie Callender's business including an account (7587) held by P&MC at Regions to make disbursements for invoices and other accounts payable that are not otherwise made via ACH transfer, an account (5770) held by Debtor P&MC at Regions to issue checks for invoices and other accounts payable with respect to Foxtail manufacturing operations that relate to the Marie Callender's business. Payroll taxes with regards to Marie Callender's employees are also paid out of the Marie Callender's Main Operating Account.

19.     Marie Callender's Promotions Account.  Perkins Promotions holds an account (2456) (the "**Marie Callender's Promotions Account**") maintained at Regions to receive and distribute funds used for the Gift Card Program related to the Marie Callender's restaurant operations.  Each Tuesday funds are swept from the Marie Callender's Main Operating Account with respect to corporate-owned and operated restaurants, and from each franchisee's designated account with respect to franchisee-operated restaurants, to the Marie Callender's Promotions Account to cover amounts required for Marie Callender's Gift Cards as they are redeemed.

20.     Marie Callender's Marketing Fund Account.  P&MC holds an account (8805) (the "**Marie Callender's Marketing Fund Account**") maintained at Regions to fund marketing and advertising expenses with respect to the Marie Callender's Marketing Program (as defined in the Customer Programs Motion).  The Marie Callender's Marketing Fund Account receives deposits every four weeks from the designated accounts of franchisees of Marie Callender's restaurants locations and from the Marie Callender's Main Operating Account.

        **(iii)    Restricted Account**

21.     By this Motion, the Debtors also seek to establish upon entry of the Interim Order a new account to be maintained at Regions (the "**Restricted Account**") for the purpose of

holding $200,000 for Regions' benefit to secure any obligations that may come due and payable to Regions in connection with the performance of its treasury management functions (such services, the "**Treasury Management Services**" and such obligations, the "**Treasury Management Obligations**").  The Debtors propose that Regions be permitted to draw on the Restricted Account to satisfy any unpaid Treasury Management Obligations upon providing ten (10) days' prior written notice to the Debtors, any official committee of unsecured creditors appointed in these Chapter 11 Cases, and counsel to the DIP Agent.

### (iv)    Business Expense Cards

22.    As described in more detail in the Wages Motion,[8] the Debtors provide certain of their Employees with Business Expense Cards (each as defined in the Wages Motion) issued by Regions for which these Employees may incur business-related expenses and have these expenses billed directly to the Debtors to avoid these Employees being held personally responsible for the payment of expenses incurred on the Debtors' behalf.  Regions has agreed to permit the Debtors to continue using the Business Expense Cards on a postpetition basis; *provided that* (i) any prepetition balances are paid (which relief is being sought as part of the Wages Motion), (ii) the maximum combined account balance on the Business Expense Cards shall not exceed $50,000 at any given time, and (iii) the Debtors shall pay in full any balances held on the Business Expense Cards on a daily basis (the foregoing (i), (ii), and (iii) being the "**Business Expense Cards Payment System**").

---

[8] The "**Wages Motion**" means the *Motion of Debtors for Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Salaries, Wages, Compensation, Reimbursable Expenses, and Other Obligations on Account of Compensation and Benefits Programs and (B) Continue Compensation and Benefits Programs and (II) Granting Related Relief*, filed contemporaneously herewith.

B.     **Processing Fees**

23.     The Debtors are party to agreements with the Credit Card Processors, other third-party payment processors, such as Merchant-Link, LLC, and cash register payment processors related to credit and debit transactions and cash payment transactions between the Debtors and their customers.  The Debtors continued ability to honor or process credit card and cash payment transactions is essential to their efforts to maintain the operation of their businesses and maximize value to their estates.  Without this ability, the Debtors would lose the ability to conduct sales transactions in the ordinary course of their businesses.  Pursuant to the terms of the Debtors' agreements and relationships with such payment processors, the Debtors are required to pay certain fees (collectively, the "**Processing Fees**") for credit card processing and cash register processing services, certain amounts of which may have accrued, but remain unpaid, as of the Petition Date.

24.     Pursuant to this Motion, the Debtors request authority to continue to pay the Processing Fees, including any prepetition obligations, in the ordinary course of the Debtors' businesses to avoid any interruption of the Debtors' ability to process credit card and cash register transactions.  The Debtors' ability to allow their customers to make purchases on credit and through the Debtors' cash registers is critical to their businesses and therefore their chapter 11 efforts.  The Debtors pay average monthly Processing Fees of approximately $326,000 on account of both the Perkins and Marie Callender's businesses.  The Debtors estimate that, as of the Petition Date, approximately $59,000 in Processing Fees remain unpaid in the aggregate.

C.     **Bank Fees**

25.     In the ordinary course of business, the Banks charge, and the Debtors pay, honor, or allow the deduction from the appropriate Bank Account, certain service charges and other

fees, costs, and expenses arising in the ordinary course (collectively, the "**Bank Fees**"). Historically, the Debtors estimate that they pay average monthly Bank Fees of approximately $32,000 on account of both the Perkins and Marie Callender's businesses, and that, as of the Petition Date, there is approximately $35,000 in accrued and unpaid Bank Fees. Pursuant to this Motion, the Debtors request authority to continue to pay Bank Fees, including the prepetition Bank Fees, in the ordinary course of the Debtors' business to avoid any interruption of the Debtors' Cash Management System. The Debtors' inability to pay prepetition or postpetition Bank Fees in the ordinary course could disrupt the Cash Management System and harm the Debtors' estates.

### D.    Intercompany Transactions

26.    In the ordinary course of business, prior to the Petition Date, the Debtors engaged in various intercompany transactions with other Debtors and seven non-Debtor partnerships for which Debtor MCPS acts as the general partner (the "**Non-Debtor Partnerships**")[9] relating to the business relationships between and among themselves (the "**Intercompany Transactions**"). The Intercompany Transactions include, for example, payments in connection with intercompany distribution and services arrangements, taxes, wages, loans or advances, and other charges. Intercompany Transactions are tracked and reflected in the appropriate entity's respective books and records.

27.    The Debtors expect the Intercompany Transactions to continue postpetition in the ordinary course of business. Because the Debtors engaged in the Intercompany Transactions on

---

[9] At one time, each Non-Debtor Partnership operated a separate Marie Callendar's restaurant. On December 29, 2016, one Non-Debtor Partnership closed the restaurant that it operated and, on July 21, 2019, another Non-Debtor Partnership closed the restaurant that it operated (the "**First Closing Partnerships**"). With respect to the five remaining Non-Debtor Partnerships, immediately prior to the Petition Date, four such partnerships closed the restaurants operated by such partnerships (the "**Second Closing Partnerships**"); however, such restaurants are not expected to be vacated until the end of this current week. As of the Petition Date, there is only one restaurant that is currently being operated by a Non-Debtor Partnership (the "**Operating Partnership**").

12

a regular basis prepetition and such transactions are common for enterprises like the Debtors, the Debtors believe that they may continue the Intercompany Transactions in the ordinary course, as contemplated by section 363(c)(1) of the Bankruptcy Code, without court approval. Nonetheless, out of an abundance of caution, the Debtors seek express authority to continue engaging in the Intercompany Transactions.

28.     If the Intercompany Transactions are prohibited, the ordinary course operations and efficiencies of the Debtors' business would be unnecessarily hindered.  Avoiding such hindrances by continuing the Intercompany Transactions is therefore in the best interests of the estates.  The Debtors therefore request that the Court authorize them to continue the Intercompany Transactions in the ordinary course of business.

29.     Additionally, pursuant to section 503(b) of the Bankruptcy Code, the Debtors request that all intercompany claims against a Debtor by another Debtor arising postpetition, in the ordinary course of business, as a result of an Intercompany Transaction (such postpetition claims, the "**Intercompany Claims**") be granted administrative expense priority status.  If the Intercompany Claims are accorded administrative expense priority status, each entity utilizing funds that flow through the Cash Management System should continue to bear ultimate repayment responsibility for such ordinary course transactions.  The Debtors expressly reserve their rights to contest the validity and/or amount of any Intercompany Transaction and Intercompany Claim.

30.     In addition, historically, the Non-Debtor Partnerships relied on funding from the Debtors in order to pay their obligations in the ordinary course of business.  As a result, consistent with pre-petition practices, the Debtors seek the authorization to continue funding the

Second Closing Partnerships and the Operating Partnership in the ordinary course of business;[10] *provided* that, upon entry of the Interim Order, the Debtors shall only fund amounts on behalf of the Second Closing Partnerships and the Operating Partnership that are necessary to avoid immediate and irreparable harm to the Debtors in an aggregate amount not to exceed $210,000.00, which amount consists of prepetition Covered Taxes and Fees (as defined in the Taxes Motion) and prepetition obligations on account of Compensation and Benefits Programs (as defined in the Wages Motion); *provided further,* that, upon entry of the Interim Order, the Debtors shall only fund amounts on behalf of the Second Closing Partnerships and the Operating Partnerships on account of post-petition obligations incurred by such partnerships in an aggregate amount not to exceed $76,000.00.[11]

31.     The Debtors believe it is critical to pay such amounts for at least two reasons. First, if the Covered Taxes and Fees and any obligations on account of Compensation Benefits Programs are not paid, Debtor MCPS, as the general partner (and any directors and officers of MCPS), could potentially be liable for such amounts.  Second, as noted in the First Day Declaration, the Debtors are seeking to find a buyer for the Marie Callender's restaurants, which includes the restaurant that is operated by the Operating Partnership.  In order to maximize the value of such restaurants in connection with any sale, the Debtors believe it is important to continue to fund the ordinary course obligations of the Operating Partnership.

**E.     Business Forms**

32.     The Debtors use a variety of preprinted business forms, including letterhead, correspondence forms, invoices, purchase orders, and other business forms in the ordinary course

---

[10] By this Motion, the Debtors are not seeking any relief to pay the obligations of the First Closing Partnerships.

[11] The Debtors reserve the right to seek to pay additional amounts on behalf of the Second Closing Partnerships and the Operating Partnership at the final hearing on the Motion.

14

of business (collectively, and as they may be modified from time to time, the "**Business Forms**").[12]  The Debtors also maintain books and records to document their financial results and a wide array of necessary operating information (collectively, the "**Books and Records**").  To avoid a significant disruption to their business operations that would result from a disruption of the Cash Management System and to avoid unnecessary expense, the Debtors request authorization, except as set forth in the proposed Interim Order with respect to checks, to continue using all of the Business Forms and Books and Records in use immediately before the Petition Date (and as may be amended or modified in the ordinary course from time to time), including with respect to the Debtors' ability to update authorized signatories and services, as needed—without reference to the Debtors' status as chapter 11 debtors in possession—rather than requiring the Debtors to incur the expense and delay of ordering new Business Forms and creating new Books and Records.

## **RELIEF REQUESTED**

33.     By this Motion, the Debtors seek entry of the Interim Order, attached hereto as **Exhibit A**, and the Final Order, attached hereto as **Exhibit B**, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, Bankruptcy Rule 2015, and Local Rule 2015-2, (i) authorizing the Debtors to continue to use their Cash Management System and open the Restricted Account; (ii) authorizing the continued performance of Intercompany Transactions; (iii)  waiving certain bank account and related requirements of the U.S. Trustee; and (iv) granting related relief.

34.     Specifically, the Debtors seek authority to (i) maintain and continue to use the Bank Accounts in the same manner and with existing account numbers, styles, and document forms as existed prior to the Petition Date; (ii) deposit funds in, and withdraw funds from, the

---

[12] The Debtors do not use preprinted checks.  The Debtors do, however, print their own checks and, by this Motion, request that, within ten days after the date of entry of the Interim Order, they or their agents shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such checks.

Bank Accounts by usual means, including check, wire transfer, ACH transfer, draft, electronic fund transfer, centralized lockbox, or other items presented, issued, or drawn on the Bank Accounts; (iii) pay prepetition and ordinary course Processing Fees and Bank Fees; (iv) perform their obligations under the Bank Accounts' governing documents and agreements; and (v) treat the Bank Accounts for all purposes as "debtor in possession" accounts ("**DIP Accounts**").

35.     To maintain the efficient operation of the Cash Management System during these cases, the Debtors also request that their Banks be authorized to continue to administer, service, and maintain the Bank Accounts, as they were prepetition, without interruption and in the Debtors' ordinary course of business.  In that regard, the Debtors seek to continue to receive, process, honor, and pay (or to reissue, as may be necessary) all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "**Disbursements**") on account of any claim this Court grants the Debtors approval to pay arising before, on, or after the Petition Date, and in reliance on the Debtors' representations of such authority, subject to the applicable Bank Accounts containing sufficient funds.

36.     Both here and in other first-day motions, the Debtors seek authority to pay certain prepetition obligations. For some of these obligations, the Debtors issued Disbursements before the Petition Date that have yet to clear.  For others, the Debtors will issue a Disbursement once they have Court authority to do so. The Debtors request that their Banks be authorized to accept and honor all representations from the Debtors as to which of these Disbursements should be honored.   If any Banks nevertheless dishonor Court-approved Disbursements, the Debtors request authority to issue replacement Disbursements consistent with the orders of this Court. And because the Banks are not in a position to independently verify or audit whether they may

16

honor a particular Court-approved prepetition Disbursement, the Debtors further request that the Court order that no Bank be liable, or otherwise be in violation of such orders, for honoring a prepetition Disbursement or other Disbursement at the Debtors' direction.

37.    Continuity of the Cash Management System is critical to the Debtors' ongoing business operations, but so is flexibility.   To that end, the Debtors also request authority to implement reasonable changes to the Cash Management System that they deem necessary or appropriate in the ordinary course, including closing any Bank Account and establishing new Bank Accounts and that the applicable Banks be authorized to honor such changes.

**BASIS FOR RELIEF**

**A.     The Debtors Should Be Authorized to Continue to Use Their Existing Cash Management System and Bank Accounts and to Open the Restricted Account Under Sections 363(c) and 105(a) of the Bankruptcy Code**

38.    Section 363(c)(1) of the Bankruptcy Code permits a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). In doing so, section 363(c)(1) provides a debtor flexibility to operate its business without unnecessary creditor or court oversight. *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets." (internal quotation omitted)). Section 363(c) facilitates a debtor's ability to continue the "routine transactions" a debtor's cash management system requires. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996) (indicating that a debtor is "generally authorized to continue operating its business," including performing "routine transactions necessitated by the [existing] cash management system"); *see also Charter Co. v. Prudential Ins. Co. of Am. (In re Charter*

17

*Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ its "usual and customary" cash management system was "entirely consistent" with section 363(c)(1)). Additionally, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

39.    The Debtors seek authority to continue to use their Cash Management System and Bank Accounts consistent with prepetition practices and sections 363(c) and 105(a) of the Bankruptcy Code. The Cash Management System is an ordinary course business practice that provides the Debtors with essential and significant benefits.  Through the Cash Management System, the Debtors maintain the ability to control corporate funds, ensuring maximum availability of funds when and where necessary. The Cash Management System also reduces the administrative burden on the Debtors by facilitating the movement of funds among and across all the Debtors.  The Debtors' ability to continue using the Cash Management System and Bank Accounts during these Chapter 11 Cases is essential to maintaining the Debtors' business and maximizing the value of their estates.  Requiring the Debtors to adopt new cash management systems and open new bank accounts would be expensive, onerous, and disruptive.  As one court in this District recognized, a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993).  In addition, it is necessary that the Debtors be permitted to open and maintain the Restricted Account during these Chapter 11 Cases because Regions, as a significant Bank at which many of the Bank Accounts are held, may refuse to perform Treasury Management Services absent establishment

and maintenance of this account. Furthermore, the Debtors submit that opening, maintaining, and collateralizing the Restricted Account for Regions' benefit will not prejudice interested parties given that such amounts may only be used to satisfy unpaid Treasury Management Obligations, and Regions shall provide notice prior to drawing thereon.

40.     Maintaining the Cash Management System and Bank Accounts without disruption is in the best interests of the Debtors, their estates, and all parties in interest. Based on the foregoing, the Court should grant the Debtors the authority under sections 363(c) and 105(a) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash under their Cash Management System and to open the Restricted Account.

**B.      The Debtors Should Be Granted a Waiver of Certain Requirements of the U.S. Trustee under Sections 363 and 105(a) of the Bankruptcy Code**

41.     The Debtors further request that this Court grant a waiver of certain bank account and related U.S. Trustee operating guidelines. As set forth in (a) through (e) below (the "**UST Requirements**"), these guidelines require a chapter 11 debtor to, among other things:

a)  close all existing bank accounts;

b)  open new bank accounts in a U.S. Trustee-approved depositary that are designated as DIP Accounts, with separate DIP Accounts established for an operating account, a tax account, and a payroll account;

c)  obtain and utilize new checks for all DIP Accounts that bear the designation "Debtor In Possession" and contain other information about the debtor's chapter 11 case;

d)  deposit all business revenues into the general operating DIP Account, with amounts needed to fund the other accounts being transferred to those accounts as necessary; and

e)  deposit to the tax DIP Account sufficient funds to pay any tax liability (when incurred) associated with the debtor's payroll.

42.     Although the UST Requirements are designed to provide a clear line of demarcation between a debtor's prepetition and postpetition transactions and operations, and to

prevent inadvertent postpetition payment of prepetition claims, they risk interfering with the efficient administration of the Debtors' Cash Management System.

43.     Pursuant to sections 363 and 105(a) of the Bankruptcy Code, the Debtors seek a waiver of the UST Requirements that they close the Bank Accounts and open new DIP Accounts.  As discussed above, the Debtors' ability to continue using the Bank Accounts is essential to maximizing value of the Debtors' estates and promoting the best interests of all parties.  It prevents disruption to direct customer payments into these accounts and expedites collection for accounts receivables.  Nonetheless, the Debtors request authority to open any new Bank Accounts or close any existing Bank Accounts as they may deem necessary and appropriate in the ordinary course; *provided that* the Debtors give notice to the U.S. Trustee, any statutory committees appointed in these Chapter 11 Cases, and the DIP Agent, within fifteen days of closing or opening a Bank Account; *provided further* that the Debtors open any such new Bank Account at a bank that has executed a Uniform Depository Agreement with the U.S. Trustee, or at a bank willing to immediately execute such an agreement.

44.     The Debtors also seek a waiver of the UST Requirement to establish specific DIP Accounts for payroll and tax payments and to deposit into the tax accounts sufficient funds to pay any payroll tax liability (when incurred).  The Debtors believe that they can meet their payroll and tax obligations most efficiently through the Bank Accounts in accordance with existing practices, and that requiring new payroll and tax DIP Accounts would be both unnecessary and highly disruptive to their business.  The Debtors are—and expect to remain— current on all payroll taxes.  If the Debtors were required to change their existing practices and deposit sufficient funds to pay any tax liability associated with the Debtors' payroll, the resulting inefficiencies would only diminish the value of the Debtors' estates.  Further, the Debtors will

ensure that the U.S. Trustee can appropriately monitor and ascertain that the Debtors' payroll taxes are satisfied.

45.     The Debtors print their own checks.  By this Motion, the Debtors seek authority to begin printing "Debtor in Possession" designation and the corresponding bankruptcy case number on all checks.  The Debtors also seek authority to use all correspondence and other business forms, including, but not limited to, purchase orders, multicopy checks, letterhead, envelopes, promotional materials, and other business forms, substantially as they existed immediately before the Petition Date without reference to the Debtors' status as debtors in possession.[13]

46.     The Debtors are providing notice of the commencement of these Chapter 11 Cases, as required, to creditors and parties in interest.  Parties doing business with the Debtors will, therefore, be aware of the Debtors' status as debtors in possession.  Immediately modifying the Debtors' checks and changing the Debtors' correspondence, and other business forms would be expensive, unnecessary, and burdensome to the Debtors' estates.  Further, such changes would be disruptive to the Debtors' business operations and would not confer any benefit upon those dealing with the Debtors.  For these reasons, the Debtors request that they be authorized to use existing check stocks, if any, and all correspondence and business forms without being required to label them "Debtor In Possession"; *provided that* once the Debtors' existing checks, if any, have been exhausted, the Debtors will, when reordering checks, ensure that the designation "Debtor in Possession" and the corresponding bankruptcy case number are printed

---

[13] Although the UST Requirements would require the Debtors to obtain and use new checks bearing the "Debtor In Possession" designation, the Debtors do not believe that the UST Requirements impose any limitation on the Debtors' other correspondence and business forms.  Nevertheless, out of an abundance of caution, the Debtors seek authority to continue using their existing correspondence and business forms without reference to the Debtors' status as debtors in possession.

on all checks; *provided further* that, with respect to checks that the Debtors or their agents print themselves, the Debtors or their agents will begin printing the "Debtor in Possession" legend on such checks within ten days of entry of the Interim Order.

47.     To reiterate, the Cash Management System is an ordinary course and essential business practice.  Compelling the Debtors to alter their current cash management practices and to modify the Cash Management System to comply with the UST Requirements outlined above would risk disruption to the Debtors' business and jeopardize the Debtors' ability to maximize value for any parties in interest.

**C.     The Debtors Should Be Authorized to Continue Their Deposit Practices under Section 345 of the Bankruptcy Code**

48.     Section 345(a) of the Bankruptcy Code governs a debtor's deposit of cash during a chapter 11 case and authorizes deposits of estate money that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit."  11 U.S.C. § 345(a).  If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires a debtor to obtain from the entity with which the money is deposited a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  11 U.S.C. § 345(b).  Alternatively, the estate may require the entity to deposit governmental securities under 31 U.S.C. § 9303, which permits a person who is required by law to give a surety bond, to instead provide a governmental obligation.

49.     While the Debtors believe they are in compliance with section 345(b) of the Bankruptcy Code, to the extent they are not, the Debtors submit that given their limited liquidity and need to conserve cash, incurring administrative expense complying with section 345(b)

would unnecessarily drain scarce resources.  Moreover, each of the Bank Accounts is insured by the FDIC, other than the Bank Accounts held at Bank of Montreal, which are insured by the CDIC.  While the Debtors are only seeking a 30-day waiver of such requirements in the interim, should it become necessary, the Debtors request that, upon entry of the Final Order, their current deposit practices be deemed to satisfy section 345(b) of the Bankruptcy Code.

50.     To the extent that any Bank at which the Debtors maintain accounts has not signed such an agreement and to the extent the Debtors, as of the Petition Date, do not otherwise comply with deposit and investment guidelines under section 345(b) of the Bankruptcy Code, the Debtors request a 30-day extension to ensure compliance.  During the extension period, the Debtors propose to engage the U.S. Trustee in discussions to determine if compliance with section 345(b)—to the extent not already met—and other UST Requirements (to the extent not waived) is necessary or appropriate.

51.     The Debtors believe that the benefits of the requested extension far outweigh any potential harm to the estates.  *See, e.g., In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (noting that one of the factors to consider in determining whether cause exists for "relief from the strictures of § 345(b)" is whether benefits to the debtor outweigh the harm, if any, to the estate).  During the proposed extension period, the Debtors will contact each of their Banks that is party to a Uniform Depository Agreement with the U.S. Trustee, provide such Banks with each of the Debtors' tax identification numbers, the Debtors' jointly administered case number, and identify each of their Bank Accounts at the Banks as being held by a debtor in possession.  For Banks not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors will use good-faith efforts to cause the Banks to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee.  The Debtors' deposits are prudent and

designed to yield the maximum reasonable net return on the funds deposited, taking into account the safety of such deposits. The Debtors operate a sophisticated business and hold their funds at reputable, stable banking institutions and monitor their cash flows and positions on a daily basis.

52.     To the extent the Debtors are not in strict compliance with section 345(b) of the Bankruptcy Code, requiring the Debtors to do so will only distract the Debtors' management and cause the Debtors' estates to needlessly incur potentially substantial costs to the detriment of all creditors. Based on the foregoing, the Debtors submit that the relief requested is in the best interests of their estates and any interested parties, and, therefore, should be granted.

**D.     The Debtors Should Be Authorized to Continue Intercompany Transactions in the Ordinary Course of Business**

53.     As noted above, the Intercompany Transactions are made in the ordinary course. As a result, at any given time there may be Intercompany Claims between the Debtors. Because the Debtors engage in the Intercompany Transactions regularly and such transactions are common among enterprises such as the Debtors, the Intercompany Transactions are ordinary course transactions under section 363(c)(1) of the Bankruptcy Code and do not require Court approval. Nonetheless, out of an abundance of caution, the Debtors seek authority to engage in such transactions postpetition.

54.     Moreover, ordinary course Intercompany Transactions are integral to ensure the Debtors are able to operate their businesses as debtors in possession and to preserve valuable estate assets. Absent the Intercompany Transactions, the Cash Management System would be severely disrupted, and the Debtors' businesses in turn would be materially harmed. The Debtors would be unable to centralize and control cash management, exposing the Debtors to the risks of cash leakage and misallocation of critical resources. Moreover, the Intercompany Transactions provide the Debtors with access to liquidity that may be necessary to fund ongoing operations.

Accordingly, the Debtors respectfully submit that the authority to make Intercompany Transactions in the ordinary course is in the best interest of their estates.

**E.   Granting Administrative Expense Priority to Postpetition Intercompany Claims Is Necessary and Appropriate**

55.   The Debtors also request that the Court grant administrative expense status to all Intercompany Claims against a Debtor by another Debtor that arise postpetition as a result of an Intercompany Transaction, subject and junior in all respects to any superpriority claims, including adequate protection claims, granted pursuant to any order approving the Debtors' debtor in possession financing facility.  If Intercompany Claims are accorded such status, each Debtor using funds that flow through the Cash Management System will continue to bear the ultimate responsibility for its ordinary course transactions with Debtor affiliates.

56.   The Debtors' funds are aggregated in the Cash Management System.  The Debtors track all fund transfers in the their accounting system and have the ability to identify and account for all Intercompany Transactions, including all cash receipts and disbursements.  Continuation of the Intercompany Transactions is in the best interests of the Debtors, their estates, and parties in interest.  To ensure that any one Debtor will not fund, at the expense of its creditors, the operations of any other Debtor, the Debtors request that, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, all Intercompany Claims arising after the Petition Date be accorded administrative expense priority.  The Debtors anticipate that Intercompany Claims will be recorded on the Debtors' books and records and not cash settled.

**F.   The Court Should Authorize the Debtor to Pay Bank Fees, Processing Fees and Other Similar Service Charges**

57.   Payment of the Bank Fees, Processing Fees and other similar service charges is in the best interests of the Debtors and parties in interest in these cases because it will prevent any

disruption to the Cash Management System.  The Debtors also request the Banks be authorized to charge back returned items to the Bank Accounts in the normal course of business. The Debtors require this relief to minimize the disruption of the Cash Management System and their Bank Accounts and to assist them in accomplishing a smooth transition to operating in chapter 11.

### REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY TO AVOID IMMEDIATE AND IRREPARABLE HARM

58.     The Debtors seek immediate authorization for the relief contemplated by this Motion.  Pursuant to Rule 6003(b) of the Bankruptcy Rules, the Court cannot grant relief regarding "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within twenty-one (21) days of the filing of the petition unless the relief is "necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003(b).  For the reasons set forth above, the Debtors submit that the requirements of Bankruptcy Rule 6003(b) are met and that the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

59.     In addition, by this Motion, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  For the reasons set forth above, the Debtors submit that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h).

RLF1 21407199v.10

## RESERVATION OF RIGHTS

60.     Nothing contained herein is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract or lease, pursuant to section 365 of the Bankruptcy Code.

## NOTICE

61.     The Debtors will serve notice of this Motion upon:  (i) the Office of the United States Trustee; (ii) the Debtors' consolidated list of creditors holding the thirty (30) largest unsecured claims; (iii) counsel to the agent under the Debtors' prepetition credit facility; (iv) counsel to the lenders under the Debtors' proposed postpetition debtor-in-possession financing; (v) the Internal Revenue Service; (vi) the United States Attorney's Office for the District of Delaware; (vii) the Banks; and (viii) all parties entitled to notice pursuant to Local Rule 9013-1(m).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

62.     No prior request for relief sought in this Motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order, attached hereto as **Exhibit A**, and the Final Order, attached hereto as **Exhibit B**, and grant such other and further relief the Court may deems just and proper.

Dated:  August 5, 2019
Wilmington, Delaware

/s/ Zachary I. Shapiro
**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Michael J. Merchant (No. 3854)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
Megan E. Kenney (No. 6426)
Sarah E. Silveira (No. 6580)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Scott L. Alberino (*pro hac vice* admission pending)
Joanna Newdeck (*pro hac vice* admission pending)
2001 K Street N.W.
Washington, D.C. 20006
Telephone:  (202) 887-4000
Facsimile:  (202) 887-4288

*Proposed Counsel to the Debtors and Debtors in Possession*

RLF1 21407199v.10

**<u>Exhibit A</u>**

**Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Perkins & Marie Callender's, LLC, *et al.*,[1] | ) | Case No. 19-[●] ([●]) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | |

## INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF THE DEBTORS' EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (III) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the **"Motion"**)[2] of Perkins & Marie Callender's, LLC (**"P&MC"**) and its above-captioned affiliated debtor entities (collectively, with P&MC, the **"Debtors"**) in the above-captioned Chapter 11 Cases for entry of interim and final orders, pursuant to sections 105(a), 345(b), and 363 of the Bankruptcy Code, Bankruptcy Rule 2015 and Local Rule 2015-2, (i) authorizing the Debtors to continue to use their existing Cash Management System and open the Restricted Account; (ii) authorizing the continued performance of Intercompany Transactions; (iii) waiving certain bank account and related requirements of the U.S. Trustee; and (iv) granting related relief; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core proceeding pursuant to 28 U.S.C. § 157; and venue of these Chapter 11 Cases and the Motion are

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225).  The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion was sufficient under the circumstances, and it appearing that no other or further notice

need be provided; and this Court having held a hearing (the "**Hearing**") to consider the interim

relief requested in the Motion; and upon the First Day Declaration and the record of the Hearing;

and the Court having found that the relief requested in the Motion is in the best interest of the

Debtors, their estates, their creditors, and all other parties in interest; and upon the record herein;

and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a), 345(b), and 363(c)(1) of

the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management

System and to collect, concentrate and disburse cash in accordance with the Cash Management

System, subject to the terms hereof.

3.      The Debtors are authorized to continue to utilize all third party providers,

including Credit Card Processors, necessary for the administration of their Cash Management

System.  In addition, the Debtors are authorized, but not directed, to pay all prepetition or

postpetition amounts due to such third party providers, including all Processing Fees; *provided*

*that* payments on account of prepetition Processing Fees shall not exceed $59,000 in the

aggregate pursuant to this Interim Order without further order of the Court..

4.      The Debtors are authorized in the reasonable exercise of their business judgment,

to (i) designate, maintain and continue to use, with the same account numbers, all of their bank

accounts in existence on the Petition Date (collectively, the "**Bank Accounts**"), including,

without limitation, those bank accounts identified on **<u>Exhibit C</u>** to the Motion, (ii) use, in their

2

present form, any and all preprinted checks and other documents related to the Bank Accounts, (iii) preserve the reporting and accounting mechanisms used by the Debtors in respect of the Bank Accounts, and (iv) treat such Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles and document forms as those employed prior to the Petition Date; *provided* that once the Debtors' existing check stock, if any, has been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; *provided further* that, with respect to checks that the Debtors or their agents print themselves, the Debtors or their agents shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such checks within ten (10) days after the date of entry of this Interim Order.

5.      The Debtors will maintain accurate and detailed records of all transfers, including, but not limited to, Intercompany Transactions, so as to permit all such transactions to be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions; *provided* that the Debtors shall not, without further order of the Court, make payments or other Intercompany Transfers to Debtors P&MC Real Estate Holding LLC and P&MC's Holding Corp; *provided further* that, without further order of the Court, the Debtors shall not fund any amounts on behalf the First Closing Partnerships and shall only fund amounts on behalf of the Second Closing Partnerships and the Operating Partnership that are necessary to avoid immediate and irreparable harm to the Debtors in an aggregate amount not to exceed $210,000.00, which amount consists of prepetition Covered Taxes and Fees (as defined in the Taxes Motion) and prepetition obligations on account of Compensation and Benefits Programs (as defined in the Wages Motion); *provided further* that, without further order of the Court, the

RLF1 21407199v.10

Debtors shall only fund amounts on behalf of the Second Closing Partnerships and the Operating Partnerships on account of post-petition obligations incurred by such partnership in an aggregate amount not to exceed $76,000.00.  All Intercompany Claims held by one Debtor against another Debtor arising from postpetition Intercompany Transactions shall be entitled to administrative expense priority status pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

6.      The Banks are hereby authorized to continue to service and administer all of the Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the ordinary course in a manner consistent with any agreements between the Banks and the Debtors that existed prior to the Petition Date, and to receive, process, honor and pay any and all checks, drafts, wires, electronic transfer requests and other items made on such Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that none of the Banks shall be required to make transfers from or honor any draws or presentations against any of the Bank Accounts except to the extent of collected funds available in such respective Bank Accounts; *provided further* that nothing contained herein shall authorize any of the Banks to honor on a postpetition basis any wire, drafts, checks or other transfers issued or dated prior to the Petition Date, except that the Debtors may provide the Banks specific written instructions (including by electronic mail) to honor or pay prepetition wire, drafts, checks, or other items presented for payment against the Bank Accounts consistent with any other orders of this Court authorizing such payment, and the Banks shall use commercially reasonable efforts to comply with all such specific instructions; *provided further* that the Debtors may provide the Banks specific written instructions (including by email) to dishonor or refuse to pay particular prepetition wire, drafts, checks or other items presented for payment against the Bank Accounts, subject to the normal procedures, charges and requirements for stop-payment orders and similar

4

instructions set forth in the respective account agreements relating to the Bank Accounts, and the Banks shall use commercially reasonable efforts to comply with all such specific instructions.

7.     The Banks are authorized to accept and honor all representations from the Debtors as to which wires, checks, drafts or other items drawn on any Bank Account should be honored or dishonored consistent with any order(s) of this Court, whether the wires, checks, drafts or other items are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is or is not authorized by an order of this Court.  No Bank shall have a duty to inquire as to whether such payments are authorized by any order of this Court, and no Bank shall incur, and each Bank is hereby released from, any liability to any party on account of (a) relying upon the Debtors' instructions, or acting at the Debtors' direction, as to which wires, checks, drafts or other items drawn on any of the Bank Accounts should be honored or dishonored or for such Bank's inadvertence in honoring any wire, check, draft, or other item drawn on any of the Bank Accounts at variance from the Debtors instructions, (b) honoring any prepetition wires, checks, drafts, or other items drawn on any of the Bank Accounts in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition wire, check, draft or other item, or (c) an innocent mistake despite implementation of reasonable handling procedures; *provided, however,* that the foregoing shall not release any Bank from liability on account of any act or omission on the part of such bank that constitutes gross negligence or willful misconduct.

8.     The Debtors and each Bank are hereby authorized to continue to perform pursuant to the terms of any prepetition cash management agreements that may exist between them relating to the Bank Accounts.  Except to the extent otherwise directed by the terms of this Interim Order, all of the provisions of such agreements, including, without limitation, the

RLF1 21407199v.10

termination and fee provisions, shall remain in full force and effect.   The parties to such agreements shall continue to enjoy the rights and remedies afforded them under such agreements, except to the extent expressly modified by the terms of this Interim Order or by operation of the Bankruptcy Code.  The Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, subject to paragraph 9 hereof.

9.     The Debtors are authorized to open any new bank accounts or close any of their existing Bank Accounts as the Debtors may deem necessary and appropriate in the ordinary course of business; *provided* that notice of the opening of any new bank account or closing of any Bank Account shall be provided as soon as reasonably practicable but no less than within fifteen (15) days thereof to (i) the U.S. Trustee, (ii) counsel to any official committee appointed in these Chapter 11 Cases, and (iii) counsel to the DIP Agent; *provided further* that the Debtors shall open any new such bank accounts at banks that have executed a Uniform Depository Agreement (a "**UDA**") with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

10.     With regard to the Banks that are party to a UDA with the U.S. Trustee, within fifteen (15) days from the date of the entry of this Interim Order, the Debtors shall (a) contact each Bank, (b) provide each Bank with each of the Debtors' tax identification numbers and the jointly administered case number, and (c) identify each of their Bank Accounts held at such Banks as being held by a debtor-in-possession.

11.     With regard to the Banks at which the Debtors maintain Bank Accounts that are not a party to a UDA with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause

6

such Bank(s) to execute, within thirty (30) days from the date of the entry of this Interim Order, a UDA in a form prescribed by the U.S. Trustee.

12.     The Debtors shall have thirty (30) days (or such additional time as to which the U.S. Trustee may agree) from the Petition Date within which to either come into compliance with section 345(b) of the Bankruptcy Code or to make other such arrangements as agreed to by the U.S. Trustee, and such extension is without prejudice to the Debtors' right to request a further extension or waiver of the requirements of section 345(b) of the Bankruptcy Code.

13.     The Banks are hereby authorized to debit from the Bank Accounts all undisputed customary bank fees and charges, arising in the ordinary course of business, regardless of whether such fees and charges arose prepetition or postpetition; *provided* that such fees and charges are authorized under the applicable account agreement with the Debtors; *provided further* that nothing set forth herein shall authorize any of the Banks to debit any claim or charges not arising in the ordinary course of business and not permitted under the applicable account agreements; *provided further* that payments on account of prepetition Bank Fees shall not exceed $35,000 in the aggregate pursuant to this Interim Order without further of the Court. Each Bank is authorized to charge back against the Bank Accounts, in the ordinary course of business and subject to any applicable account agreement, (a) any returned items drawn or presented against the Bank Accounts (regardless of whether such returned items originated prepetition or postpetition), and (b) any over-advances, credit balances or other customary fees and service charges incurred as a result of returned or dishonored items (regardless of whether such items originated prepetition or postpetition).

14.     The Debtors are hereby authorized, but not directed, to open the Restricted Account consistent with, and as described in, the Motion, and the Restricted Account shall be

deemed a Bank Account for purposes of this Interim Order.  Regions shall provide ten (10) days'

written notice (which may be by email) to counsel to the Debtors, counsel to any committee of

unsecured creditors appointed in these Chapter 11 Cases, and counsel to the DIP Agent prior to

drawing on the Restricted Account to satisfy any unpaid Treasury Management Obligations.  If

such notice is properly provided and no party has objected thereto, Regions shall be permitted to

draw upon the Restricted Account to satisfy such obligations without further order of the Court.

The Debtors are authorized to close the Restricted Account provided that they provide ten (10)

days' notice to counsel to Regions or upon further order of the Court.  In the event the Debtors

elect to close the Restricted Account, Regions shall not be required to continue to provide

Treasury Management Services absent further agreement between the Debtors and Regions or

further order of the Court.

15. The Debtors are hereby authorized, but not directed, to implement and maintain

the Business Expense Card Payment System as of the Petition Date.

16. Nothing in this Interim Order (a) is intended or shall be deemed to constitute an

assumption of any agreement pursuant to section 365 of the Bankruptcy Code, or (b) shall

impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with

respect to the validity, priority or amount of any claim against the Debtors and their estates.

17. Notwithstanding the Debtors' authorized use of a consolidated cash management

system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the

disbursements of each particular Debtor, regardless of which entity remits payment for those

disbursements.

18. The Debtors are authorized to take any and all actions necessary to effectuate the

relief granted herein.

8

19.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

20.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

21.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

22.     A final hearing to consider the relief requested in the Motion shall be held on _____, 2019 at ___:____ __.m. (prevailing Eastern Time) and any objections to entry of such order shall be in writing and filed with this Court no later than _____, 2019 at 4:00 p.m. (prevailing Eastern Time) and served on: (i) the Debtors, c/o Perkins & Marie Callender's, LLC, 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709, Attn: Andy Whiteley; (ii) proposed counsel to the Debtors: (a) Akin Gump Strauss Hauer & Feld LLP, 2001 K Street N.W., Washington, D.C. 20006, Attn: Scott L. Alberino, Esq. (salberino@akingump.com) and Joanna F. Newdeck, Esq. (jndewdeck@akingump.com), and (b) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com); (iii) counsel to the DIP Agent and the Prepetition Agent, Moore & Van Allen PLLC, 100 N. Tryon St., Suite 4700, Charlotte, NC 28202, Attn: David L. Eades, Esq. (davideades@mvalaw.com) and Luis M. Lluberas, Esq. (luislluberas@mvalaw.com); and (iv) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Linda J. Casey, Esq. (linda.casey@usdoj.gov).

23.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.

Date: _____, 2019          _____
        Wilmington, Delaware                  UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Final Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Perkins & Marie Callender's, LLC, *et al.*,[1] | ) | Case No. 19-[●] ([●]) |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | |

### FINAL ORDER (I) AUTHORIZING CONTINUED
### USE OF THE DEBTORS' EXISTING CASH MANAGEMENT SYSTEM
### AND BANK ACCOUNTS; (II) AUTHORIZING CONTINUED PERFORMANCE OF
### INTERCOMPANY TRANSACTIONS; (III) WAIVING CERTAIN UNITED STATES
### TRUSTEE REQUIREMENTS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of Perkins & Marie Callender's, LLC ("**Perkins**") and its above-captioned affiliated debtor entities (collectively, with P&MC, the "**Debtors**") in the above-captioned Chapter 11 Cases for entry of interim and final orders pursuant to sections 105, 345, and 363 of the Bankruptcy Code Bankruptcy Rule 2015 and Local Rule 2015-2, (i) authorizing the Debtors to continue to use their Cash Management System and open the Restricted Account; (ii) authorizing the continued performance of Intercompany Transactions; (iii) waiving certain bank account and related requirements of the U.S. Trustee; and (iv) granting related relief; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core proceeding pursuant to 28 U.S.C. § 157; and venue of these Chapter 11 Cases and the Motion are proper in this

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225).  The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and this Court having held a hearing, if any (the "**Hearing**"), to consider the final relief requested in the Motion; and upon the First Day Declaration and the record of the Hearing; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, their estates and all other parties in interest; and upon the record herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a), 345(b), and 363(c)(1) of the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management System and to collect, concentrate and disburse cash in accordance with the Cash Management System, subject to the terms hereof.

3.      The Debtors are authorized to continue to utilize all third party providers, including Credit Card Processors, necessary for the administration of their Cash Management System.   In addition, the Debtors are authorized, but not directed, to pay all prepetition or postpetition amounts due to such third party providers, including all Processing Fees.

4.      The Debtors are authorized in the reasonable exercise of their business judgment, to (i) designate, maintain and continue to use, with the same account numbers, all of their bank accounts in existence on the Petition Date (collectively, the "**Bank Accounts**"), including, without limitation, those bank accounts identified on **Exhibit C** to the Motion, (ii) use, in their present form, any and all preprinted checks and other documents related to the Bank Accounts, (iii) preserve the reporting and accounting mechanisms used by the Debtors in respect of the

RLF1 21407199v.10

Bank Accounts, and (iv) treat such Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles and document forms as those employed prior to the Petition Date; *provided* that once the Debtors' existing check stock, if any, has been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; *provided further* that, with respect to checks that the Debtors or their agents print themselves, the Debtors or their agents shall print the "Debtor in Possession" legend and the bankruptcy case number on such checks.

5.    The Debtors will maintain accurate and detailed records of all transfers, including, but not limited to, Intercompany Transactions, so as to permit all such transactions to be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions; *provided* that the Debtors shall not, without further order of the Court, make payments or other Intercompany Transfers to Debtors P&MC Real Estate Holding LCC and P&MC's Holding Corp.  All Intercompany Claims held by one Debtor against another Debtor arising from postpetition Intercompany Transactions shall be entitled to administrative expense priority status pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

6.    The Banks are hereby authorized to continue to service and administer all of the Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the ordinary course in a manner consistent with any agreements between the Banks and the Debtors that existed prior to the Petition Date, and to receive, process, honor and pay any and all checks, drafts, wires, electronic transfer requests and other items made on such Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that none of the Banks shall be required to make transfers from or honor any draws or presentations against

any of the Bank Accounts except to the extent of collected funds available in such respective Bank Accounts; *provided further* that nothing contained herein shall authorize any of the Banks to honor on a postpetition basis any wire, drafts, checks or other transfers issued or dated prior to the Petition Date, except that the Debtors may provide the Banks specific written instructions (including by electronic mail) to honor or pay prepetition wire, drafts, checks, or other items presented for payment against the Bank Accounts consistent with any other orders of this Court authorizing such payment, and the Banks shall use commercially reasonable efforts to comply with all such specific instructions; *provided further* that the Debtors may provide the Banks specific written instructions (including by email) to dishonor or refuse to pay particular prepetition wire, drafts, checks or other items presented for payment against the Bank Accounts, subject to the normal procedures, charges and requirements for stop-payment orders and similar instructions set forth in the respective account agreements relating to the Bank Accounts, and the Banks shall use commercially reasonable efforts to comply with all such specific instructions.

7.     The Banks are authorized to accept and honor all representations from the Debtors as to which wires, checks, drafts or other items drawn on any Bank Account should be honored or dishonored consistent with any order(s) of this Court, whether the wires, checks, drafts or other items are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is or is not authorized by an order of this Court.  No Bank shall have a duty to inquire as to whether such payments are authorized by any order of this Court, and no Bank shall incur, and each Bank is hereby released from, any liability to any party on account of (a) relying upon the Debtors' instructions, or acting at the Debtors' direction, as to which wires, checks, drafts or other items drawn on any of the Bank Accounts should be honored or dishonored or for such Bank's inadvertence in honoring any wire, check, draft, or other item

4

drawn on any of the Bank Accounts at variance from the Debtors instructions, (b) honoring any prepetition wires, checks, drafts, or other items drawn on any of the Bank Accounts in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition wire, check, draft or other item, or (c) an innocent mistake despite implementation of reasonable handling procedures; *provided, however,* that the foregoing shall not release any Bank from liability on account of any act or omission on the part of such bank that constitutes gross negligence or willful misconduct.

8.    The Debtors and each Bank are hereby authorized to continue to perform pursuant to the terms of any prepetition cash management agreements that may exist between them relating to the Bank Accounts.  Except to the extent otherwise directed by the terms of this Final Order, all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.   The parties to such agreements shall continue to enjoy the rights and remedies afforded them under such agreements, except to the extent expressly modified by the terms of this Final Order or by operation of the Bankruptcy Code.   The Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, subject to paragraph 9 hereof.

9.    The Debtors are authorized to open any new bank accounts or close any of their existing Bank Accounts as the Debtors may deem necessary and appropriate in the ordinary course of business; *provided* that notice of the opening of any new bank account or closing of any Bank Account shall be provided as soon as reasonably practicable but no less than within fifteen (15) days thereof to (i) the U.S. Trustee, (ii) counsel to any official committee appointed

RLF1 21407199v.10

in these cases, and (iii) counsel to the DIP Agent; *provided further* that the Debtors shall open any new such bank accounts at banks that have executed a Uniform Depository Agreement (a "**UDA**") with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

10.     With regard to the Banks that are party to a UDA with the U.S. Trustee, within fifteen (15) days from the date of the entry of the Interim Order, the Debtors shall (a) contact each Bank, (b) provide each Bank with each of the Debtors' tax identification numbers and the jointly administered case number, and (c) identify each of their Bank Accounts held at such Banks as being held by a debtor-in-possession.

11.     With regard to the Banks at which the Debtors maintain Bank Accounts that are not a party to a UDA with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause such Bank(s) to execute, within thirty (30) days from the date of the entry of the Interim Order, a UDA in a form prescribed by the U.S. Trustee.

12.     The Debtors shall have thirty (30) days (or such additional time as to which the U.S. Trustee may agree) from the Petition Date within which to either come into compliance with section 345(b) of the Bankruptcy Code or to make other such arrangements as agreed to by the U.S. Trustee, and such extension is without prejudice to the Debtors' right to request a further extension or waiver of the requirements of section 345(b) of the Bankruptcy Code.

13.     The Banks are hereby authorized to debit from the Bank Accounts all undisputed customary bank fees and charges, arising in the ordinary course of business, regardless of whether such fees and charges arose prepetition or postpetition; *provided* that such fees and charges are authorized under the applicable account agreement with the Debtors; *provided further* that nothing set forth herein shall authorize any of the Banks to debit any claim or

charges not arising in the ordinary course of business and not permitted under the applicable account agreements.  Each Bank is authorized to charge back against the Bank Accounts, in the ordinary course of business and subject to any applicable account agreement, (a) any returned items drawn or presented against the Bank Accounts (regardless of whether such returned items originated prepetition or postpetition), and (b) any over-advances, credit balances or other customary fees and service charges incurred as a result of returned or dishonored items (regardless of whether such items originated prepetition or postpetition).

14.    The Debtors are hereby authorized, but not directed, to open the Restricted Account consistent with, and as described in, the Motion, and the Restricted Account shall be deemed a Bank Account for purposes of this Interim Order.  Regions shall provide ten (10) days' written notice (which may be by email) to counsel to the Debtors, counsel to any committee of unsecured  creditors appointed in these Chapter 11 Cases, and counsel to the DIP Agent prior to drawing on the Restricted Account to satisfy any unpaid Treasury Management Obligations.  If such notice is properly provided and no party has objected thereto, Regions shall be permitted to draw upon the Restricted Account to satisfy such obligations without further order of the Court. The Debtors are authorized to close the Restricted Account provided that they provide ten (10) days' notice to counsel to Regions or upon further order of the Court.  In the event the Debtors elect to close the Restricted Account, Regions shall not be required to continue to provide Treasury Management Services absent further agreement between the Debtors and Regions or further order of the Court.

15.    The Debtors are hereby authorized, but not directed, to implement and maintain the Business Expense Card Payment System as of the Petition Date.

16.     Nothing in this Final Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code, or (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates.

17.     Notwithstanding the Debtors' authorized use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each particular Debtor, regardless of which entity remits payment for those disbursements.

18.     The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

19.     The requirements set forth in Bankruptcy Rule 6004(a) are satisfied.

20.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

21.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Final Order.


Date: _____, 2019          _____
        Wilmington, Delaware          UNITED STATES BANKRUPTCY JUDGE

**Exhibit C**

**List of Bank Account**

| Debtor | Bank | Type of Account | Last four digits of Bank Account No. |
|---|---|---|---|
| Perkins & Marie Callender's, LLC | Regions | P&MC Master Depository Account | 6732 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3857 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3997 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3970 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 6791 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3784 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 8175 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3822 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3776 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3741 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 4047 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 4004 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 4012 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 6813 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3873 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3849 |

| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 0278 |
|---|---|---|---|
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 3806 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 6775 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 0197 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 6740 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Collections Account | 4055 |
| Perkins & Marie Callender's, LLC | Regions | Perkins Foxtail AP Account | 0584 |
| Perkins & Marie Callender's, LLC | Regions | Perkins AP Account | 0539 |
| Perkins & Marie Callender's, LLC | Regions | Perkins Domestic Marketing Fund Account | 5371 |
| Perkins & Marie Callender's, LLC | Regions | Perkins Promotions Account | 6986 |
| Perkins & Marie Callender's Holding, LLC | Regions | Perkins & Marie Callender's Holding, LLC Account | 1686 |
| Perkins & Marie Callender's, LLC | Regions | P&MC Main Operating Account | 5342 |
| Perkins & Marie Callender's, LLC | Regions | Marie Callender's Wholesalers Store AP Account | 5770 |
| Perkins & Marie Callender's, LLC | Regions | Marie Callender's AP Account | 7587 |
| Perkins & Marie Callender's, LLC | Regions | Marie Callender's Marketing Fund Account | 8805 |

3

| | | | |
|---|---|---|---|
| Perkins Promotions LLC | Regions | Marie Callender's Promotions Account | 2456 |
| Perkins & Marie Callender's, LLC | Regions | Marie Callender's Main Operating Account | 7312 |
| Perkins & Marie Callender's, LLC | Bank of Montreal | Perkins Canadian Operating Account | 5063 |
| Perkins & Marie Callender's, LLC | Bank of Montreal | Perkins Canadian Collections Account | 8897 |
| Perkins & Marie Callender's, LLC | Wells Fargo | Wells Fargo Concentration Account | 0418 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 1094 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 3046 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 6591 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4739 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 6609 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 5475 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 6617 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4754 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4762 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 6625 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 5536 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 3020 |

RLF1 21407199v.10

| | | | |
|---|---|---|---|
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 9667 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 5641 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4770 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4788 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4115 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4123 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 3355 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 8957 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4796 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4721 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 3392 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 7387 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 4805 |
| Perkins & Marie Callender's, LLC | Wells Fargo | P&MC Collections Account | 9675 |
| Perkins & Marie Callender's, LLC | Wells Fargo | Marie Callender's Depository Account | 4983 |
| Marie Callender's Pie Shops LLC | Wells Fargo | Marie Callender's AMEX Account | 0614 |

RLF1 21407199v.10

| | | | |
|---|---|---|---|
| Marie Callender's Pie Shops LLC | Wells Fargo | Marie Callender's Visa/Mastercard Account | 0606 |
| Marie Callender's Pie Shops LLC | Wells Fargo | Marie Callender's Payroll Account | 1150 |
| Marie Callender's Pie Shops LLC | Wells Fargo | Marie Callender's Concentration Account | 2110 |
| Perkins & Marie Callender's, LLC | U.S. Bank | U.S. Bank Concentration Account | 0115 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4169 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3301 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4235 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3210 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 5322 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 8174 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 9881 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 1949 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3202 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 7867 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3319 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 8302 |

RLF1 21407199v.10

| | | | |
|---|---|---|---|
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 9917 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3327 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3757 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3335 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 9974 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4945 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 5017 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 0030 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 0147 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4937 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 9899 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 9745 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4532 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3286 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 5025 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3782 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 5150 |

RLF1 21407199v.10

| | | | |
|---|---|---|---|
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 0295 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3236 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 5101 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3228 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4761 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 5686 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 9562 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 1697 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 0345 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 9907 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4011 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4994 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 0839 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 5009 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3244 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 0451 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 9737 |

RLF1 21407199v.10

| | | | |
|---|---|---|---|
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 6911 |
| Perkins & Marie Callender's, LLC | U.S. Bank, | P&MC Collections Account | 3343 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4553 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 5303 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 3251 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 4110 |
| Perkins & Marie Callender's, LLC | U.S. Bank | P&MC Collections Account | 0519 |
| Perkins & Marie Callender's, LLC | U.S. Bank. | P&MC Collections Account | 3293 |
| Perkins & Marie Callender's, LLC | Associated Bank | P&MC Collections Account | 5308 |
| Perkins & Marie Callender's, LLC | Associated Bank | P&MC Collections Account | 0059 |
| Perkins & Marie Callender's, LLC | Center State Bank | P&MC Collections Account | 8594 |
| Perkins & Marie Callender's, LLC | Commerce Bank | P&MC Collections Account | 7393 |
| Perkins & Marie Callender's, LLC | Farmers State Bank | P&MC Collections Account | 5468 |
| Perkins & Marie Callender's, LLC | Farmers State Bank | P&MC Collections Account | 0701 |
| Perkins & Marie Callender's, LLC | Jackson County Bank | P&MC Collections Account | 4020 |
| Perkins & Marie Callender's, LLC | Premier Bank | P&MC Collections Account | 8115 |
| Perkins & Marie Callender's, LLC | RCB Bank | P&MC Collections Account | 1800 |

RLF1 21407199v.10

| | | | |
|---|---|---|---|
| Perkins & Marie Callender's, LLC | SunTrust Bank | P&MC Collections Account | 2481 |
| Perkins & Marie Callender's, LLC | SunTrust Bank | P&MC Collections Account | 0461 |

10

**<u>Exhibit D</u>**

**Cash Management Chart**



## Perkins & Foxtail Fairfield Cash Management

**P&MC Collections Accounts**

- Wells Fargo Collections Accounts
- US Bank Collections Accounts
- Regions Collections Accounts
- Collections Accounts with Local Banks [1]

Wells Fargo Concentration Account (0418)

US Bank Concentration Account (0115)

- Franchisee royalties
- Foxtail Fairfield receipts
- Store credit card receipts
- Miscellaneous deposits

Regions P&MC Master Depository Account (6732)

- Perkins AP (ACH)
- MC AP (ACH)
- Insurance
- Perkins payroll
- Certain MC payroll
- Payroll taxes
- Sales tax
- Utilities
- Foxtail Fairfield AP (ACH)

Regions P&MC Main Operating Account (5342) [2]

Perkins Franchisee gift card sales

Corporate gift card sales

Regions Perkins Promotions Account (6986)

Gift card reimbursement

Franchisee marketing contribution

Corporate store marketing contribution

Regions Perkins Marketing Fund Account (5371)

Perkins marketing and advertising payments

Regions Perkins AP Account (0539)

Perkins AP (Checks)

Regions Foxtail AP Account (0584)

Foxtail AP (Checks)

Regions Perkins & Marie Callender's Holding LLC Account (1686)

Federal Tax Payments

(1) Local Banks include Associated Bank, Center State Bank, Commerce Bank, Farmers State Bank, Jackson County Bank, Premier Bank, RCB Bank and SunTrust Bank.
(2) The MC Main Operating Account (7312) periodically transfers to the P&MC Main Operating Account (5342).



**Marie Callender's ("MC") & Foxtail Corona Cash Management**

(1) The MC Main Operating Account (7312) periodically transfers to the P&MC Main Operating Account (5342).

2

## File a First Day Motion:

19-11743 Perkins & Marie Callender's, LLC

Type: bk                          Chapter: 11 v                    Office: 1 (Delaware)
Assets: y                         Case Flag: VerifDue, PlnDue,
                                  DsclsDue

### U.S. Bankruptcy Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Zachary I Shapiro entered on 8/5/2019 at 7:30 AM EDT and filed on 8/5/2019

**Case Name:**         Perkins & Marie Callender's, LLC
**Case Number:**       19-11743
**Document Number:** 8

**Docket Text:**
Motion Regarding Chapter 11 First Day Motions *(Motion of Debtors for Interim and Final Orders (I) Authorizing Continued Use of the Debtors Existing Cash Management System and Bank Accounts; (II) Authorizing Continued Performance of Intercompany Transactions; (III) Waiving Certain United States Trustee Requirements; and (IV) Granting Related Relief)* Filed By Perkins & Marie Callender's, LLC (Shapiro, Zachary)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** W:\BJW\Perkins - Cash Management Motion.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=8/5/2019] [FileNumber=15909710-0]
[1120a18b19969a615cfda6f3fa0327fcec0080ba4afaa7137404a836ccca1dd348f3
0f5e04b85d21e883925d0dcfa366a423e7be2608fb771856640030a66041]]

**19-11743 Notice will be electronically mailed to:**

Daniel J. DeFranceschi on behalf of Debtor Perkins & Marie Callender's, LLC
defranceschi@rlf.com, RBGroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Brett Michael Haywood on behalf of Debtor Perkins & Marie Callender's, LLC
haywood@rlf.com, rbgroup@rlf.com,ann-jerominski-2390@ecf.pacerpro.com

Megan Kenney on behalf of Debtor Perkins & Marie Callender's, LLC
kenney@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

Michael Joseph Merchant on behalf of Debtor Perkins & Marie Callender's, LLC
merchant@rlf.com, rbgroup@rlf.com;ann-jerominski-2390@ecf.pacerpro.com

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Perkins & Marie Callender's, LLC, *et al.*, [1] | ) | Case No. 19-11743 (KG) |
|  | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | **Re: D.I. 8** |

## INTERIM ORDER (I) AUTHORIZING CONTINUED USE OF THE DEBTORS' EXISTING CASH MANAGEMENT SYSTEM AND BANK ACCOUNTS; (II) AUTHORIZING CONTINUED PERFORMANCE OF INTERCOMPANY TRANSACTIONS; (III) WAIVING CERTAIN UNITED STATES TRUSTEE REQUIREMENTS; AND (IV) GRANTING RELATED RELIEF

Upon the motion (the **"Motion"**)[2] of Perkins & Marie Callender's, LLC ("**P&MC**") and

its above-captioned affiliated debtor entities (collectively, with P&MC, the **"Debtors"**) in the

above-captioned Chapter 11 Cases for entry of interim and final orders, pursuant to sections

105(a), 345(b), and 363 of the Bankruptcy Code, Bankruptcy Rule 2015 and Local Rule 2015-2,

(i) authorizing the Debtors to continue to use their existing Cash Management System and open

the Restricted Account; (ii) authorizing the continued performance of Intercompany

Transactions; (iii) waiving certain bank account and related requirements of the U.S. Trustee; and

(iv) granting related relief; and the Court having jurisdiction over this matter pursuant to 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States*

*District Court for the District of Delaware*, dated February 29, 2012; and this matter being a core

proceeding pursuant to 28 U.S.C. § 157; and venue of these Chapter 11 Cases and the Motion are

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225). The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion was sufficient under the circumstances, and it appearing that no other or further notice

need be provided; and this Court having held a hearing (the "**Hearing**") to consider the interim

relief requested in the Motion; and upon the First Day Declaration and the record of the Hearing;

and the Court having found that the relief requested in the Motion is in the best interest of the

Debtors, their estates, their creditors, and all other parties in interest; and upon the record herein;

and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The Debtors are authorized, pursuant to sections 105(a), 345(b), and 363(c)(1) of

the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management

System and to collect, concentrate and disburse cash in accordance with the Cash Management

System, subject to the terms hereof.

3.      The Debtors are authorized to continue to utilize all third party providers,

including Credit Card Processors, necessary for the administration of their Cash Management

System.  In addition, the Debtors are authorized, but not directed, to pay all prepetition or

postpetition amounts due to such third party providers, including all Processing Fees; *provided*

*that* payments on account of prepetition Processing Fees shall not exceed $59,000 in the

aggregate pursuant to this Interim Order without further order of the Court..

4.      The Debtors are authorized in the reasonable exercise of their business judgment,

to (i) designate, maintain and continue to use, with the same account numbers, all of their bank

accounts in existence on the Petition Date (collectively, the "**Bank Accounts**"), including,

without limitation, those bank accounts identified on **Exhibit C** to the Motion, (ii) use, in their

2

present form, any and all preprinted checks and other documents related to the Bank Accounts, (iii) preserve the reporting and accounting mechanisms used by the Debtors in respect of the Bank Accounts, and (iv) treat such Bank Accounts for all purposes as accounts of the Debtors as debtors-in-possession and to maintain and continue using these accounts in the same manner and with the same account numbers, styles and document forms as those employed prior to the Petition Date; *provided* that once the Debtors' existing check stock, if any, has been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; *provided further* that, with respect to checks that the Debtors or their agents print themselves, the Debtors or their agents shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such checks within ten (10) days after the date of entry of this Interim Order.

5.      The Debtors will maintain accurate and detailed records of all transfers, including, but not limited to, Intercompany Transactions, so as to permit all such transactions to be readily ascertained, traced, recorded properly and distinguished between prepetition and postpetition transactions; *provided* that the Debtors shall not, without further order of the Court, make payments or other Intercompany Transfers to Debtors P&MC Real Estate Holding LLC and P&MC's Holding Corp; *provided further* that, without further order of the Court, the Debtors shall not fund any amounts on behalf the First Closing Partnerships and shall only fund amounts on behalf of the Second Closing Partnerships and the Operating Partnership that are necessary to avoid immediate and irreparable harm to the Debtors in an aggregate amount not to exceed $210,000.00, which amount consists of prepetition Covered Taxes and Fees (as defined in the Taxes Motion) and prepetition obligations on account of Compensation and Benefits Programs (as defined in the Wages Motion); *provided further* that, without further order of the Court, the

Debtors shall only fund amounts on behalf of the Second Closing Partnerships and the Operating Partnerships on account of post-petition obligations incurred by such partnership in an aggregate amount not to exceed $76,000.00. All Intercompany Claims held by one Debtor against another Debtor arising from postpetition Intercompany Transactions shall be entitled to administrative expense priority status pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

6.      The Banks are hereby authorized to continue to service and administer all of the Bank Accounts as accounts of the Debtors as debtors-in-possession without interruption and in the ordinary course in a manner consistent with any agreements between the Banks and the Debtors that existed prior to the Petition Date, and to receive, process, honor and pay any and all checks, drafts, wires, electronic transfer requests and other items made on such Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; *provided* that none of the Banks shall be required to make transfers from or honor any draws or presentations against any of the Bank Accounts except to the extent of collected funds available in such respective Bank Accounts; *provided further* that nothing contained herein shall authorize any of the Banks to honor on a postpetition basis any wire, drafts, checks or other transfers issued or dated prior to the Petition Date, except that the Debtors may provide the Banks specific written instructions (including by electronic mail) to honor or pay prepetition wire, drafts, checks, or other items presented for payment against the Bank Accounts consistent with any other orders of this Court authorizing such payment, and the Banks shall use commercially reasonable efforts to comply with all such specific instructions; *provided further* that the Debtors may provide the Banks specific written instructions (including by email) to dishonor or refuse to pay particular prepetition wire, drafts, checks or other items presented for payment against the Bank Accounts, subject to the normal procedures, charges and requirements for stop-payment orders and similar

instructions set forth in the respective account agreements relating to the Bank Accounts, and the Banks shall use commercially reasonable efforts to comply with all such specific instructions.

7.   The Banks are authorized to accept and honor all representations from the Debtors as to which wires, checks, drafts or other items drawn on any Bank Account should be honored or dishonored consistent with any order(s) of this Court, whether the wires, checks, drafts or other items are dated prior to, on, or subsequent to the Petition Date, and whether or not the Bank believes the payment is or is not authorized by an order of this Court.  No Bank shall have a duty to inquire as to whether such payments are authorized by any order of this Court, and no Bank shall incur, and each Bank is hereby released from, any liability to any party on account of (a) relying upon the Debtors' instructions, or acting at the Debtors' direction, as to which wires, checks, drafts or other items drawn on any of the Bank Accounts should be honored or dishonored or for such Bank's inadvertence in honoring any wire, check, draft, or other item drawn on any of the Bank Accounts at variance from the Debtors instructions, (b) honoring any prepetition wires, checks, drafts, or other items drawn on any of the Bank Accounts in a good faith belief or upon a representation by the Debtors that the Court has authorized such prepetition wire, check, draft or other item, or (c) an innocent mistake despite implementation of reasonable handling procedures; *provided, however,* that the foregoing shall not release any Bank from liability on account of any act or omission on the part of such bank that constitutes gross negligence or willful misconduct.

8.   The Debtors and each Bank are hereby authorized to continue to perform pursuant to the terms of any prepetition cash management agreements that may exist between them relating to the Bank Accounts.  Except to the extent otherwise directed by the terms of this Interim Order, all of the provisions of such agreements, including, without limitation, the

5

termination and fee provisions, shall remain in full force and effect.   The parties to such agreements shall continue to enjoy the rights and remedies afforded them under such agreements, except to the extent expressly modified by the terms of this Interim Order or by operation of the Bankruptcy Code.  The Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, subject to paragraph 9 hereof.

9.     The Debtors are authorized to open any new bank accounts or close any of their existing Bank Accounts as the Debtors may deem necessary and appropriate in the ordinary course of business; *provided* that notice of the opening of any new bank account or closing of any Bank Account shall be provided as soon as reasonably practicable but no less than within fifteen (15) days thereof to (i) the U.S. Trustee, (ii) counsel to any official committee appointed in these Chapter 11 Cases, and (iii) counsel to the DIP Agent; *provided further* that the Debtors shall open any new such bank accounts at banks that have executed a Uniform Depository Agreement (a "**UDA**") with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

10.     With regard to the Banks that are party to a UDA with the U.S. Trustee, within fifteen (15) days from the date of the entry of this Interim Order, the Debtors shall (a) contact each Bank, (b) provide each Bank with each of the Debtors' tax identification numbers and the jointly administered case number, and (c) identify each of their Bank Accounts held at such Banks as being held by a debtor-in-possession.

11.     With regard to the Banks at which the Debtors maintain Bank Accounts that are not a party to a UDA with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause

6

such Bank(s) to execute, within thirty (30) days from the date of the entry of this Interim Order, a UDA in a form prescribed by the U.S. Trustee.

12.     The Debtors shall have thirty (30) days (or such additional time as to which the U.S. Trustee may agree) from the Petition Date within which to either come into compliance with section 345(b) of the Bankruptcy Code or to make other such arrangements as agreed to by the U.S. Trustee, and such extension is without prejudice to the Debtors' right to request a further extension or waiver of the requirements of section 345(b) of the Bankruptcy Code.

13.     The Banks are hereby authorized to debit from the Bank Accounts all undisputed customary bank fees and charges, arising in the ordinary course of business, regardless of whether such fees and charges arose prepetition or postpetition; *provided* that such fees and charges are authorized under the applicable account agreement with the Debtors; *provided further* that nothing set forth herein shall authorize any of the Banks to debit any claim or charges not arising in the ordinary course of business and not permitted under the applicable account agreements; *provided further* that payments on account of prepetition Bank Fees shall not exceed $35,000 in the aggregate pursuant to this Interim Order without further of the Court. Each Bank is authorized to charge back against the Bank Accounts, in the ordinary course of business and subject to any applicable account agreement, (a) any returned items drawn or presented against the Bank Accounts (regardless of whether such returned items originated prepetition or postpetition), and (b) any over-advances, credit balances or other customary fees and service charges incurred as a result of returned or dishonored items (regardless of whether such items originated prepetition or postpetition).

14.     The Debtors are hereby authorized, but not directed, to open the Restricted Account consistent with, and as described in, the Motion, and the Restricted Account shall be

7

deemed a Bank Account for purposes of this Interim Order. Regions shall provide ten (10) days' written notice (which may be by email) to counsel to the Debtors, counsel to any committee of unsecured creditors appointed in these Chapter 11 Cases, and counsel to the DIP Agent prior to drawing on the Restricted Account to satisfy any unpaid Treasury Management Obligations. If such notice is properly provided and no party has objected thereto, Regions shall be permitted to draw upon the Restricted Account to satisfy such obligations without further order of the Court. The Debtors are authorized to close the Restricted Account provided that they provide ten (10) days' notice to counsel to Regions or upon further order of the Court. In the event the Debtors elect to close the Restricted Account, Regions shall not be required to continue to provide Treasury Management Services absent further agreement between the Debtors and Regions or further order of the Court.

15.    The Debtors are hereby authorized, but not directed, to implement and maintain the Business Expense Card Payment System as of the Petition Date.

16.    Nothing in this Interim Order (a) is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code, or (b) shall impair, prejudice, waive or otherwise affect the rights of the Debtors and their estates with respect to the validity, priority or amount of any claim against the Debtors and their estates.

17.    Notwithstanding the Debtors' authorized use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each particular Debtor, regardless of which entity remits payment for those disbursements.

18.    The Debtors are authorized to take any and all actions necessary to effectuate the relief granted herein.

19.     The requirements of Bankruptcy Rule 6003(b) are satisfied.

20.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

21.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

22.     A final hearing to consider the relief requested in the Motion shall be held on September 11, 2019 at 11:00 a.m. (prevailing Eastern Time) and any objections to entry of such order shall be in writing and filed with this Court no later than September 4, 2019 at 4:00 p.m. (prevailing Eastern Time) and served on: (i) the Debtors, c/o Perkins & Marie Callender's, LLC, 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709, Attn: Andy Whiteley; (ii) proposed counsel to the Debtors: (a) Akin Gump Strauss Hauer & Feld LLP, 2001 K Street N.W., Washington, D.C. 20006, Attn: Scott L. Alberino, Esq. (salberino@akingump.com) and Joanna F. Newdeck, Esq. (jnewdeck@akingump.com), and (b) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi, Esq. (defranceschi@rlf.com); (iii) counsel to the DIP Agent and the Prepetition Agent, Moore & Van Allen PLLC, 100 N. Tryon St., Suite 4700, Charlotte, NC 28202, Attn: David L. Eades, Esq. (davideades@mvalaw.com) and Luis M. Lluberas, Esq. (luislluberas@mvalaw.com); and (iv) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Linda J. Casey, Esq. (linda.casey@usdoj.gov).

23.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.

Date: August 6 2019
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

RLF1 21815050v.1

# EXHIBIT D

**Schedule of Retainers Paid**

Form IR (4/07)

In re:  Perkins & Marie Callender's LLC, et al.          Case No. 19-11743 (KG) (Jointly Administered)
                    Debtors                              Reporting Period:  Initial MOR (August 20, 2019)

## SCHEDULE OF RETAINERS PAID TO PROFESSIONALS
(This schedule is to include each Professional paid a retainer [1])

| Payee | Check | | Name of Payor | Amount | Amount Applied to Date [2] | Balance |
|---|---|---|---|---|---|---|
| | Date | Number | | | | |
| Akin Gump Strauss Hauer & Feld | various | Wire | Perkins & Marie Callender's, LLC | $580,000 | $283,099.09 | $296,900.91 |
| Richards Layton & Finger | various | Wire / ACH | Perkins & Marie Callender's, LLC | $537,291.70 | $537,291.70 | $0 |
| FTI Consulting | 11/27/2018 | Wire | Perkins & Marie Callender's, LLC | $125,000 | $944.03 | $124,055.97 |
| Kurtzman Carson Consultants | 6/28/2019 | Wire | Perkins & Marie Callender's, LLC | $40,000 | $0 | $40,000 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

[1]  Identify all Evergreen Retainers

(2) These retainer balances are subject to reconciliation with respect to estimated amounts billed.  In the event that estimated amounts billed exceed the actual amount of fees and expenses incurred, the difference will be added back to the respective retainers and held as security to satisfy the payment of postpetition fees and expenses, except as otherwise ordered by the Court.

Form IR-2
(4/07)