# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Perkins & Marie Callender's, LLC, et al.,[1] | ) | Case No. 19-11743 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No. 33** |

**ORDER (A) APPROVING BIDDING PROCEDURES FOR SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING STALKING
HORSE PROTECTIONS, (C) SCHEDULING AUCTION FOR, AND HEARING TO
APPROVE, SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS,
(D) APPROVING FORM AND MANNER OF NOTICES OF SALE, AUCTION AND
SALE HEARING, (E) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES AND (F) GRANTING RELATED RELIEF**

Upon the (A) *Debtors' Motion for Entry of an Order (I)(A) Approving Bidding
Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse
Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the
Debtors' Assets, (D) Approving Form and Manner of Notices of Sale, Auction and Sale Hearing,
(E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief; and
(II)(A) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens,
Claims, Interests, and Encumbrances, (B) Approving Assumption and Assignment of Executory
Contracts and Unexpired Leases and (C) Granting Related Relief* (the "**Motion**") [Docket No.
33]; (B) the *Supplement* related thereto[2]; and (C) the *Declaration of Jason Abt* in support thereof

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions, LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225). The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion and the Supplement, as applicable.

[Docket No. 34] of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), for entry of an order (this "**Order**"), pursuant to Bankruptcy Code sections 105, 363, 365, 503 and 507, Bankruptcy Rules 2002, 6004 and 6006, and Local Rule 6004-1, (i) approving the bidding procedures (as may be amended from time to time in accordance with the terms therefore, the "**Bidding Procedures**"), attached hereto as **Exhibit 1**, pursuant to which the Debtors will solicit and select the highest and otherwise best offer for the sale (the "**Sale**") of all or substantially all or any portion of the Assets; (ii) approving the expenses up to an aggregate maximum amount of $600,000, less the amount advanced to the Prepetition Stalking Horse Bidder pursuant to the Expense Advance Agreement (the "**Prepetition SH Expense Reimbursement**") and a termination fee in the amount of (A) $1,050,000 in the event of a Foxtail Overbid Acceptance or, in the alternative, (B) $1,200,000 in the event of no Foxtail Overbid Acceptance (the "**Prepetition SH Break-Up Fee**", and together with the Prepetition SH Expense Reimbursement and the applicable terms set forth in the Bidding Procedures, the "**Prepetition SH Bid Protections**") associated with the Prepetition Stalking Horse Bidder; (iii) approving a termination fee up to an aggregate amount of $500,000 (together with the applicable terms set forth in the Bidding Procedures, the "**Foxtail Break-Up Fee**" and, together with the "**Prepetition SH Bid Protections**, the "**Bid Protections**"); (iv) scheduling an auction (the "**Auction**"); (v) establishing procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale, including notice of proposed Cure Costs (the "**Assumption and Assignment Procedures**"); (vi) scheduling a hearing (the "**Sale Hearing**") to approve the Sale (the foregoing relief is referred herein as the "**Bid Related Relief**"); and (vii) granting related relief, all as more fully described in the Motion; and the Court having reviewed and considered the Motion; and the Court having held a hearing on the Motion

RLF1 21916221v.1

(the "**Bidding Procedures Hearing**"); and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore,

**IT IS FOUND AND DETERMINED THAT:**

A.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, and to the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of the Debtors' chapter 11 cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.    Notice of the Motion, the Supplement, the Bidding Procedures, the Bidding Procedures Hearing and the proposed entry of this Order was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of these Chapter 11 Cases, and no other or further notice is required. A reasonable opportunity to object or be heard regarding the relief requested in the Motion (including, without limitation, with respect to the Bidding Procedures and payment of the Bid Protections) has been afforded to all interested persons and entities, including, but not limited to, the Notice Parties.

D.     The Bidding Procedures in the form attached hereto as **Exhibit 1** are fair, reasonable and appropriate and are designed to maximize creditor recoveries from a sale of the Assets.

E.     The Bidding Procedures and each of the Stalking Horse Agreements were each negotiated in good faith and at arm's-length among the Debtors and each of the Stalking Horse Bidders.  The Stalking Horse Agreements represent the highest or otherwise best offer that the Debtors have received to date with respect to the Perkins Business Assets, the Ohio Business Assets, the MC Business Assets and the California Business Assets, respectively.  The process for selecting the Stalking Horse Bidders was fair and appropriate under the circumstances and in the best interests of the Debtors' estates.

F.     The Debtors have demonstrated a compelling and sound business justification for the Bankruptcy Court to enter this Order and, thereby: (i) approve the Bidding Procedures as contemplated by the Stalking Horse Agreements and the Motion; (ii) authorize the Bid Protections under the terms and conditions set forth in the applicable Stalking Horse Agreements and the Bidding Procedures; (iii) set the dates of the Bid Deadline, Auction (if needed), Sale Hearing and other deadlines set forth in the Motion and the Bidding Procedures; (iv) approve the Noticing Procedures and the forms of notice; and (v) approve the Assumption and Assignment Procedures and the forms of relevant notice.  Such compelling and sound business justification, as set forth in the Motion and on the record at the Bidding Procedures Hearing are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.     The Bid Protections, as approved by this Order, are fair and reasonable and provide a benefit to the Debtors' estates and stakeholders.

4

H.      If triggered in accordance with the terms of the applicable Stalking Horse Agreement, the payment of the Bid Protections, under this Order and upon the conditions set forth in applicable Stalking Horse Agreement and the Bidding Procedures, is (i) an actual and necessary cost of preserving the value of the Debtors estates, within the meaning of Bankruptcy Code sections 503(b) and 507(a), (ii) reasonably tailored to encourage, rather than hamper, bidding for the Perkins Business Assets and the Ohio Business Assets, respectively, by providing a baseline of value, increasing the likelihood of competitive bidding at the Auction, and facilitating participation of other bidders in the sale process, thereby increasing the likelihood that the Debtors will receive the best possible price and terms for the Perkins Business Assets and Ohio Business Assets, respectively, (iii) of substantial benefit to the Debtors' estates and stakeholders and all parties in interest herein, (iv) reasonable and appropriate, (v) a material inducement for, and condition necessary to, ensure that the Prepetition Stalking Horse Bidder and the Foxtail Stalking Horse Bidder will continue to pursue its proposed agreement to purchase the Perkins Business Assets and the Ohio Business Assets, respectively, and (vi) reasonable in relation to each of the Prepetition Stalking Horse Bidder's and Foxtail Stalking Horse Bidder's lost opportunities resulting from the time spent pursuing such transaction.

I.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest.

J.      The form and manner of notice to be delivered pursuant to the Noticing Procedures and the Assumption and Assignment Procedures (including the Sale Notice attached hereto as **Exhibit 2** and the Potential Assumption and Assignment Notice attached hereto as **Exhibit 3**) are reasonably calculated to provide each Counterparty to the Contracts and Leases

with proper notice of the potential assumption and assignment of such Contracts and Leases by the Successful Bidder(s) or any of their known proposed assignees (if different from the Successful Bidder) and the requirement that each such Counterparty assert any objection to the proposed Cure Cost or otherwise be barred from asserting claims arising out of or related to the Contract or Lease following the assumption and assignment thereof.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted with respect to the Bid Related Relief as set forth herein.

2.      Any formal or informal objections to the Motion with respect to the Bid Related Relief or the relief requested therein with respect thereto that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

3.      The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are approved and fully incorporated into this Order and the Debtors are authorized, but not directed, to act in accordance therewith.  The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

4.      Subject to final Court approval at the Sale Hearing, the Debtors are authorized to enter into the Stalking Horse Agreements with the Stalking Horse Bidders.

5.      <u>Bid Deadline</u>. As further described in the Bidding Procedures, the Bid Deadline shall be at **5:00 p.m. (prevailing Eastern Time) on September 6, 2019**.  The Bid Deadline may be extended in accordance with the Bidding Procedures.  The Debtors shall notify Potential Bidders of their status as Qualified Bidders no later than **5:00 p.m. (prevailing Eastern Time) on September 7, 2019**.  In addition, at least one (1) Business Day prior to the Auction, the Debtors will provide all Qualified Bidders (including the Stalking Horse Bidders) copies of each Qualified Bid made for the Assets and identify to them the Qualified Bid that the Debtors, in

6

consultation with the Consultation Parties, believe is the highest or otherwise best offer for the Assets.

6.    Auction. In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids: (i) for the Perkins Business Assets in addition to the Prepetition Stalking Horse Agreement; (ii) for the Ohio Business Assets in addition to the Foxtail Stalking Horse Agreement; or (iii) the MC Business Assets and the California Business Assets in addition to the MC Stalking Horse Agreement, as applicable, an Auction shall be conducted at the office of Akin Gump Strauss Hauer & Feld LLP, 2001 K Street N.W., Washington, D.C. 20006, at **10:00 a.m. (prevailing Eastern Time) on September 9, 2019**, or such other date, time or location as the Debtors shall notify all entities entitled to attend the Auction. The Debtors are authorized to conduct the Auction in accordance with the Bidding Procedures.

7.    In no event shall the Lenders and/or the administrative agent under the Prepetition Bank of America Credit Agreement (or any assignees, transferees or purchasers of the secured indebtedness held by any Lender) be permitted to credit bid for the Assets as all or part of any competing bid for the Assets at any Auction; *provided* that each of the foregoing shall be permitted to credit bid for the Assets as all or part of any competing bid for the Assets at any Auction if at the time of such Auction (i) such credit bid complies with section 363(k) of the Bankruptcy Code; (ii) the Prepetition Stalking Horse Agreement shall have been terminated by the Prepetition Stalking Horse Bidder; and (iii) the Debtors shall not have entered into a new asset purchase agreement with a third-party purchaser that includes a cash purchase price that is equal to or higher than the Prepetition Stalking Horse Purchase Price; *provided*, further, that any such credit bid is subject to the investigation and challenge rights set forth in paragraph 40 of the *Interim Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral,*

*(III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. 58] (the "**Interim DIP Order**") and any similar rights set forth in any final order regarding postpetition financing; *provided*, further, however, that, in the event a Lender and/or the administrative agent under the Prepetition Bank of America Credit Agreement does submit a bid (whether it be a Qualified Bid, a credit bid or otherwise), such party shall no longer be a Consultation Party and shall automatically be deemed excluded from the definition of Consultation Parties.

8.    With respect to the Perkins Business Assets, if the Debtors do not receive any Qualified Bids other than the Prepetition Stalking Horse Agreement upon the expiration of the Bid Deadline, the Debtors shall not conduct the Auction for the Perkins Business Assets and instead shall seek approval of the sale of the Perkins Business Assets pursuant to the Prepetition Stalking Horse Agreement at the Sale Hearing.

9.    With respect to the Ohio Business Assets, if the Debtors do not receive any Qualified Bids other than the Foxtail Stalking Horse Agreement upon the expiration of the Bid Deadline, the Debtors shall not conduct the Auction for the Ohio Business Assets and instead shall seek approval of the sale of the Ohio Business Assets pursuant to the Foxtail Stalking Horse Agreement at the Sale Hearing.

10.    With respect to the MC Business Assets and the California Business Assets, if the Debtors do not receive any Qualified Bids other than the MC Stalking Horse Agreement upon the expiration of the Bid Deadline, the Debtors shall not conduct the Auction for the MC Business Assets and California Business Assets and instead shall seek approval of the sale of the

MC Business Assets and California Business Assets pursuant to the MC Stalking Horse Agreement at the Sale Hearing.

11.     The form of Sale Notice attached hereto as **Exhibit 2** is hereby approved.

12.     Within two (2) Business Days after entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice by first-class mail upon:  (i) the U.S. Trustee; (ii) counsel to the Stalking Horse Bidders; (iii) counsel to the Committee; (iv) counsel to the agent under the Debtors' Prepetition Bank of America Credit Agreement; (v) counsel to the agent under the DIP Credit Agreement; (vi) the Interested Parties identified by Houlihan and any other entity known to have expressed an interest in a transaction with respect to the Assets; (vii) all counterparties to any contracts or leases, whether executory or not, and their counsel, if known; (viii) all parties with Encumbrances on or against any of the Debtors' assets; (ix) all affected federal, state and local governmental regulatory and taxing authorities, including the Internal Revenue Service; (x) all known holders of claims against and equity interests in the Debtors; (xi) all parties that have filed and not withdrawn requests for notices pursuant to Bankruptcy Rule 2002; and (xii) to the extent not already included above, all parties in interest listed on the Debtors' creditor matrix (collectively, the "**Sale Notice Parties**"). No later than seven (7) Business Days after entry of this Order, the Debtors shall publish the Sale Notice, with such modifications as may be appropriate for purposes of publication, once in the National Edition of USA Today. The Sale Notice shall also be posted on the case website maintained by the Debtors' claims and noticing agent (the "**Case Information Website**").

13.     Service of the Sale Notice on the Sale Notice Parties in the manner described in this Order constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or further notice is required.

14. Within one (1) Business Day after conclusion of the Auction, the Debtors shall file a notice of the Successful Bid(s) and Back-up Bid(s), if any (the "**Notice of Auction Results**"), with the Court and cause the Notice of Auction Results to be published on the Case Information Website.

15. <u>Sale Objections</u>. Objections to the Sale Order, the Stalking Horse Bidders, or the Sales to the Stalking Horse Bidders must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court by no later than **4:00 p.m. (prevailing Eastern Time) on September 9, 2019** (the "**Sale Objection Deadline**"), and (d) be served on (i) proposed counsel for the Debtors: (x) Akin Gump Strauss Hauer & Feld LLP, 2001 K Street N.W., Washington, D.C. 20006 (Attn: Scott Alberino, salberino@akingump.com) and (y) Richards, Layton & Finger, P.A., 920 N. King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi; defranceschi@rlf.com); (ii) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford J. Sandler; bsandler@pszjlaw.com); (iii) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 (Attn: Linda J. Casey; linda.casey@usdoj.gov); (iv) counsel to the Prepetition Stalking Horse Bidder, Baker Botts L.L.P., 2001 Ross Avenue, Suite 900, Dallas, TX 75201 (Attn: Omar J. Alaniz; omar.alaniz@bakerbotts.com); (v) counsel to the Foxtail Stalking Horse Bidder, Larry Frenkel, Esq., 38 Sky Meadow Road, Suffern, NY 10901 (Attn: Larry Frenkel; larry@larryfrenkel.com); (vi) counsel to the MC Stalking Horse Bidder, Bosley Till LLP, 120 Newport Center Drive, Newport Beach, CA 92660 (Attn: James Till; jtill@btnlaw.com); and (vii) counsel to the administrative agents under each of the Prepetition Bank of America Credit Agreement and the DIP Credit Agreement, Moore & Van Allen, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202 (Attn: Luis M. Lluberas;

luislluberas@mvalaw.com and David Eades; davideades@mvalaw.com) (the "**Objection Notice Parties**").

16.    <u>Post-Auction Objections</u>. Objections to the conduct of the Auction, the Successful Bidder(s) (other than the Stalking Horse Bidder(s), or the Sale to the Successful Bidder(s) (other than the Stalking Horse Bidder(s)) must be made **on or before September 12, 2019 (prevailing eastern time) (the "Auction Objection Deadline")**.

17.    <u>Sale Hearing</u>. The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom 3, Wilmington, Delaware 19801, on **September 17, 2019 at 11:00 a.m. (prevailing Eastern Time)**; *provided, however,* that the Sale Hearing (or any other dates related to the Sale, including, without limitation, the Auction) may be adjourned, from time to time, by the Debtors, subject to the terms of the Stalking Horse Agreements and the Bidding Procedures, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

18.    <u>Stalking Horse Protections</u>.  If triggered in accordance with the terms of the applicable Stalking Horse Agreement, pursuant to Bankruptcy Code sections 105, 363, 364, 503 and 507, the Debtors are hereby authorized and directed, to promptly pay the Bid Protections to the Prepetition Stalking Horse Bidder and Foxtail Stalking Horse Bidder, as applicable, from the proceeds of the Sale of any or all of the Assets in accordance with the terms of the respective Stalking Horse Agreement without further order of this Court.  The obligations of the Debtors to pay the Bid Protections (i) shall be entitled to administrative expense claim status pursuant to sections 507 and 503(b) of the Bankruptcy Code (subject to any carve-out provided in the order of the Court approving the DIP Credit Agreement) and (ii) shall survive the termination of the

11

applicable Stalking Horse Agreement.  Any and all expenses to be reimbursed pursuant to the Prepetition SH Expense Reimbursement shall be documented, with such documentation to be provided to counsel to the Debtors, counsel to the Committee, the U.S. Trustee, and counsel to the administrative agents under each of the Prepetition Bank of America Credit Agreement and the DIP Credit Agreement.  The Debtors, the Committee, the U.S. Trustee and the administrative agents under the Prepetition Bank of America Credit Agreement and DIP Credit Agreement shall have five (5) Business Days following receipt of such expenses to dispute the payment of all or any portion of the expenses (the "**Disputed Expenses**") and any disputing party shall notify the submitting party in writing setting forth the specific objections to the Disputed Expenses (to be followed by the filing with the Court, if necessary, of a motion or other pleading, with at least ten (10) days prior written notice to the submitting party of any hearing on such motion or pleading. The Debtors shall pay any Disputed Expenses promptly after approval (and to the extent approved) by the Court.

19.     Each Stalking Horse Bidder is deemed a Qualified Bidder for all purposes, and each Stalking Horse Bid is deemed a Qualified Bid.

20.     <u>Assumption and Assignment Procedures</u>. The Assumption and Assignment Procedures are hereby approved as set forth herein.

21.     As soon as reasonably practicable after entry of this Order, the Debtors shall file with the Bankruptcy Court, and cause to be published on the Case Information Website, the Potential Assumption and Assignment Notice and the Contracts List that specifies (i) each of the Contracts and Leases that may be assumed and assigned in connection with the Sale, including the name of each Counterparty and (ii) the proposed Cure Cost with respect to each Contract and Lease.  The Potential Assumption and Assignment Notice and Contracts List shall also be served

on each Counterparty listed on the Contracts List and their counsel, if known, via first class mail. The inclusion of a contract, lease, or other agreement the Potential Assumption and Assignment Notice and the Contracts List shall not constitute or be deemed a determination or admission by the Debtors and their estates, the Stalking Horse Bidder, or any other party in interest that such contract, lease, or other agreement is, in fact, an executory contract or unexpired lease within the meaning of Bankruptcy Code Section 365, and any and all rights with respect thereto shall be reserved.

22.    <u>Objection Deadlines</u>. Any Counterparty may object to the proposed assumption or assignment of its Contract or Lease, the Debtors' proposed Cure Costs, if any, or the ability of the Stalking Horse Bidder to provide adequate assurance of future performance (an "**Assumption and Assignment Objection**"). All Assumption and Assignment Objections (other than to the ability of a Successful Bidder other than a Stalking Horse Bidder to provide adequate assurance of further performance) must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes are required to cure defaults under the relevant Contract or Lease, (d) be filed by no later than **fourteen (14) days following service of the Potential Assumption and Assignment Notice and Contracts List at 5:00 p.m. (prevailing Eastern Time)** and (e) be served on (i) proposed counsel for the Debtors: (x) Akin Gump Strauss Hauer & Feld LLP, 2001 K Street N.W., Washington, D.C. 20006 (Attn: Scott Alberino; salberino@akingump.com) and (y) Richards, Layton & Finger, P.A., 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi; defranceschi@rlf.com); (ii) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford J. Sandler; bsandler@pszjlaw.com), (iii) counsel

13

to the Prepetition Stalking Horse Bidder, Baker Botts L.L.P., 2001 Ross Avenue, Suite 900, Dallas, TX 75201 (Attn: Omar J. Alaniz; omar.alaniz@bakerbotts.com); (iv) counsel to the Foxtail Stalking Horse Bidder, Larry Frenkel, Esq., 38 Sky Meadow Road, Suffern, NY 10901 (Attn: Larry Frenkel; larry@larryfrenkel.com); (v) counsel to the MC Stalking Horse Bidder, Bosley Till LLP, 120 Newport Center Drive, Newport Beach, CA 92660 (Attn: James Till; jtill@btnlaw.com); and (vi) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware, 19801 (Attn: Linda J. Casey, Esq., linda.casey@usdoj.gov) (collectively, the "**Assumption and Assignment Objection Notice Parties**").

23.     Resolution of Assumption and Assignment Objections. If a Counterparty files a timely Assumption and Assignment Objection, such objection shall be heard at the Sale Hearing or such later date that the Debtors and the Successful Bidder may determine (subject to the Court's calendar); provided, that the Debtors and the Successful Bidder may only adjourn the hearing on such objection with the consent of the objecting Counterparty (which consent may not be unreasonably withheld).

24.     Failure to File Timely Assumption and Assignment Objection. If a Counterparty fails to file with the Court and serve on the Assumption and Assignment Objection Notice Parties a timely Assumption and Assignment Objection, the Counterparty shall be forever barred from asserting any such objection with regard to the assumption or assignment of its Contract or Lease, and notwithstanding anything to the contrary in the Contract or Lease, or any other document, the Cure Costs set forth in the Potential Assumption and Assignment Notice or the Supplemental Assumption and Assignment Notice (as defined below) shall be controlling and will be the only amount necessary to cure outstanding defaults under the applicable Contract or Lease under Section 365(b) of the Bankruptcy Code arising out of or related to the Contract or

14

Lease following the assumption and assignment thereof, whether known or unknown, due or to become due, accrued, absolute, contingent or otherwise, and the Counterparty shall be forever barred from asserting any additional cure or other pre-assignment amounts with respect to such Contract or Lease against the Debtors, the Successful Bidder or the property of any of them.

25.    <u>Cure Cost Payment</u>.  The Successful Bidder shall pay the Cure Costs to the applicable Counterparty on the effective date of the assignment of the applicable Lease.

26.    Unless otherwise provided in the Successful Bidder's Asset Purchase Agreement, at any time until two (2) days prior to the Closing Date, the Successful Bidder may elect to amend the Execution Date Contracts Schedule attached to the Asset Purchase Agreement.  Any Contract or Lease that remains on the Execution Date Contracts Schedule as of the Closing Date, and that is not a Disputed Contract (as defined below), shall be assumed by the Debtors and assigned to the Successful Bidder or its designee, as applicable, as part of the Sale.  The assumption and assignment of Disputed Contracts shall be treated in accordance with paragraph 30 of this Order.  Subject to paragraph 30 of this Order, all Contracts and Leases that are not on the Execution Date Contracts Schedule shall be deemed "Rejected Contracts" under the Asset Purchase Agreement.  Within one (1) Business Day of the Closing Date, the Debtors shall file with the Bankruptcy Court a notice including (i) the Closing Date and (ii) a list of Contracts and Leases assumed and assigned as part of the Sale.

27.    Solely with respect to the Perkins Business Assets, (A) the Debtors shall not, until the date that is thirty (30) days after the Closing Date, assume, reject or assign to any third party any Lease primarily relating to the Perkins Business that is not included on the Execution Date Contracts Schedule (each, an "**Excluded Lease**") and (B) Debtors shall, upon request of the Successful Bidder, assume and assign to the Successful Bidder or any designee of the Successful

15

Bidder any Excluded Lease (for no additional consideration), and upon any assumption and assignment of such Excluded Lease, such Lease shall become an Assigned Contract and Assumed Liability; *provided* that Buyer shall be responsible for and shall promptly ay all Cure Costs associated therewith.

28.    In the event that either any Contract or Lease is added to the Contracts List or previously-stated Cure Costs are modified or a Successful Bidder desires to assume and assign an Excluded Lease, in accordance with the Asset Purchase Agreement or the Assumption and Assignment Procedures set forth in this Order, the Debtors shall file a supplemental assumption and assignment notice (each, a "**Supplemental Assumption and Assignment Notice**") with this Court and serve it by overnight mail and, if known, e-mail, on the applicable Counterparty and its counsel, if known.  Each Supplemental Assumption and Assignment Notice will include the same information with respect to the applicable Contract or Lease as is required to be included in the Potential Assumption and Assignment Notice.

29.    Any Counterparty listed on a Supplemental Assumption and Assignment Notice whose Contract or Lease is proposed to be assumed and assigned may object to the proposed assumption or assignment of its Contract or Lease, the Debtors' proposed Cure Costs, if any, or the ability of the Successful Bidder to provide adequate assurance of future performance (a "**Supplemental Assumption and Assignment Objection**").  All Supplemental Assumption and Assignment Objections must (a) be in writing, (b) comply with the Bankruptcy Code, Bankruptcy Rules and Local Rules, (c) state, with specificity, the legal and factual bases thereof, including, if applicable, the Cure Costs the Counterparty believes is required to cure defaults under the relevant Contract or Lease, (d) be filed by no later than **fourteen (14) calendar days from the date of service of such Supplemental Assumption and Assignment Notice** and (e)

16

be served on the Assumption and Assignment Objection Notice Parties. Each Supplemental Assumption and Assignment Objection, if any, may be resolved and, if applicable, adjourned in the same manner as an Assumption and Assignment Objection.

30.    Upon objection by the non-debtor Contract counterparty to the Cure Costs asserted by the Debtors with regard to any Contract (such contract, a "**Disputed Contract**"), the Debtors shall either settle the objection of such party or shall litigate such objection under such procedures as the Bankruptcy Court shall approve and proscribe. In the event that a dispute regarding the Cure Costs with respect to a Contract has not been resolved as of the Closing Date, the Successful Bidder shall nonetheless remain obligated to consummate the Sale. Upon entry of an Order determining any Cure Costs regarding any Disputed Contract after the Closing (the "**Disputed Contract Order**"), the Successful Bidder shall have the option to designate the Disputed Contract as a Rejected Contract, in which case, for the avoidance of doubt, Successful Bidder shall not assume the Disputed Contract and shall not be responsible for the associated Cure Costs with such Disputed Contract; *provided, however*, that if Successful Bidder does not designate such Disputed Contract as a Rejected Contract within fifteen (15) days after the date of the Disputed Contract Order, such Disputed Contract shall automatically be deemed to be an Assigned Contract for all purposes under the Successful Bidder's Asset Purchase Agreement and the Debtors shall file a notice with the Court of such designation as soon as reasonably practicable. Any Cure Costs associated with any Assigned Contract or any Disputed Contract which becomes an Assigned Contract shall be paid in accordance with the terms of the Successful Bidder's Asset Purchase Agreement.

31.    If, following the Auction, a Stalking Horse Bidder is not the Successful Bidder, then the Debtors shall, as soon as practicable following the conclusion of the Auction, serve the

17

Notice of Auction Results via email on each Counterparty that received a Potential Assumption and Assignment Notice and any Supplemental Assumption and Assignment Notice and post the Notice of Auction Results on the Case Information Website. Notwithstanding paragraph 16 above, objections of any Counterparty related solely to the identity of and adequate assurance of future performance provided by the Successful Bidder (other than a Stalking Horse Bidder) may be made at the Sale Hearing.

32.      This Order shall be binding upon all creditors of, and equity holders in, the Debtors and any and all other parties in interest, including, without limitation, the Debtors and their affiliates and subsidiaries, and any trustee or successor trustee appointed in the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code.

33.      All obligations of the Debtors to each Staking Horse Bidder pursuant to the Prepetition Stalking Horse Agreements and any related agreements executed in connection therewith (including any amounts payable by the Debtors to the Stalking Horse Bidders thereunder) shall (a) constitute an allowed administrative expense claim under Bankruptcy Code Sections 503(b)(1)(A) and 507(a)(2) (subject to any carve-out provided in the order of the Court approving the DIP Credit Agreement); (b) not be altered, amended, impaired, discharged or affected by any chapter 11 plan proposed or confirmed in these Chapter 11 Cases without the prior written consent of the Stalking Horse Bidders, (c) not be subject to rejection or avoidance (whether through any avoidance, fraudulent transfer, preference or recovery, Claim, action or proceeding arising under chapter 5 of the Bankruptcy Code, or under any similar state or federal law or any other cause of action by the Debtors, any chapter 7 or chapter 11 trustee of Debtors' bankruptcy estates or any other person or entity), (d) be paid by the Debtors from the proceeds of the Sale of any or all of the Assets without further order of this Court; and (e) not be subject to

18

any bar date in these Chapter 11 Cases or any requirement to file any request for allowance of administrative claim or proof of claim.

34.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

35.    To the extent any provisions of this Order are inconsistent with the Motion or the Supplement, the terms of this Order shall control.  To the extent any provisions of this Order are inconsistent with the Bidding Procedures, the terms of this Order shall control.

36.    Notwithstanding any Bankruptcy Rule (including, but not limited to, Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014) or Local Rule that might otherwise delay the effectiveness of this Order, the terms and conditions of this Order shall, to the extent applicable, be effective and enforceable immediately upon entry hereof.

37.    The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

38.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.


Dated:  August __23__, 2019
        Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

19