## Exhibit 1

**Bidding Procedures**

[See attached.]

## AMENDED AND RESTATED BIDDING PROCEDURES

Set forth below are the amended and restated bidding procedures (the "**Bidding Procedures**") to be employed in connection with the proposed sale of substantially all or any portion or combination of the assets owned by Perkins & Marie Callender's Holding, LLC (the "**Company**") and the direct or indirect wholly owned subsidiaries of the Company, including those that are or will be signatories to the Stalking Horse Agreements or the asset purchase agreement(s) of the Successful Bidder(s) (each as defined herein) (the "**Seller Subsidiaries**" and, together with the Company, each a "**Seller**" and collectively, "**Sellers**"), in connection with the jointly administered Chapter 11 Cases of Perkins & Marie Callender's Holding, LLC and certain of its affiliates that are debtors and debtors in possession (collectively, the "**Debtors**") filed on August 5, 2019 (the "**Petition Date**") and pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), lead case number 19-11743.

Certain of the Sellers entered into that certain Asset Purchase Agreement, dated as of August 2, 2019, with Perkins Group LLC (the "**Prepetition Stalking Horse Bidder**"), pursuant to which the Prepetition Stalking Horse Bidder has agreed to acquire the Perkins Business Assets and the Ohio Business Assets on the terms and conditions specified therein (together with the schedules, exhibits, and related documents thereto, the "**Prepetition Stalking Horse Agreement**," a copy of which is attached to the Motion (as defined below) as **Exhibit B**). The Prepetition Stalking Horse Agreement expressly provides that the Sellers may elect to exclude the Ohio Business Assets and sell said Ohio Business Assets to a Postpetition Stalking Horse Bidder (as defined below) in the event of a higher and/or better offer.

Following the Petition Date, certain of the Sellers entered into: (i) that certain Asset Purchase Agreement, dated as of August 21, 2019, with Fairfield Gourmet Food Corp. (the "**Foxtail Stalking Horse Bidder**"), pursuant to which the Foxtail Stalking Horse Bidder has agreed to acquire the Ohio Business Assets on the terms and conditions specified therein (together with the schedules, exhibits, and related documents thereto, the "**Foxtail Stalking Horse Agreement**," a copy of which is attached to the Supplement (as defined below) as **Exhibit B**); and (ii) that certain Asset Purchase Agreement, dated as of August 21, 2019, with Marie Callenders, Inc, a third party unaffiliated with the Debtors (the "**MC Stalking Horse Bidder**" and, together with the Prepetition Stalking Horse Bidder and the Foxtail Stalking Horse Bidder, each a "**Stalking Horse Bidder** and collectively the "**Stalking Horse Bidders'**")), pursuant to which the MC Stalking Horse Bidder has agreed to acquire the MC Business Assets and the California Business Assets on the terms and conditions specified therein (together with the schedules, exhibits, and related documents thereto, the "**MC Stalking Horse Agreement**," a copy of which is attached to the Supplement (as defined below) as **Exhibit C** and, together with the Foxtail Stalking Horse Agreement and the Prepetition Stalking Horse Agreement, each a "**Stalking Horse Agreement**" and collectively the "**Stalking Horse Agreements**"). The sale transactions pursuant to the Stalking Horse Agreements are subject to competitive bidding as set forth herein.

For the avoidance of doubt, parties may purchase substantially all or any portion or combination of the Assets. The Debtors intend to provide copies of the Stalking Horse Agreements to all parties who designate their interest in submitting a Bid and the Consultation Parties and will also make such Stalking Horse Agreements available in the electronic dataroom established by the Debtors in connection with their sale process.

By the motion (the "**Motion**"),[1] dated August 5, 2019 [Docket No. 33], the Debtors sought, among other things, approval of the Bidding Procedures for soliciting bids for, conducting an auction (the "**Auction**"), and consummating a sale, of substantially all or any portion or combination of the Assets (the "**Sale**"),

---

[1] Capitalized terms used but not otherwise defined herein have the meaning ascribed to them in the Motion or the Stalking Horse Agreements, as applicable.

whether in a single sale or multiple sales of the Assets. For the avoidance of doubt, the Assets will be offered for sale in one or more combinations, and as a whole, through the Auction. The Debtors will consider bids for all or any portion of the Assets in a single bid from a single bidder or in multiple bids from multiple bidders.

On August 21, 2019, the Debtors filed a *Supplement* to the Motion (the "**Supplement**"), attaching these amended and restated Bidding Procedures and an amended proposed Bidding Procedures Order incorporating the Foxtail Stalking Horse Agreement and MC Stalking Horse Agreement and attaching copies of the Foxtail Stalking Horse Agreement and MC Stalking Horse Agreement.

## ASSETS TO BE SOLD

The Debtors seek to consummate the Sale of : (i) the Perkins Business Assets pursuant to the terms of the Prepetition Stalking Horse Agreement; (ii) the Ohio Business Assets pursuant to the Foxtail Stalking Horse Agreement; and (iii) the MC Business Assets and the California Business Assets subject to the MC Stalking Horse Agreement, each subject to an otherwise higher and/or better offer. The sale of the Assets is on an "as is, where is" and "with all faults" basis and without representations, warranties or guarantees, express, implied or statutory, written or oral, of any kind, nature or description, by any Seller, its affiliates or their respective representatives, except to the extent set forth in the applicable Stalking Horse Agreement or the purchase agreement of such other Successful Bidder(s) (as defined below), as applicable, and as approved by the Bankruptcy Court. Except as otherwise provided in such approved purchase agreement, all of the Sellers' right, title and interest in and to each Asset to be acquired shall be sold free and clear of all liens, claims, interests and encumbrances (other than permitted liens), with such liens, claims, interests and encumbrances to attach to the proceeds of the Sale.

Notwithstanding anything to the contrary herein, the Debtors seek to consummate the Sale of all, or substantially all, of the Debtors' Assets for each of the Debtors' three (3) business segments—the Perkins Business, the Foxtail Business and the MC Business—whether in a single sale or multiple sales of the Assets, to the bidders(s) that submit the highest and/or otherwise best offer(s).

## THE BIDDING PROCEDURES

The Stalking Horse Agreements are subject to higher or better offers in one or more transactions, and, as such, the Prepetition Stalking Horse Agreement will serve as the "stalking horse" bid for the Perkins Business Assets, the Foxtail Stalking Horse Agreement will serve as the "stalking horse" bid for the Ohio Business Assets and the MC Stalking Horse Agreement will serve as the "stalking horse" bid for the MC Business Assets and California Business Assets.

### Provisions Governing Qualifications of Bidders

Unless otherwise ordered by the Bankruptcy Court, in order to participate in the bidding process, prior to the Bid Deadline (as defined below), each person other than the Stalking Horse Bidders, who wishes to participate in the bidding process (a "**Potential Bidder**") must deliver the following to the Notice Parties (as defined below):

> (i)   a written disclosure of the identity of each entity that will be bidding for all or any portion of the Assets or otherwise participating in connection with such bid;

> (ii)   information satisfactory to the Debtors that the Potential Bidder has the financial wherewithal to consummate the proposed Sale; and

2

    (iii) to the extent not already executed, an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Debtors (without limiting the foregoing, each confidentiality agreement executed by a Potential Bidder shall contain standard non-solicitation provisions).

A Potential Bidder that delivers the documents and information described above or that the Debtors determine is able to consummate the Sale, and whose Qualified Bid is received by the Sellers no later than the Bid Deadline is deemed qualified (a "**Qualified Bidder**").

### Due Diligence

The Debtors will provide any Potential Bidder such due diligence access or additional information as the Debtors deem appropriate in their reasonable discretion, including all information that has previously been provided to the Stalking Horse Bidders, but which may include differentiations between the diligence provided to strategic and financial bidders, as appropriate, and contractual obligations to limit access to certain proprietary information; *provided* that the Debtors shall contemporaneously provide or make available to the Stalking Horse Bidders any such information that they provide to any Potential Bidder that they have not previously provided to the Stalking Horse Bidders. The Debtors reserve the right to withhold any diligence materials that Debtors determine are business-sensitive or otherwise not appropriate for disclosure to a competitor of Debtors, *provided* that such information is withheld from all Potential Bidders and Stalking Horse Bidders. The due diligence period will extend through and include the Bid Deadline. Additional due diligence will not be provided after the Bid Deadline, unless otherwise deemed reasonably appropriate by the Debtors. All due diligence requests must be directed to Houlihan Lokey, Inc., One Sansome St, Suite 1700, San Francisco, CA 94104, Tel: 415-974-5888 (Attn: Jason Abt, JAbt@HL.com; David Scheid, DScheid@HL.com; and Jack Gerstenberger, JGerstenberge@HL.com).

### Provisions Governing Qualified Bids

A bid will be considered a "**Qualified Bid**" only if the bid is submitted by a Qualified Bidder and the Debtors determine, in consultation with (i) the Required Prepetition Lenders and the administrative agent under the Prepetition Bank of America Credit Agreement, (ii) the Required DIP Lenders and the administrative agent under the DIP Credit Agreement, and (iii) the Committee (each, a "**Consultation Party**" and collectively, the "**Consultation Parties**"), such bid complies with all of the following:

    (i) it is received by the Notice Parties prior to the Bid Deadline;

    (ii) it clearly states which of the Assets the Qualified Bidder seeks to acquire, and which liabilities of the applicable Seller the Qualified Bidder agrees to assume or pay;

    (iii) it includes a signed writing stating that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder or the Backup Bidder (each, as defined below), its offer shall remain irrevocable until the earlier of (a) the closing of the Sale to the Successful Bidder or the Backup Bidder and (b) the date that is thirty (30) Business Days after the Sale Hearing;

    (iv) it includes confirmation that there is no condition precedent to the Qualified Bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the submission of the bid;

    (v) it contains no due diligence or financing contingencies of any kind;

3

(vi) it includes a duly authorized and executed copy of an asset purchase agreement, which includes the purchase price for the applicable Assets expressed in U.S. Dollars (the "**Purchase Price**"), together with all schedules, exhibits and related documents thereto, together with a copy marked to show any amendments and modifications to the applicable Stalking Horse Agreement (a "**Competing Purchase Agreement**"), and a proposed order for approval of the Sale by this Court, together with a copy marked to show changes from the draft attached as an exhibit to the applicable Stalking Horse Agreement;

(vii) it includes written evidence, including (if applicable) a firm, irrevocable commitment for financing, establishing the ability of the Qualified Bidder to consummate the proposed Sale and comply with section 365 of the Bankruptcy Code and pay the Purchase Price in cash, such as will allow the Debtors to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Competing Purchase Agreement. Such information must include, *inter alia*, the following: (a) contact names and numbers for verification of financing sources; (b) evidence of the Qualified Bidder's internal resources and proof of unconditional debt funding commitments from a recognized financial institution and, if applicable, equity commitments in an aggregate amount equal to the cash portion of such Qualified Bid or the posting of an irrevocable letter of credit from a recognized banking institution issued in favor of the Debtors in the amount of the cash portion of such Qualified Bid, in each case, as are needed to consummate the proposed Sale; (c) the Qualified Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Debtors; (d) a description of the Qualified Bidder's pro forma capital structure; and (e) any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Qualified Bidder has the ability to close the Alternative Transaction;

(viii) the bid has a value to the Debtors, determined by the Debtors' reasonable business judgment, when combined with any other Qualified Bid for the applicable Assets not included in the proposed Qualified Bid, that is greater than or equal to the sum of the value offered under the applicable Stalking Horse Agreement, plus the amount of applicable Bid Protections, if any (as defined below and, with respect to the Bid Protections, the maximum amount thereof) provided to the applicable Stalking Horse Bidder with respect to such Assets, plus $250,000;

(ix) it identifies with particularity which Contracts and Leases the Qualified Bidder wishes to assume and provides details of the Qualified Bidder's proposal for the treatment of related Cure Costs and the provision of adequate assurance of future performance to the counterparties to such Contracts and Leases;

(x) it contains sufficient information to satisfy the adequate assurance of future performance requirement pursuant to section 365 of the Bankruptcy Code, which may include, to the extent practicable and available:

    a. the exact name of the entity that will be designated as the proposed assignee of the Contracts and Leases;

    b. audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2016, 2017 and 2018 for both the proposed assignee and any guarantors;

4

    c. any and all documents regarding the proposed assignee's and any guarantor's experience in operating restaurants in shopping centers;

    d. the number of restaurants the proposed assignee and any guarantor operates and all trade names used;

    e. the proposed assignee's and any guarantor's 2018 and 2019 business plans, including sales and cash flow projections; and

    f. any financial projections, calculations, and/or financial pro-formas prepared in contemplation of purchasing the Contracts and Leases.

  (xi) it includes an acknowledgement and representation that the bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or with the Auction, except as expressly stated in the Competing Purchase Agreement; and (d) is not entitled to any expense reimbursement, break-up fee, or similar type of payment in connection with its bid;

  (xii) it includes evidence, in form and substance reasonably satisfactory to the Debtors of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Competing Purchase Agreement;

  (xiii) it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtors), certified check or such other form acceptable to the Debtors, payable to the order of the Debtors (or such other party as the Debtors may determine) in an amount equal to ten percent (10%) of the purchase price provided for in the bid (a "**Good Faith Deposit**");

  (xiv) it states that the bidder consents to the jurisdiction of this Court; and

  (xv) it contains such other information as may be reasonably requested by the Debtors.

Notwithstanding the foregoing, (i) each Stalking Horse Bidder is deemed to be a Qualified Bidder and each Stalking Horse Bid shall be deemed to be a Qualified Bid, such that the Stalking Horse Bidders shall not be required to submit an additional Qualified Bid; and (ii) each counterparty to the Debtors' non-residential real property leases shall be considered a Qualified bidder for its own respective lease without having to meet the requirements of a Qualified Bid set forth herein.

The Debtors reserve the right to negotiate with any Qualified Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualified Bid.

No later than one (1) Business Day prior to the Auction, the Debtors shall notify the Stalking Horse Bidders and all Qualified Bidders in writing as to whether or not any bids (other than the Stalking Horse Agreements) constitute Qualified Bids, and will notify each Qualified Bidder that has submitted a bid (other than the Stalking Horse Bidders), whether such Qualified Bidder's bid constitutes a Qualified Bid promptly after such determination has been made.

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations set forth in the Competing Purchase Agreement. Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a Potential Bidder is not a Qualified Bidder and that such bid made by a Potential Bidder or a Qualified Bidder is not a Qualified Bid.

In no event shall the Lenders and/or the administrative agent under the Prepetition Bank of America Credit Agreement (or any assignees, transferees or purchasers of the secured indebtedness held by any Lender) be permitted to credit bid for the Assets as all or part of any competing bid for the Assets at any Auction; provided that each of the foregoing shall be permitted to credit bid for the Assets as all or part of any competing bid for the Assets at any Auction if at the time of such Auction (i) such credit bid complies with section 363(k) of the Bankruptcy Code; (ii) the Prepetition Stalking Horse Agreement shall have been terminated by the Prepetition Stalking Horse Bidder; and (iii) the Debtors shall not have entered into a new asset purchase agreement with a third-party purchaser that includes a cash purchase price that is equal to or higher than the Prepetition Stalking Horse Purchase Price; provided, further, that any such credit bid is subject to the investigation and challenge rights set forth in paragraph 40 of the *Interim Order (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, and (VI) Scheduling a Final Hearing* [Docket No. 58] (the "**Interim DIP Order**") and any similar rights set forth in any final order regarding postpetition financing; provided, further, however, that, in the event a Lender and/or the administrative agent under the Prepetition Bank of America Credit Agreement does submit a bid (whether it be a Qualified Bid, a credit bid or otherwise), such party shall no longer be a Consultation Party and shall automatically be deemed excluded from the definition of Consultation Parties.

### Bid Deadline

A Potential Bidder that desires to make a bid shall deliver written copies of its bid to the following parties (collectively, the "**Notice Parties**"): (1) proposed counsel for the Debtors: (a) Akin Gump Strauss Hauer & Feld LLP, 2001 K Street N.W., Washington, DC 20006, Attn: Scott Alberino, salberino@akingump.com, and Joanna Newdeck, jnewdeck@akingump.com, and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Daniel J. DeFranceschi, defranceshi@rlf.com, and Zachary I. Shapiro, shapiro@rlf.com; (2) Houlihan Lokey, Inc., One Sansome St, Suite 1700, San Francisco, CA 94104, Attn: Jason Abt, JAbt@HL.com and David Scheid, DScheid@HL.com; (3) counsel to the administrative agents under each of the Prepetition Bank of America Credit Agreement and the DIP Credit Agreement, Moore & Van Allen, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202, Attn: Luis M. Lluberas, luislluberas@mvalaw.com and David Eades, davideades@mvalaw.com; and (4) counsel to the Committee, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford J. Sandler; bsandler@pszjlaw.com), so as to be received by the foregoing parties no later than **5:00 p.m. (prevailing Eastern Time) on September 6, 2019** (the "**Bid Deadline**"). The Bid Deadline may be extended by the Debtors in consultation with the Consultation Parties, provided that such extension is not inconsistent with the DIP Credit Agreement and the Stalking Horse Agreements and related sale milestones set forth therein.

### Evaluation of Competing Bids

A Qualified Bid will be evaluated by the Debtors based upon several factors including, without limitation, (1) the amount of the Purchase Price provided by such bid, (2) the nature of the consideration provided by such bid, including assumption of liabilities and obligations, (3) the risks and timing associated with consummating such bid, (4) any proposed revisions to the Stalking Horse Agreements, as applicable, and/or the Proposed Sale Order, (5) whether any Qualified Bid contains a sufficient cash component to ensure that the Debtors' estates are not rendered administratively insolvent, and (6) any other factors deemed relevant by the Debtors, in consultation with the Consultation Parties, including the proposed amount of cure consideration on account of Contracts and Leases to be assumed and employees to be transferred, if applicable.

### No Qualified Bids

With respect to the Perkins Business Assets, if the Debtors do not receive any Qualified Bids other than the Prepetition Stalking Horse Agreement upon the expiration of the Bid Deadline, the Debtors shall not conduct the Auction for the Perkins Business Assets and instead shall seek approval of the sale of the Perkins Business Assets pursuant to the Prepetition Stalking Horse Agreement at the Sale Hearing.

With respect to the Ohio Business Assets, if the Debtors do not receive any Qualified Bids other than the Foxtail Stalking Horse Agreement upon the expiration of the Bid Deadline, the Debtors shall not conduct the Auction for the Ohio Business Assets and instead shall seek approval of the sale of the Ohio Business Assets pursuant to the Foxtail Stalking Horse Agreement at the Sale Hearing.

With respect to the MC Business Assets and the California Business Assets, if the Debtors do not receive any Qualified Bids other than the MC Stalking Horse Agreement upon the expiration of the Bid Deadline, the Debtors shall not conduct the Auction for the MC Business Assets and the California Business Assets and instead shall seek approval of the sale of the MC Business Assets and California Business Assets pursuant to the MC Stalking Horse Agreement at the Sale Hearing.

**Auction Process**

If the Debtors receive one or more Qualified Bids: (i) for the Perkins Business Assets in addition to the Prepetition Stalking Horse Agreement; (ii) for the Ohio Business Assets in addition to the Foxtail Stalking Horse Agreement; or (iii) for the MC Business Assets and California Business Assets in addition to the MC Stalking Horse Agreement, the Debtors will conduct an Auction, which shall take place at **10:00 a.m. prevailing Eastern Time on September 9, 2019**, at the office of Akin Gump Strauss Hauer & Feld LLP, 2001 K Street N.W., Washington, DC 20006 or such other date, time and location as shall be timely communicated to all entities entitled to attend the Auction. The Auction, which shall be recorded and transcribed, shall run in accordance with the following procedures:

(i) only the Debtors, the Stalking Horse Bidders, any other Qualified Bidder that has timely submitted a Qualified Bid, the Consultation Parties and the advisors to each of the foregoing shall be permitted to attend the Auction in person; *provided, however*, that any party in interest may attend (but not participate in) the Auction if any such party in interest provides the Debtors with written notice of its intention to attend the Auction on or before one (1) Business Day prior to the Auction, which written notice shall be sent to proposed counsel for the Debtors via electronic mail, to Scott Alberino and Joanna Newdeck at salberino@akingump.com and jnewdeck@akingump.com.

(ii) only the Stalking Horse Bidders and such other Qualified Bidders who have timely submitted Qualified Bids will be entitled to make any subsequent bids at the Auction;

(iii) each Qualified Bidder shall be required to confirm on the record that it has not engaged in any collusion, within the meaning of Section 363(n) of the Bankruptcy Code, with respect to any bids submitted or not submitted in connection with the Sale;

(iv) at least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Debtors whether it intends to attend the Auction <u>and</u> all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder in attendance at the Auction in person; *provided* that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the selection of the Successful Bidder and Backup Bidder (each, as defined below) at the conclusion of the Auction. At least twenty-four (24) hours prior to the date scheduled for the commencement of the Auction (as provided in these Bidding Procedures), the Debtors will provide to all Qualified Bidders (including the Stalking Horse Bidders) copies of each Qualified Bid and identify to them the Qualified Bid(s) that the Debtors, in consultation with the Consultation Parties, believe is the highest or otherwise best offer for all or any portion of the Assets (each, or collectively, as applicable, the "**Starting Bid(s)**"). For the avoidance of doubt, the Starting Bid may be comprised of multiple Qualified Bids if bids are submitted for less than all of the Assets and multiple Qualified Bids taken together may represent the highest or best offer for the Assets;

(v) all Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction;

(vi) the Debtors, in consultation with the Consultation Parties, may modify, employ and announce at the Auction additional or amended procedural rules that are reasonable under the circumstances for conducting the Auction, *provided* that such rules (i) are not materially

8

inconsistent with the Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, or any order of the Bankruptcy Court entered in connection herewith, (ii) do not purport to abrogate or modify any of the Stalking Horse Agreements or the Bid Protections, (iii) do not materially impair or modify any Stalking Horse Bidder's rights under the Bidding Procedures or the applicable Stalking Horse Agreement, and (iv) are disclosed to each Qualified Bidder attending the Auction; *provided* that the Debtors may not waive or modify, to the extent it materially and adversely affects the Stalking Horse Bidders, the terms of the Bidding Procedures without the prior consent of the such Stalking Horse Bidder materially and adversely affected (which consents shall not unreasonably withheld, conditioned, or delayed).

(vii) bidding at the Auction will begin with the Starting Bid and continue in bidding increments (each, a "**Subsequent Bid**") providing a net value to the Debtors' estates of at least $250,000 above the prior bid or collection of bids (it being understood that for the purpose of evaluating the value of the Purchase Price provided by any third party bid following a Subsequent Bid by a Stalking Horse Bidder, the Debtors shall subtract from such third party Purchase Price the amount of applicable Bid Protections, if any (and, with respect to the Perkins SH Expense Reimbursement, the maximum amount thereof)) (the "**Continuing Minimum Overbid Amount**"). After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid(s) (and the value of such bid(s)) that they believe to be the highest or otherwise best bid (each, the "**Leading Bid**");

(viii) a round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the applicable Leading Bid; and

(ix) except as specifically set forth herein, for the purpose of evaluating the value of the Purchase Price provided by each Subsequent Bid (including any Subsequent Bid by any Stalking Horse Bidder), the Debtors may give effect to the Bid Protections as well as any additional liabilities to be assumed by a Qualified Bidder, and any additional costs which may be imposed on the Debtors.

**Selection of Successful Bid**

Prior to the conclusion of the Auction, the Debtors, in consultation with the Consultation Parties, will review and evaluate each Qualified Bid submitted at the Auction (including by the Stalking Horse Bidders) in accordance with the procedures set forth herein and determine which offer is the highest or otherwise best offer, which considerations may include the proposed amount of Contracts and Leases to be assumed and the number of employees who are proposed to be offered employment under the terms of each Qualified Bid (one or more such bids, collectively the "**Successful Bid**" and the bidder(s) making such bid(s), collectively, the "**Successful Bidder**"), and communicate to the Stalking Horse Bidders and the other Auction participants the identity of the Successful Bidders and the material details of the Successful Bid(s). The determination of the Successful Bid(s) by the Debtors at the conclusion of the Auction shall be final, subject only to approval by the Bankruptcy Court.

The Qualified Bidder(s) with the next highest or otherwise best Qualified Bid or collection of Qualified Bids, as determined by the Debtors, in consultation with the Consulting Parties, will be required to serve as a Backup bidder (each, a "**Backup Bidder**") and keep its bid open and irrevocable until the earlier to occur of (i) the closing on the Successful Bid with the Successful Bidder and (ii) thirty (30) calendar days after the Sale Hearing; *provided, however*, each Stalking Horse Bidder is not required to serve as the Backup Bidder for the applicable Assets unless it chooses to participate in the Auction and bids against the proposed Alternative Transaction; *provided* further, however, that each Stalking Horse Bidder retains

9

the right to terminate its bid if the sale to it does not close by the outside date set forth in the applicable Stalking Horse Agreement. If the Successful Bidder fails to consummate the Sale, the Debtors will be authorized to consummate the Sale with the Backup Bidder without further order of the Bankruptcy Court.

After announcing the Successful Bidder(s) and the Backup Bidder(s) for the respective Assets on the record, the Debtors shall close the Auction for such Assets. Following closing of the Auction and the declaration of a Successful Bidder for any or all of the Assets, neither the Debtors nor their representatives shall initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any person in connection with any sale or other disposition of such Assets.

Within one (1) Business Day after conclusion of the Auction, the Successful Bidder(s) shall complete and execute all agreements, contracts, instruments and other documents necessary to consummate the Successful Bid(s). Within one (1) Business Day after conclusion of the Auction, the Debtors shall file a notice with the Bankruptcy Court identifying the Successful Bidder(s) and the Backup Bidder(s) and cause such notice to be published on the Case Information Website.

The Debtors will sell the respective Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid(s) upon the approval of such Successful Bid(s) by the Bankruptcy Court at the Sale Hearing.

### Return of Deposits

All Good Faith Deposits shall be returned to a bidder not selected by the Debtors as a Successful Bidder or Backup Bidder no later than five (5) Business Days following the conclusion of the Auction.

### THE STALKING HORSE BIDS AND PROTECTIONS

In recognition of its expenditure of time, energy, and resources, the Debtors have agreed that if the Prepetition Stalking Horse Bidder is not the Successful Bidder for the Perkins Business Assets and the Debtors consummate the Successful Bid with such Successful Bidder or in the event the Prepetition Stalking Horse Bidder terminates the Prepetition Stalking Horse Agreement as a result of the Sellers' breach thereof, the Debtors will pay, subject to the Bidding Procedures Order and the Prepetition Stalking Horse Agreement, the Prepetition Stalking Horse Bidder (i) reimbursement in an aggregate amount up to $600,000, less the amount advanced to and retained by the Prepetition Stalking Horse Bidder pursuant to the Expense Advance Agreement, for its documented, reasonable, third-party out-of-pocket costs, fees and expenses (the "**Prepetition SH Expense Reimbursement**") and (ii) a termination fee in the amount of (A) $1,050,000 in the event of a Foxtail Overbid Acceptance or, in the alternative, (B) $1,200,000 in the event of no Foxtail Overbid Acceptance (the "**Prepetition SH Break-Up Fee**", together with the Prepetition SH Expense Reimbursement, the "**Prepetition SH Bid Protections**"). The Prepetition Stalking Horse Bidder shall provide documentation of the expenses for which it seeks reimbursement to counsel to the Debtors. The Prepetition SH Expense Reimbursement and the Prepetition SH Break-Up Fee shall each be payable as provided for pursuant to the terms of the Bidding Procedures Order and the Prepetition Stalking Horse Agreement.

In recognition of its expenditure of time, energy, and resources, the Debtors have agreed that if the Foxtail Stalking Horse Bidder is not the Successful Bidder for the Ohio Business Assets and the Debtors consummate the Successful Bid with such Successful Bidder, the Debtors will pay, subject to the Bidding Procedures Order and the Foxtail Stalking Horse Agreement, the Foxtail Stalking Horse Bidder a termination fee up to an aggregate maximum amount of $500,000 (the "**Foxtail Break-Up Fee**" and, together with the Prepetition SH Bid Protections, the "**Bid Protections**").

**SALE HEARING**

The Debtors will seek entry of an order from the Bankruptcy Court at a hearing (the "**Sale Hearing**") to begin on or before **September         , 2019 at                             .m. (prevailing Eastern Time)**, subject to the availability of the Bankruptcy Court, to approve and authorize the Sale to the Successful Bidder(s). Subject to the terms of the Stalking Horse Agreements, the Debtors reserve the right to change the date and/or time of the Sale Hearing (or any other dates related to the Sale, including, without limitation, the Auction) in order to achieve the maximum value for the Assets in consultation with the Consultation Parties.

**RESERVATION OF RIGHTS OF THE DEBTORS**

Except as otherwise provided in the Stalking Horse Agreements, the Bidding Procedures or the Bidding Procedures Order, the Debtors reserve the right, in consultation with the Consultation Parties, as they may reasonably determine to be in the best interest of their estates to: (i) determine which Potential Bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid is the highest or best proposal and which is the next highest or best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all Potential Bidders; (vi) impose additional terms and conditions with respect to all Potential Bidders; (vii) extend the deadlines set forth herein; (viii) continue or cancel the Auction and/or Sale Hearing, with respect to any or all of the Assets, in open court, or by filing a notice on the docket of the Debtors' Chapter 11 Cases, without further notice to creditors or other parties in interest; and (ix) modify the Bidding Procedures and implement additional procedural rules that the Debtors determine, in their business judgment will better promote the goals of the bidding process and discharge the Debtors' fiduciary duties; *provided, however,* that any modification or additions to the Bidding Procedures shall not be inconsistent with the Stalking Horse Agreements, the Stalking Horse Bidders' rights under the Bidding Procedures Order or the Stalking Horse Agreements, the Bidding Procedures Order or any other Order of the Bankruptcy Court, unless otherwise ordered by the Bankruptcy Court; *provided, further,* that the Debtors may not waive or modify, to the extent it adversely affects the Stalking Horse Bidders, the terms of the Bidding Procedures without the prior consent of the Stalking Horse Bidders (which consent shall not be unreasonably withheld, conditioned, or delayed).