**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Perkins & Marie Callender's LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11743 (KG)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 13, 141 and 160** |

**LIMITED OBJECTION OF WF PP REALTY, LLC TO THE SALE OF
SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

WF PP Realty, LLC ("**WF PP Realty**")[2], by and through its undersigned counsel, hereby files this Limited Objection (the "**Objection**") to the motion, dated August 5, 2019 [Docket No. 13] (the "**Sale Motion**"), seeking, among other things, approval of the sale of substantially all of the Debtors' assets to Perkins Group LLC (the "**Stalking Horse Bidder**") or such other bidder who makes a higher or better offer for the Debtors' assets.  In support of this Objection, WF PP Realty respectfully represents as follows:

**BACKGROUND**

1.    On August 5, 2019, (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with this Court.

2.    The Debtors remain in possession of their properties and continue to manage and operate their businesses as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.

---

[1]    The Debtors, together with the last four digits of each Debtors' federal tax identification number, are Perkins & Marie Callender's, LLC (2435), Perkins & Marie Callender's Holding, LLC (3381), Marie Callender Pie Shops, LLC (1620), MC Wholesalers, LLC (2420), PMCI Promotions LLC (7308); MCID, Inc. (2015), Wilshire Beverage, Inc. (5887); FIV, LLC (9288), P&MC's Real Estate Holding LLC (8553), and P&MC's Holding Corp (2225) The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

[2]    WF PP Realty is the successor in interest to the original landlord, CNL APF Partners LP, by virtue of an Assignment and Assumption of Master Lease Agreement dated December 19, 2014.

3. On August 23, 2019, the Court entered the Bidding Procedures Order [Docket No. 141] that, among other things, (a) approved the bidding procedures pursuant to which the Debtors will solicit and select the highest and otherwise best offer for the sale of substantially all of the Debtors' assets, (b) approved the form and manner of notice related to the sale, (c) approved the procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the sale, including notice of proposed cure costs.

4. Prior to the Petition Date, Debtor Perkins & Marie Callender's LLC (the "**Debtor**") entered into a Master Lease Agreement, dated January 14, 2010, as amended by: (i) the Lease Agreement Amendment entered into as of March 22, 2011; (ii) the Second Amendment to Master Lease Agreement entered into as of October 11, 2011; and (iii) the Third Amendment to Master Lease Agreement entered into as of March 5, 2015, together with ancillary documents related thereto (collectively, the "**Master Lease**").

5. Under the Master Lease, the Debtor leased the following eight (8) premises (the "**Premises**"):

| Store # | Asset # | Address | City | State |
|---|---|---|---|---|
| 1129 | 3557 | 215 West Highway 436 | Alamonte Springs | FL |
| 1242 | 3644 | 905 Buchara | Lady lake | FL |
| 1245 | 3596 | 1401 S. Tamiami Trail | Ft. Meyers | FL |
| 1250 | 3598 | 1502 Cape Coral Parkway | Cape Coral | FL |
| 1192 | 3582 | 2741Crown Lake Blvd. | Bonita Springs | FL |
| 1133 | 3559 | 7451 W. Irlo Bronson Mem. Hwy. | Kissimmee | FL |
| 1134 | 3560 | 6813 Sand Lake Road | Orlando | FL |
| 1140 | 4353 | 13620 N. Cleveland Ave. | Ft. Meyers | FL |

6. The current Base Annual Rent (as such term is defined in the Master Lease) for the eight Premises is $2,043,080.88 per year or $170,256.74 per month. As the Master Lease is a net lease, the Debtor is responsible for paying: (i) all real property and other taxes relating to the Premises; (ii) water and sewer rents and charges; and (iii) all charges for utility and communication services. In addition, the Debtor is required to maintain each of the Premises in good condition and repair and pay all operating costs of each of the Premises in the ordinary course of business.

7. By its plain terms, the Master Lease is one indivisible agreement, which can only be assumed or rejected in its entirety.

8. In the Amended Notice of Potential Assumption and Assignment of Executory Contracts or Unexpired Leases and Cure Costs, dated September 1, 2019 [Docket No. 160] (the "**Assumption and Assignment Notice**"), the Debtors state different cure amounts that are outstanding as of the Petition Date for each of the eight (8) stores included in the Master Lease. Upon information and belief, these cure amounts are an internal calculation used by the Debtors, because the Master Lease does not allocate separately the rent among the eight (8) stores under the Master Lease. Furthermore, the Assumption and Assignment Notice lists cure amounts for only seven (7) of the eight (8) stores leased under the Master Lease. Any attempt to sever a single store from the Master Lease is a breach of the Master Lease. As explained below, any sale of the Debtors' assets which seeks to assume and assign the Master Lease to the Staling Horse Bidder or any other bidder must assume the Master Lease *cum onere* and cannot cherry pick locations.

## ARGUMENT

9. Under Section 365 of the Bankruptcy Code, a debtor, subject to court approval, has the right to "assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. §365(a). However, a debtor cannot only pick the favorable terms of a contract or lease to be assumed. As one court stated: "'The [debtor] may not blow hot and cold. If he accepts the contract

he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'" *In re Buffets Holdings, Inc.*, 387 B.R. 115,118 (Bankr. D. Del. 2008 (Walrath, J.) (quoting *In re Italian Cook Oil Corp.*, 190 F. 2d 994,997 (3d Cir. 1951).

10. Because the Master Lease is an integrated agreement that cannot be severed, the Debtor and any purchaser cannot merely carve out a single location it may not like. Indeed, the Master Lease provides for the lease of *all* of the Premises to the Debtor. *See* Master Lease, Section 2.1 ("In consideration of the rentals and other sums to be paid by Lessee and of the other terms, covenants and conditions on the Lessee's part to be kept and performed, Lessor leases the Premises to Lessee for the Lease Term.").[3]

11. In addition, there is no allocation of rent for each of the individual Premises under the Master Lease. Instead, the Debtor is obligated to pay rent for all of the eight properties. *See* Master Lease, Section 3.1 ("On or before the first day of each calendar month during the Lease Term, Lessee shall pay Lessor in advance the Base Monthly Rent then in effect….").

12. It is also clear that the Master Lease was intended by the parties to be one indivisible agreement that cannot be severed to allow the Debtor to omit one of individual store locations without the express written consent of the parties. Section 2.2 of the Master Lease states in pertinent part:

> Lessor and Lessee intend that this Lease constitutes a single master lease of all, but not less than all, of the Premises and that Lessor and Lessee have executed and delivered this Lease with the understanding that *this Lease constitutes a unitary, unseverable instrument pertaining to all, but not less than all, of the Premises, and that neither this Lease nor the duties, obligations or rights of Lessee may be allocated or otherwise divided by Lessee or Lessor among the real property comprising the Premises*.

Master Lease, Section 2.2 (emphasis added).

---

[3] The term "Premises" is defined in the Master Lease to mean "all of the Individual Premises." Exhibit A, Master Lease, p. 5.

13. Given the fact that the Debtor agreed that the Master Lease is a single instrument that is not severable and that the obligations, duties and rights of the Debtor cannot be allocated or otherwise divided by the Debtor, the Debtor must either assume or reject the Master Lease in its entirety.

## **RESERVATION OF RIGHTS**

14. WF PP Realty reserves its rights to amend or supplement this Objection and to raise any other objections to the sale or at the hearing on the assumption and assignment of the Master Lease, including but not limited to, the cure of all monetary and non-monetary defaults and that the Debtor, the Stalking Horse Bidder or any proposed assigned has failed to provide adequate assurance of future performance.

**WHEREFORE**, WF PP Realty respectfully requests that the Court (i) deny the Sale Motion unless the Master Lease is assumed or rejected in its entirety and (ii) grant such further relief as this Court deems just and proper.

Dated:  September 9, 2019
    Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

_/s/ William E. Chipman, Jr._
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0193
Facsimile:     (302) 295-0199
Email:          chipman@chipmanbrown.com
                    olivere@chipmanbrown.com

—and—

          **ELLENOFF GROSSMAN & SCHOLE LLP**
          Howard J. Berman
          1345 Avenue of the Americas, 11th Floor
          New York, New York 10105
          Telephone: (212) 370-1300
          Facsimile: (212) 370-7889
          Email: hberman@egsllp.com

*Counsel for WF PP Realty, LLC*