## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| Perkins & Marie Callender's, LLC, *et al.*, [1] | ) | Case No. 19-11743 (KG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 13 & 58** |

### FINAL ORDER (I) APPROVING
### POSTPETITION FINANCING, (II) AUTHORIZING
### USE OF CASH COLLATERAL, (III) GRANTING LIENS AND
### PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV)
### GRANTING ADEQUATE PROTECTION, AND (V) MODIFYING AUTOMATIC STAY

Upon the motion, dated August 5, 2019 (the "<u>DIP Motion</u>") of Perkins & Marie

Callender's, LLC ("<u>P&MC</u>"), Marie Callender Pie Shops, LLC ("<u>Marie</u>," and together with

P&MC, the "<u>Borrowers</u>"), Perkins & Marie Callender's Holding, LLC ("<u>Holding</u>"), PMCI

Promotions LLC ("<u>PMCI</u>"), MC Wholesalers, LLC ("<u>MC</u>"), MCID, Inc. ("<u>MCID</u>"), Wilshire

Beverage, Inc. ("<u>Wilshire</u>"), FIV, LLC ("<u>FIV</u>"), P&MC's Real Estate Holding LLC ("<u>Real

Estate Holding</u>"), and P&MC's Holding Corp. (together with Holding, PMCI, MC, MCID,

Wilshire, FIV and Real Estate Holding, the "<u>Guarantors</u>"), each as a debtor and debtor in

possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Cases</u>"),

seeking entry of an order (this "<u>Final Order</u>") pursuant to sections 105, 361, 362, 363, 364(c)(1),

364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506, 507 and 552 of chapter 11 of title 11 of the

United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 4001, 6003, 6004, 9013 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rules 2002-1, 4001-1,

---

[1]  The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225).  The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), *inter alia:*

(i)     authorizing the Debtors to obtain senior secured postpetition financing on a super-priority basis pursuant to the terms and conditions of that certain Superpriority Secured Debtor-in-Possession Credit Agreement (as the same may be amended, restated, supplemented, or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), by and among the Borrowers, the Guarantors, Bank of America, N.A., as administrative agent (in such capacity, the "<u>DIP Agent</u>") for and on behalf of the lenders party thereto (collectively, the "<u>DIP Lenders</u>"), and the DIP Lenders substantially in the form of <u>Exhibit B</u>, attached to the DIP Motion;[2]

(ii)    authorizing the Debtors to obtain from the DIP Lenders, during the interim period pending the entry of the Final Order, up to $5,500,000 in accordance with the DIP Credit Agreement and the Interim Order;

(iii)   authorizing the Debtors to obtain from the DIP Lenders upon entry of the Final Order total advances in an amount not to exceed a maximum outstanding principal amount of $7,750,000 in accordance with the DIP Credit Agreement, the DIP Documents (as defined herein) and this Final Order;

(iv)    authorizing the Debtors to execute and deliver the DIP Credit Agreement, the other "Loan Documents" as described in the DIP Credit Agreement and any other agreements and documents related thereto (collectively with the DIP Credit Agreement, the "<u>DIP Documents</u>"), and to perform such other acts as may be necessary or desirable in connection with the DIP Documents and the transactions contemplated thereby;

(v)     subject to the Carve-Out, granting to the DIP Agent and the DIP Lenders, on account of the DIP Facility and all obligations owing thereunder and under the DIP Documents (collectively, and including all "Secured Obligations" as described in the DIP Credit Agreement, the "<u>DIP Obligations</u>"), an allowed super-priority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code, in each of the Cases and any Successor Cases (as defined herein);

(vi)    subject to the Carve-Out and the Prepetition Prior Liens (as defined herein), granting to the DIP Agent, for the benefit of itself and the DIP Lenders, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash

---

[2]    Capitalized terms used herein but not otherwise defined shall have the respective meanings given to such terms in the DIP Credit Agreement or the DIP Motion.

Collateral" as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein;

(vii)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become due, including, without limitation, continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' respective attorneys, advisors, accountants and other consultants, all to the extent provided in, and in accordance with, the DIP Documents;

(viii)    (a) authorizing the use of Cash Collateral of the Prepetition Secured Parties (each as defined herein) pursuant to section 363 of the Bankruptcy Code and subject to the Approved Budget (as defined herein), the initial form of which is attached hereto as <u>Exhibit A</u>, and (b) subject to the Carve-Out, providing adequate protection to the Prepetition Secured Parties for any diminution in value of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral;

(ix)    waiving, upon entry of this Final Order, certain rights of the Debtors to surcharge collateral pursuant to section 506(c) of the Bankruptcy Code;

(x)    waiving, upon entry of this Final Order, the application of the "equities of the case" exception under section 552(b) of the Bankruptcy Code as to the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral; and

(xi)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

The Court having considered the DIP Motion and the exhibits attached thereto, the *Declaration of Jeffrey D. Warne in Support of the Debtors' Chapter 11 Petitions and First Day Relief*, the *Declaration of John Strek in Support of the DIP Motion*, the DIP Documents, and the evidence submitted at the interim hearing held on August 6, 2019 (the "<u>Interim Hearing</u>") and the final hearing held on September [__], 2019 (the "<u>Final Hearing</u>"); and the Court having entered an interim order (the "<u>Interim Order</u>") authorizing financing on an interim basis and granting adequate protection to the Prepetition Secured Parties; and notice of the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all

3

applicable Local Rules; and the Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing that approval of the relief requested in the DIP Motion, as granted below, is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates and all parties-in-interest, and is essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement is a sound and prudent exercise of the Debtors' business judgment; and it further appearing that the Debtors are unable to obtain credit on terms more favorable than those of the DIP Facility; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE PLEADINGS AND THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    <u>Petition Date</u>. On August 5, 2019 (the "<u>Petition Date</u>"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>").

B.    <u>Debtors in Possession</u>. The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

C.      <u>Jurisdiction and Venue</u>. This Court has core jurisdiction over the Cases, the DIP

Motion and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409. The Court may enter a final order consistent with Article III of the

United States Constitution. The predicates for the relief sought herein are sections 105, 361, 362,

363(c), 363(e), 364(c), 364(d)(1), 364(e), 503, 506, 507 and 552 of the Bankruptcy Code,

Bankruptcy Rules 2002, 4001, 6003, 6004, 9013 and 9014, and Local Rules 2002-1, 4001-1,

4001-2, and 9013-1.

D.      <u>Committee Formation</u>. On August 14, 2019, the United States Trustee for the

District of Delaware (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors

in these Cases pursuant to section 1102 of the Bankruptcy Code (a "<u>Creditors' Committee</u>").

E.      <u>Debtors' Stipulations</u>. In requesting the DIP Facility and in exchange for and as a

material inducement to the DIP Lenders to provide the DIP Facility, and to the Prepetition

Secured Parties in exchange for the potential Diminution in Value (as defined herein), and after

consultation with their attorneys and financial advisors, and without prejudice to the rights of

parties-in-interest as set forth in paragraph 40 herein, the Debtors admit, stipulate, acknowledge,

and agree as follows (paragraphs E(i) through E(vii) below are referred to herein, collectively, as

the "<u>Debtors' Stipulations</u>"):

(i)      *Prepetition Facility.* Pursuant to that certain Credit Agreement dated as of June
         26, 2015 (as amended, restated, supplemented, or otherwise modified from time
         to time, the "<u>Prepetition Credit Agreement</u>") among (a) the Borrowers (the
         "<u>Prepetition Borrowers</u>"), (b) the guarantors party thereto (the "<u>Prepetition
         Guarantors</u>" and collectively with the Prepetition Borrowers, the "<u>Prepetition
         Credit Parties</u>"), (c) Bank of America, N.A., as administrative agent (in such
         capacity, the "<u>Prepetition Agent</u>") and letter of credit issuer (in such capacity, the
         "<u>Prepetition L/C Issuer</u>"), and (d) the lenders party thereto (the "<u>Prepetition
         Lenders</u>" and collectively with the Prepetition Agent and the Prepetition L/C
         Issuer, the "<u>Prepetition Secured Parties</u>"), the Prepetition Lenders extended loans

and other financial accommodations to, and the Prepetition L/C Issuer issued letters of credit for the account of, the Prepetition Borrowers (the "Prepetition Facility"). The Prepetition Credit Agreement, the other Loan Documents (as defined in the Prepetition Credit Agreement) and any other agreements and documents executed or delivered in connection therewith or pursuant thereto, each as may be amended, restated, supplemented, or otherwise modified from time to time, are collectively referred to herein as the "Prepetition Credit Documents".

(ii)     *Prepetition Obligations.* The Prepetition Facility provided the Prepetition Borrowers with, among other things (a) $25,000,000.00 in aggregate principal amount of revolving commitments, including letters of credit, and (b) $127,750,000.00 in aggregate principal amount in a term loan facility. As of the Petition Date, the Prepetition Lenders are owed on account of the Prepetition Facility approximately (i) $14,541,010.00 in revolving loan principal obligations, including reimbursement obligations in the amount of $8,541,010.00, (ii) $94,001,172.55 in term loan principal obligations, (iii) $6,304,256.59 in respect of accrued and unpaid interest, (iv) $160,677.75 in respect of accrued and unpaid letter of credit fees, and (v) $91,821.22 in respect of accrued and unpaid commitment fees (collectively, with any other reimbursement obligations (contingent or otherwise) in respect of letters of credit, any other fees, expenses and disbursements (including, without limitation, attorneys' fees, accountants' fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), treasury, cash management and derivative obligations (including, without limitation, those constituting "Additional Secured Obligations" as defined in the Prepetition Credit Agreement), indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Credit Parties' obligations pursuant to the Prepetition Credit Documents, including all "Secured Obligations" as defined in the Prepetition Credit Agreement, the "Prepetition Obligations").

(iii)    *Prepetition Liens and Prepetition Collateral.* As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Prepetition Credit Parties granted to the Prepetition Agent, for the benefit of itself and the Prepetition Secured Parties, a first-priority security interest in and continuing lien (the "Prepetition Liens") on substantially all of the Prepetition Credit Parties' assets and properties (which, for the avoidance of doubt, includes Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Collateral"). Each of the Prepetition Guarantors jointly and severally, absolutely, unconditionally and irrevocably guaranteed the Prepetition Obligations.

(iv)    *Validity, Perfection and Priority of Prepetition Liens and Prepetition Obligations.* The Debtors acknowledge and agree that as of the Petition Date: (a) the

6

Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Liens are senior in priority over any and all other liens on the Prepetition Collateral, subject only to liens that are valid, properly perfected (before the Petition Date or in accordance with section 546 of the Bankruptcy Code), non-avoidable, and senior in priority as a matter of law to the Prepetition Liens (including without limitation the liens and rights of setoff of banks and other financial institutions (the "<u>Cash Management Banks</u>") providing treasury services comprising the Debtors' cash management system) (collectively the "<u>Prepetition Prior Liens</u>");[4] (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors (other than Real Estate Holding and Holding Corp.) enforceable in accordance with the terms of the applicable Prepetition Credit Documents; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations (or any payment made in respect of any thereof) is subject to any challenge or defense, including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or other applicable law; (e) any payments made on account of the Prepetition Obligations before the Petition Date were (1) payments out of the Prepetition Collateral and/or (2) made in the ordinary course of business and in exchange for reasonably equivalent value and did not diminish any property otherwise available for distribution to unsecured creditors; and (f) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code or actions for recovery or disgorgement, against any of the Prepetition Secured Parties, or any of their respective affiliates, or any of the respective agents, attorneys, advisors, professionals, officers, directors and employees of the foregoing, arising out of, based upon or related to their respective obligations under the Prepetition Credit Documents. For the avoidance of doubt, the Debtors acknowledge and agree that as of the Petition Date, the Prepetition Secured Parties have perfected, first-priority (subject only to Prepetition Prior Liens) Liens on substantially all of the assets of the Prepetition Credit Parties.

(v)     *Release of Claims.* Subject only to the reservation of rights set forth in paragraph 40 below, each Debtor shall be deemed to have forever waived, discharged, and released each of the Prepetition Secured Parties, each of their affiliates, assigns or successors and each of the respective directors, members, managers, equity

---

[4]   Nothing herein shall constitute a finding or ruling by this Court that any asserted Prepetition Prior Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party-in-interest, including, but not limited to the Debtors, the Prepetition Secured Parties, or the Creditors' Committee, to challenge the validity, priority, enforceability, seniority, non-avoidability, perfection or extent of any alleged Prepetition Prior Lien.

holders, officers, employees, agents, trustees, representatives, attorneys, financial advisors, accountants, collateral auditors, appraisers, consultants and each insurance, environmental, legal, financial and other advisor and other consultants and agents of or to the foregoing (collectively, the "Prepetition Secured Party Releasees") from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action (including causes of action in the nature of "lender liability"), defenses, setoff, recoupment, other offset rights and other rights of disgorgement or recovery against any and all of the Prepetition Secured Party Releasees, whether arising at law or in equity, relating to and/or otherwise in connection with the Prepetition Liens, the Prepetition Obligations, the Prepetition Credit Documents, or the debtor-creditor relationship between any of the Prepetition Secured Parties, on the one hand, and any of the Debtors, on the other hand, including, without limitation, (a) any recharacterization, subordination, avoidance, disallowance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state law, federal law, municipal law, or foreign law and (b) any right or basis to challenge or object to the amount, validity, or enforceability of the Prepetition Obligations or any payments or other transfers made on account of the Prepetition Obligations, or the validity, enforceability, priority, or non-avoidability of the Prepetition Liens securing the Prepetition Obligations, including any right or basis to seek any disgorgement or recovery of payments of cash or any other distributions or transfers previously received by any of the Prepetition Secured Party Releasees.

(vi)    *Cash Collateral.* Subject to certain exclusions set forth in the Prepetition Credit Documents, including certain segregated Cash Collateral that is defined as "Excluded Property" under the Prepetition Credit Documents, all of the Debtors' cash, including any cash in deposit accounts of the Debtors, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

(vii)   *No Control.* None of the DIP Lenders or the Prepetition Lenders is a control person or insider (as defined in section 101(31) of the Bankruptcy Code) of any Debtor.

F.      Findings Regarding Corporate Authority. Each Debtor has all requisite corporate power and authority to execute and deliver the DIP Documents to which it is a party and to perform its obligations thereunder.

G.      Interim Order. On August 6, 2019, the Court entered the Interim Order, pursuant to which the Debtors were authorized to obtain financing from the DIP Lenders on an interim basis in accordance with the terms of the DIP Documents and the Interim Order.

H.    <u>Adequate Notice of Final Hearing</u>. On the Petition Date, the Debtors filed the DIP

Motion with this Court pursuant to Bankruptcy Rules 2002, 4001, 9013 and 9014, and represent

that they provided notice of the DIP Motion, the Interim Hearing and the Final Hearing to the

following parties and/or their respective counsel as follows: (i) the U.S. Trustee, (ii) the Debtors'

thirty (30) largest unsecured creditors on a consolidated basis (excluding insiders), (iii) counsel

to the Prepetition Agent, (iv) counsel to the DIP Agent, (v) with respect to the Final Hearing, the

Creditors' Committee (which was appointed by the U.S. Trustee following the Interim Hearing)

and (vi) any other party entitled to notice pursuant to Local Rule 9013-1(m). The notice given by

the Debtors of the DIP Motion, the relief requested therein and the Final Hearing complies with

Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9013, the applicable Local Rules and the

Interim Order.

I.    <u>Findings Regarding Postpetition Financing</u>.

(i)    *Request for Postpetition Financing*. The Debtors seek authority on

a final basis to continue (a) borrowing under the DIP Facility on the terms described herein and

in the DIP Documents, and (b) using Cash Collateral on the terms described herein to administer

the Cases and fund their operations.

(ii)    *Priming of the Prepetition Liens*. The priming of the Prepetition

Liens of the Prepetition Secured Parties on the Prepetition Collateral under section 364(d) of the

Bankruptcy Code, as contemplated by the DIP Facility and as further described herein, will

enable the Debtors to obtain the DIP Facility and to continue to operate their businesses to the

benefit of their estates and creditors. The Prepetition Secured Parties are entitled to receive

adequate protection as set forth in this Final Order pursuant to sections 361, 363, and 364 of the

Bankruptcy Code, to the extent that (a) the stay under section 362 of the Bankruptcy Code, (b)

9

the use, sale or lease of the Prepetition Collateral (including Cash Collateral) under section 363 of the Bankruptcy Code or (c) any grant of a lien under section 364 of the Bankruptcy Code (including, without limitation, the granting of the DIP Liens (as defined herein), subject to the Carve-Out) results in a decrease in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral (including the Cash Collateral) (any of the foregoing, but in each case subject to the Diminution Exclusion (as defined below), the "Diminution in Value").

(iii)    *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors have an immediate and critical need to use Cash Collateral and to obtain credit pursuant to the DIP Facility in order to, among other things, complete the marketing and sale of their assets and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, to pay their employees and otherwise finance their operations requires the continued availability of working capital from the DIP Facility and the continued use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, and parties-in-interest, and the Debtors' ability to complete the marketing and sale process. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.* The DIP Facility is the best source of debtor-in-possession financing available to the Debtors. Given their current financial condition, financing arrangements and capital structure, the Debtors have been and continue to be unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility and are unable to obtain unsecured credit allowable under section

10

503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain credit that is: (a) unsecured having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders: (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth in paragraph 6 hereof, (2) super-priority claims and liens, and (3) the other protections set forth in this Final Order.

(v)     *Use of Proceeds of the DIP Facility*. The Debtors shall use the proceeds of the DIP Facility and any Cash Collateral, in accordance with the Approved Budget, solely as follows: (a) on the Closing Date, to pay costs and expenses associated with the closing of the transactions under the DIP Credit Agreement, including those required to be paid pursuant to the DIP Credit Agreement, and (b) on or after the Closing Date, to fund the Cases in accordance with the Approved Budget or as otherwise set forth in the Interim Order and this Final Order and for the financing of Debtors' ordinary working capital and other general corporate needs, including certain fees and expenses of professionals retained by the Debtors and for certain other prepetition and pre-filing expenses that are approved by this Court and permitted by the Approved Budget (subject to Permitted Variances). The Debtors shall not be permitted to use the proceeds of the DIP Facility or any Cash Collateral in contravention of the provisions of the DIP Documents, this Final Order or the Bankruptcy Code, including any restrictions or limitations on the use of proceeds contained therein.

J.      <u>Adequate Protection</u>. The Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, is entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, as provided herein.

K.      <u>Sections 506(c) and 552(b)</u>. In light of (i) the DIP Agent's and the DIP Lenders' agreement to subordinate their liens and super-priority claims to the Carve-Out and (ii) the Prepetition Secured Parties' agreement to subordinate their liens and super-priority claims to the Carve-Out, DIP Liens and DIP Superpriority Claim and to permit the use of Prepetition Collateral (including Cash Collateral): (a) the Prepetition Secured Parties are each entitled to a waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and (b) the DIP Agent, DIP Lenders, and Prepetition Secured Parties are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code.

L.      Good Faith of the DIP Agent and the DIP Lenders.

(i)      *Willingness to Provide Financing.* The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to *inter alia*: (a) entry of the Interim Order and this Final Order; (b) approval by the Court of the terms and conditions of the DIP Facility and the DIP Documents; (c) satisfaction of the closing conditions set forth in the DIP Documents; and (d) findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and the DIP Agent's and the DIP Lenders' claims, super-priority claims, security interests and liens and other protections granted pursuant to the Interim Order, this Final Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code.

(ii)      *Business Judgment and Good Faith Pursuant to Section 364(e).* The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid, and to be paid, thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, are ordinary and appropriate for secured financing to debtors in possession, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration. The terms and conditions of the DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Agent, DIP Lenders, and Prepetition Secured Parties, with the assistance and counsel of their respective advisors. Use of Cash Collateral and credit to be extended under the DIP Facility shall be deemed to have been allowed, advanced, made, or extended in good faith by the DIP Agent, DIP Lenders and Prepetition Secured Parties within the meaning of section 364(e) of the Bankruptcy Code.

13

M.    <u>Immediate Entry</u>.    Sufficient cause exists for immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED** that:

1.    <u>Financing Approved</u>. The DIP Motion is granted on a final basis, the Financing (as defined herein) is authorized and approved, and the use of Cash Collateral is authorized, in each case subject to the terms and conditions set forth in the DIP Documents and this Final Order. All objections to the DIP Motion and to this Final Order to the extent not withdrawn, waived, settled or resolved are hereby denied and overruled.

**DIP Facility Authorization**

2.    <u>Authorization of the DIP Financing</u>.  The DIP Documents are hereby approved on a final basis.  The Debtors are expressly and immediately authorized and empowered on a final basis to borrow, and to continue borrowing, under the DIP Facility, and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order, the DIP Documents and the Approved Budget, and to deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by the Interim Order, this Final Order and the DIP Documents. The Debtors are hereby authorized to pay, in accordance with the Interim Order and this Final Order, the principal, interest, fees, expenses and other amounts described in the DIP Documents and all other documents comprising the DIP Facility as such become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fees, continuing

commitment fees, servicing fees, audit fees, structuring fees, administrative agent's fees, the reasonable and documented fees and disbursements of the DIP Agent's and the DIP Lenders' respective attorneys (including the allocated costs (with no profit margin) of the DIP Lenders' internal counsel in connection with the Cases), advisors, accountants, and other consultants, to implement all applicable reserves and to take any other actions that may be necessary or appropriate, all to the extent provided in the DIP Documents. The DIP Documents represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

3.      <u>Authorization to Borrow and to Use Cash Collateral</u>. In order to prevent immediate and irreparable harm to the Debtors' estates, from the entry of this Final Order through and including the Termination Declaration (as defined herein), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Final Order, and subject to the Approved Budget, the Debtors are hereby authorized to request and obtain extensions of credit (in the form of loans under the DIP Facility) up to an aggregate outstanding principal amount of $7,750,000 at any one time outstanding (the "<u>Financing</u>").

4.      <u>DIP Obligations</u>. The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee appointed in the Cases, or in any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "<u>Successor Cases</u>"). Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent

15

or any of the DIP Lenders under the DIP Documents, the Interim Order or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts under the DIP Documents.

5.      <u>DIP Liens</u>. To secure the DIP Obligations, effective immediately upon entry of the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent, for the benefit of itself and the DIP Lenders, was granted, and hereby is granted on a final basis, against each of the Debtors on a joint and several basis, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens (collectively, the "<u>DIP Liens</u>") on all real and personal property (subject to the Avoidance Action Lien Limitation (as defined below)), whether now existing or hereafter arising, tangible or intangible, of each of the Debtors (the "<u>DIP Collateral</u>"), including without limitation: (a) all monies, cash (including without limitation, promotional cash), cash equivalents, deposit accounts, lockbox accounts, securities accounts, commodities accounts, or other accounts owned by any Debtor, other receivables, accounts, chattel paper (whether tangible or electronic), contract rights, inventory (wherever located and including without limitation inventory in transit), instruments (including promissory notes), documents (as defined in the Uniform Commercial Code and including, if applicable, electronic documents), securities (whether or not marketable) and investment property (including, without limitation, all of the issued and outstanding capital stock of each of its subsidiaries), goods, furniture, fixtures, equipment and any accessions thereto, franchise rights, trade names, trademarks, servicemarks, copyrights, patents, intellectual property, general intangibles, payment intangibles, rights to the payment of money (including, without limitation, tax refunds and any other extraordinary payments), supporting obligations, guarantees, letter of credit rights (whether or not evidenced

by a writing), commercial tort claims, claims and causes of action and all substitutions, other personal property, leases and leaseholds (*provided, however,* with respect to the Debtors' non-residential real property leases, no liens or encumbrances shall be granted or extend to such leases themselves under the Interim Order or this Final Order, except as permitted in the applicable lease or pursuant to applicable law, but rather any liens granted shall extend only to the proceeds realized upon the sale, assignment, termination, or other disposition of such leases, books and records related to the foregoing, accessions and proceeds of the foregoing, wherever located, including insurance or other proceeds); (b) all proceeds or property recovered in connection with actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions"); provided, that (i) the DIP Liens shall not extend to the Avoidance Actions themselves; and (ii) the DIP Liens on proceeds and property recovered in connection with Avoidance Actions shall secure only those portions of the DIP Obligations constituting post-petition new money advances made in accordance with the Approved Budget or pursuant to the Interim Order or this Final Order (the "Avoidance Action Lien Limitation"); and (c) subject to the terms of the DIP Credit Agreement, all owned real property interests and the economic value of all ground-leased real property (including the proceeds realized upon the sale, assignment or other transfer thereof and all other proceeds and products thereof).  For the avoidance of doubt, (x) the Debtors may not grant liens on and/or security interests in any collateral provided by or on behalf of the Debtors to ACE American Insurance Company, ACE Fire Underwriters Insurance Company, ACE Property and Casualty Insurance Company, Agri General Insurance Company, Indemnity Insurance Company of North America, Insurance Company of North America (INA), Pacific Employers Insurance Company, Federal Insurance Company, Executive Risk Indemnity Inc. or any affiliates and successors thereof (collectively, "Chubb"), other than the DIP Liens and the

Adequate Protection Liens, which are junior to Chubb's Prepetition Prior Liens, (y) this Order does not grant the Debtors any right to use any property (or the proceeds thereof) held by Chubb as collateral to secure obligations under insurance policies and related agreements; and (z) nothing, including the DIP Credit Agreement and/or this Order, alters or modifies the terms and conditions of any insurance policies or related agreements issued by Chubb.

6. <u>DIP Lien Priority</u>. The DIP Liens securing the DIP Obligations are valid, automatically perfected, non-avoidable, senior in priority and superior to any security, mortgage, collateral interest, lien, claim or interest to or on any of the DIP Collateral, except that the DIP Liens shall be junior only to: (a) the Prepetition Prior Liens, (b) any permitted senior liens, if any, under the DIP Documents and (c) the Carve-Out. Other than as set forth herein, the DIP Liens shall not be made subject to, or *pari passu* with, any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens securing the DIP Obligations are expressly senior to the rights of any seller of goods to reclaim such goods under sections 546(c) or 503(b)(9) of the Bankruptcy Code. The DIP Liens shall not be subject to section 510, 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

7. <u>DIP Superpriority Claim</u>. Upon entry of the Interim Order, the DIP Agent and the DIP Lenders were granted, and are hereby granted on a final basis, against each of the Debtors on a joint and several basis, pursuant to Section 364(c)(1) and 364(d) of the Bankruptcy Code, an allowed, senior secured, super-priority administrative expense claim in each of the Cases and any

18

Successor Cases (collectively, the "DIP Superpriority Claim") for all DIP Obligations that shall: (a) be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof, including, without limitation, any proceeds or property recovered in connection with the pursuit of Avoidance Actions (but excluding the Avoidance Actions themselves and subject to the marshalling of Avoidance Actions in accordance with paragraph 48 hereof); (b) subject only to the Carve-Out, have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, costs, claims and expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, or any other provision of the Bankruptcy Code or otherwise, as provided under section 364(c)(l) of the Bankruptcy Code; and (c) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative in the Cases or any Successor Case.

8.      No Obligation to Extend Credit. The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Final Order have been satisfied in full or waived in accordance with the DIP Documents.

9.      Use of DIP Facility Proceeds. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, as permitted by the DIP Documents and in compliance with the Approved Budget.

**Authorization to Use Cash Collateral**

10.     Authorization to Use Cash Collateral. The Debtors are authorized to continue using Cash Collateral subject to the terms and conditions of the Final Order, the DIP Facility and the DIP Documents and in accordance with the Approved Budget. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility, the DIP Documents, and in accordance with the Approved Budget.

11.     Prepetition Adequate Protection Liens. Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Agent, for the benefit of itself and the other Prepetition Secured Parties, continuing valid, binding, enforceable and perfected postpetition security interests in and liens on all of the Debtors' assets, including, without limitation, the DIP Collateral (such liens, subject to the following exclusions, the "Adequate Protection Liens"), but excluding any and all commercial tort claims (the "Remaining Commercial Tort Claim Exclusion") and excluding Avoidance Actions and the property and proceeds recovered in respect thereof (the "Avoidance Action Claim Exclusion").

12.     Priority of Adequate Protection Liens.

(i)     The Adequate Protection Liens shall be junior only to: (a) Prepetition Prior Liens; (b) the Carve-Out; (c) the DIP Liens; and (d) the Prepetition Liens. The Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the Debtors' assets and, to the extent applicable, are subject to the DIP Motion Concessions.

(ii)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted or otherwise created in or during the Cases or any Successor Cases and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to (a) section 510 of the Bankruptcy Code with respect to the Prepetition Obligations, or (b) sections 549 or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

13.     <u>Adequate Protection Superpriority Claim</u>.     As further adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties, is hereby granted, as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed super-priority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "<u>Adequate Protection Superpriority Claim</u>").

14.     <u>Priority of the Adequate Protection Superpriority Claim</u>. Except as set forth herein, the Adequate Protection Superpriority Claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; *provided, however,* that the Adequate Protection Superpriority Claim shall be junior to the

21

Carve-Out and the DIP Superpriority Claim; provided, further, however, that the assets subject to the Remaining Commercial Tort Claim Exclusion and the Avoidance Action Claim Exclusion shall not be sources of recovery for such claim, and all Adequate Protection Liens granted by paragraph 13 are subject to being set aside and all Adequate Protection Superpriority Claims granted by paragraph 14 are subject to being disallowed, in each case if and to the extent that the corresponding Prepetition Lien or underlying claim is successfully challenged (in a manner that undermines the granting of adequate protection to the Prepetition Secured Parties) pursuant to paragraph 40 of this Final Order.

15.     Section 507(b) Reservation. Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.

16.     Reserved.

**Provisions Common to DIP Financing and Use of Cash Collateral**

17.     Amendments, Consents, Waivers, and Modifications. The Debtors, with the express written consent of the Required DIP Lenders (as defined herein) and in accordance with the terms and conditions of the DIP Documents, may enter into any amendments, consents, waivers or modifications to the DIP Documents without the need for further notice and hearing or any order of this Court, so long as such amendments, consents, waivers or modifications are non-material; provided, that copies of any such amendments, waivers or modifications shall be promptly filed with the Court. A copy of any such amendment, consent, waiver or modification shall be promptly provided by the Debtors to the DIP Lenders, U.S. Trustee and counsel for the

Creditors' Committee. Any material changes to the DIP Documents will require (i) the consents of the Required DIP Lenders, the Required Prepetition Lenders (as defined below) and any other express written consents required by the DIP Documents (*provided* that, for the avoidance of doubt, increases in the amount of the loans under the DIP Facility shall further require the consent of all DIP Lenders whose commitments are being increased), and (ii) Court approval after notice and a hearing.

18.     Approved Budget.

(i)     The use of borrowings and other extensions of credit by the Debtors under the DIP Credit Agreement and the other DIP Documents shall be limited in accordance with the Approved Budget. The Debtors have delivered to the DIP Lenders and the Prepetition Lenders a detailed nine (9) week budget that sets forth projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period from and including the Petition Date through October 4, 2019 that has been approved by the DIP Lenders and the Required Prepetition Lenders, and a copy of which is attached hereto as Exhibit A (as updated, amended, supplemented or otherwise modified in accordance herewith, the "Approved Budget"). The Approved Budget shall also set forth, for each week, the amount of loans under the DIP Facility anticipated to be advanced or otherwise used for such week after giving effect to any budgeted inflows. Funds borrowed under the DIP Agreement and Cash Collateral used under the Interim Order or this Final Order shall be used by the Debtors in accordance with the DIP Documents, including the Approved Budget (subject to Permitted Variances), the Interim Order and this Final Order. The consent of the Required DIP Lenders and the Required Prepetition Lenders to the Approved Budget shall not be construed as a commitment of the DIP Lenders to provide loans under the DIP Facility or of the DIP Lenders or the Prepetition

23

Lenders to permit the use of Cash Collateral after the occurrence of a Termination Event (as defined below) under the Interim Order or this Final Order, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(ii)   The Approved Budget and Approved Variance Report (as defined herein) shall, including any updates, amendments, supplements and modifications approved hereunder, at all times be in form and substance reasonably acceptable to the Required DIP Lenders and the Required Prepetition Lenders and approved in writing by the DIP Agent and the Prepetition Agent prior to the implementation thereof. Notwithstanding anything herein to the contrary, any updates, amendments, supplements or modifications to the Approved Budget must be consented to in writing by the DIP Lenders holding more than fifty percent (50%) of Total Credit Exposure (as defined in the DIP Credit Agreement) of all DIP Lenders (the "Required DIP Lenders") and, after the Facility Termination Date (as defined in the DIP Credit Agreement), Prepetition Lenders holding more than fifty percent (50%) of the Total Credit Exposure (as defined in the Prepetition Credit Agreement) of all Prepetition Lenders (the "Required Prepetition Lenders"), prior to the implementation thereof and shall not require further notice, hearing, or Court order. For the avoidance of doubt, the Debtors shall not be permitted to use borrowings and other extensions of credit under the DIP Documents or use Cash Collateral without the consent of the Required DIP Lenders and, after the Facility Termination Date (as defined in the DIP Credit Agreement), the Required Prepetition Lenders without the existence of an Approved Budget, unless otherwise provided for herein.

(iii) The DIP Lenders (a) may assume the Debtors will comply with the Approved Budget, (b) shall have no duty to monitor such compliance, and (c) shall not be obligated to pay (directly or indirectly from the DIP Collateral) any unpaid expenses incurred

or authorized to be incurred pursuant to any Approved Budget other than to permit the Debtors' use of Cash Collateral as expressly provided herein prior to the occurrence of a Termination Event. Subject to the terms and conditions of this Final Order, the DIP Lenders shall have the right, but not the obligation, to extend credit independent of any Approved Budget restrictions on loan availability set forth in the DIP Documents, and all loans under the DIP Facility shall be entitled to the benefits and protections of the Interim Order and this Final Order. For the avoidance of doubt, no DIP Lender shall be obligated to extend credit outside the terms of the DIP Documents.

(iv)  On or before 11:00 a.m. Eastern time on the fourth business day of each week (provided that the Approved Variance Report (as defined below) will be delivered commencing after the end of the third full week following the Petition Date), the Debtors shall deliver to the DIP Agent and the Prepetition Agent (with concurrent copies to the Creditors' Committee and the U.S. Trustee): (a) the then current cash balance calculations as of the immediately preceding Friday, which shall exclude any cash in the registers of the Debtors' stores or restaurants and any cash in individual store depository accounts not yet swept to the two master depository accounts, in form and detail reasonably acceptable to the DIP Agent and the Prepetition Agent (the "Cash Balance Report"); and (b) a cash flow reconciliation and variance report in form, substance and detail reasonably acceptable to the DIP Agent and the Prepetition Agent (an "Approved Variance Report") that shows (I) comparisons of actual results for each line item against such line item in the Approved Budget for the prior periods ended and (II) a report setting forth compliance or non-compliance with the Permitted Variance for such Variance Testing Period. As used herein, "Variance Testing Period" means the period from the Petition Date through the week most recently ended. As used herein,

"Permitted Variance" means: (x) Total Operating Receipts (as defined in the Approved Budget) must be no less than 90% of the budgeted amount for the applicable Variance Testing Period on a cumulative basis; (y) Total Operating Disbursements (as defined in the Approved Budget) must not exceed 110% of the budgeted amount for the applicable Variance Testing Period on a cumulative basis; and (z) Total Non-Operating Disbursements (as defined in the Approved Budget) must not exceed 110% of the budgeted amount for the applicable Variance Testing Period on a cumulative basis. The Approved Variance Report shall also provide a commercially reasonable narrative explanation of each variance. The DIP Agent shall promptly deliver to the DIP Lenders, and the Prepetition Agent shall promptly deliver to the other Prepetition Lenders, a copy of each Cash Balance Report and Approved Variance Report upon such agent's receipt.

(v)    Notwithstanding the foregoing, (a) the Debtors may, in their discretion, request that the DIP Agent and Prepetition Agent approve an update, amendment or modification of an existing Approved Budget, and such update, amendment or modification shall not become effective as an Approved Budget unless the Required DIP Lenders and the Required Prepetition Lenders have consented thereto in writing in their sole discretion, and (b) the Debtors shall submit an update or modification of the Approved Budget prior to the effectiveness of any Sale Transaction (as defined below), or any other transaction consented to by the DIP Lenders under the DIP Credit Agreement, which such update or modification shall be acceptable in form, content and detail to the Required DIP Lenders and the Required Prepetition Lenders to become effective as an Approved Budget.

19.    Budget Compliance. The Debtors' payment of any expenses or other disbursements other than those set forth in the Approved Budget (subject to Permitted Variances)

26

or otherwise permitted by the DIP Documents, the Interim Order or this Final Order, in each case without the written consent of the DIP Agent, shall constitute a Termination Event; *provided*, *however*, that in the case of the fees, costs and expenses of the DIP Agent and the DIP Lenders, the Debtors shall pay such fees, costs and expenses in accordance with the DIP Documents, the Interim Order and this Final Order, without being limited by the Approved Budget or constituting a Termination Event.

20.    <u>Modification of Automatic Stay</u>. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and Adequate Protection Superpriority Claim; (b) permit the Debtors to perform such acts as the DIP Agent, DIP Lenders or the Prepetition Secured Parties may request, each in its reasonable discretion, to assure the perfection and priority of the liens granted herein; (c) permit the DIP Agent and Prepetition Agent, to file, as each in its sole discretion deems necessary or advisable, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and Adequate Protection Liens; (d) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, and Prepetition Secured Parties under the DIP Documents, the DIP Facility, the Interim Order and this Final Order; (e) authorize the Debtors to pay, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to retain and apply, payments made in accordance with the terms of this Final Order and the DIP Documents; and (f) permit the Debtors and DIP Agent to take any other actions necessary and appropriate to implement the terms of this Final Order and the DIP Documents, including, without limitation, the implementation of applicable reserves.

27

21.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>. This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of (i) filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, (ii) obtaining "control" (as defined in any applicable Uniform Commercial Code or other law) over any DIP Collateral (and the DIP Agent shall be deemed, without any further action, to have control over all the Debtors' deposit accounts, securities accounts and commodities accounts within the meaning of such Uniform Commercial Code and other law) or (iii) taking any other action to validate or perfect the DIP Liens and Adequate Protection Liens or to entitle the DIP Liens and Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent each are authorized to file, as each in its sole discretion deems necessary or advisable, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or Adequate Protection Liens. The Debtors are authorized to execute and deliver to the DIP Agent and the Prepetition Agent, promptly upon demand therefor, all such financing statements, mortgages, notices and other documents as the DIP Agent or Prepetition Agent may reasonably request. The DIP Agent and Prepetition Agent, each in its discretion, may file a photocopy of this Final Order as a financing statement, notice of lien or similar instrument with any filing or recording office or with any registry of deeds or

28

similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument. To the extent that the Prepetition Agent is the secured party under any security agreement, guaranty, pledge agreement, deed, mortgage, leasehold mortgage, landlord waiver, credit card processor notices or agreements, bailee letters, custom broker agreements, transfer power, financing statement, fixture filing, account control agreements or securities control agreements, listed as loss payee or additional insured under any of the Debtors' insurance policies, or is the secured party under any of the Prepetition Credit Documents (the foregoing collectively, the "Ancillary Collateral Documents"), the DIP Agent shall also be deemed to be the secured party under such Ancillary Collateral Documents, shall have all rights and powers attendant to that position (including rights of enforcement), and shall act in that capacity and distribute any proceeds recovered or received in accordance with the DIP Documents.

22.     Protections of Rights of DIP Agent, DIP Lenders and Prepetition Secured Parties. Through the applicable Consummation Date (as defined below), the Debtors (and/or their legal and financial advisors in the case of clauses (ii) through (iv) below) will: (i) maintain books, records, and accounts to the extent and as required by the DIP Documents and the Prepetition Credit Documents, (ii) reasonably cooperate with, consult with, and provide to the DIP Agent and the Prepetition Agent all such information and documents that any or all of the Debtors are obligated (including upon request by any of the DIP Agent or the Prepetition Agent) to provide under the DIP Documents, Prepetition Credit Documents, or the provisions of this Final Order, (iii) permit, upon reasonable advance written notice to the Debtors, consultants, advisors and other representatives (including third party representatives) of each of the DIP Agent and the Prepetition Agent to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors'

29

business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents and/or the Prepetition Credit Documents as applicable, (iv) permit the DIP Agent and the Prepetition Agent and their respective consultants, advisors and other representatives to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets, and (v) permit, upon reasonable advance written notice to the Debtors, the DIP Agent and the Prepetition Agent and their respective consultants, advisors and other representatives to conduct, at their reasonable discretion and at the Debtors' cost and expense, field audits, collateral examinations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral and the Prepetition Collateral; *provided*, that any DIP Lender or Prepetition Lender and its respective consultants, advisors or other representatives may join the DIP Agent and/or the Prepetition Agent, as applicable, in connection with the exercise of any of the foregoing rights. As used herein, the term "Consummation Date" shall mean, (i) with respect to any matters relating to the DIP Credit Agreement, the date upon which the Facility Termination Date has occurred within the meaning of the DIP Credit Agreement, and (ii) with respect to any matters relating to the Prepetition Credit Agreement, the date upon which (A) the Debtors have confirmed a chapter 11 plan or plans of reorganization or liquidation in each of the Cases with the consent of the Prepetition Agent and the Required Prepetition Lenders, and (B) each such plan (or plans) has been substantially consummated.

      23.    <u>Proceeds of Subsequent Financing</u>. If the Debtors, any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in these Cases or any

Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents, the Interim Order or this Final Order at any time prior to the Facility Termination Date, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied in accordance with this Final Order and the DIP Documents.

24.     <u>Cash Collection and Cash Management</u>. From and after the date of the entry of the Interim Order, all collections and cash proceeds of any DIP Collateral, Prepetition Collateral, accounts, checks and other items of payment or services provided by any Debtor and all Cash Collateral that shall at any time come into the possession, custody, or control of any Debtor, or to which any Debtor is now or shall become entitled at any time, shall be handled in accordance with the DIP Credit Agreement and the Cash Management Orders (as defined herein). Upon the direction of the DIP Agent, at any time after the occurrence of the DIP Termination Date (defined below), and subject to the provisions of paragraph 28 and the rights in favor of the Cash Management Banks set forth in the Cash Management Orders, all cash proceeds shall be remitted to the DIP Agent for application in accordance with the DIP Documents and this Final Order. Each of the Debtors shall establish and maintain cash management arrangements and procedures in accordance with the DIP Documents and any interim and final cash management orders entered by the Court (the "<u>Cash Management Orders</u>"), which shall be in form and substance reasonably acceptable to the DIP Agent and the Prepetition Agent. Unless otherwise agreed to in writing by the DIP Agent and Prepetition Agent, the Debtors shall maintain no deposit accounts except those identified in or opened pursuant to the Cash Management Orders. The Debtors and

the Cash Management Banks are authorized and directed to remit, without offset or deduction, funds in such accounts upon receipt of any direction to that effect from the DIP Agent or Prepetition Agent, subject to the provisions of paragraph 28 of this Final Order and subject to the rights in favor of Cash Management Banks set forth in the Cash Management Orders.

25.     <u>Maintenance of DIP Collateral</u>. Until the Consummation Date, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Credit Agreement and the Prepetition Credit Documents; and (b) cause the DIP Collateral to be maintained in compliance with the requirements of the DIP Documents and the Prepetition Credit Documents.

26.     <u>Disposition of DIP Collateral</u>. Until the Consummation Date, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral or the Prepetition Collateral other than in the ordinary course of business without the prior written consent of the DIP Agent and the Prepetition Agent (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Agent, DIP Lenders, or the Prepetition Secured Parties, or from any order of this Court), except as otherwise provided for in the DIP Documents; *provided*, *however*, for the avoidance of doubt, the Prepetition Secured Parties, the DIP Agent and the DIP Lenders: (i) acknowledge receipt of that certain Asset Purchase Agreement, dated August 2, 2019, by and between Perkins Group LLC, a Delaware limited liability company, Holding and the other Debtors party thereto as "Additional Sellers" (the "<u>Prepetition Stalking Horse Agreement</u>"); (ii) consent to execution and delivery of the Prepetition Stalking Horse Agreement by Holding and the other Debtors party thereto as "Additional Sellers"; (iii) consent to, and agree not to object to, the Bidding Procedures, the Bidding Procedure Order and the Sale Order each as defined in and in the forms attached to the Prepetition Stalking Horse Agreement; and (iv) consent, to the extent any of the "Acquired

Assets" as defined in the Prepetition Stalking Horse Agreement (the "<u>APA Assets</u>") constitutes collateral under the DIP Documents or collateral under the Prepetition Credit Documents, to the sale of such APA Assets pursuant to the Prepetition Stalking Horse Agreement, free and clear of any and all interests under Section 363 of the Bankruptcy Code pursuant to the Bidding Procedures, the Bidding Procedures Order and the Sale Order; provided, that the rights of the DIP Agent and the Prepetition Agent to object to any deviation that is adverse to their, the DIP Lenders' or the other Prepetition Secured Parties' respective rights made to the forms of the Bidding Procedures, Bidding Procedure Order and Sale Order attached to the Prepetition Stalking Horse Agreement, and the right of each DIP Lender and Prepetition Lender to direct the Administrative Agent or the Prepetition Agent, as the case may be, to so object, are expressly reserved.

27.    <u>Termination Events</u>. The occurrence of any of the following events, unless waived in writing in accordance with the DIP Documents, shall constitute a "<u>Termination Event</u>" (and collectively, the "<u>Termination Events</u>"): (a) the failure of the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under the Interim Order or this Final Order; (b) any Debtor seeks any modification or extension of the Interim Order or this Final Order without the consent of the Required DIP Lenders and the Required Prepetition Lenders; (c) any application is filed by any Debtor for the approval of (or an order is entered by the Court approving) any claim arising under section 507(b) of the Bankruptcy Code or otherwise, or any lien in any of the Cases, which is *pari passu* with or senior to the DIP Obligations, the DIP Liens, the DIP Superpriority Claim, the Prepetition Obligations, the Adequate Protection Liens or the Adequate Protection Superpriority Claim (except to the extent permitted under the DIP Documents or granted by this Final Order); (d) the (i) commencement

of any action by any Debtor or (ii) support by any Debtor of the commencement of any action by any other party-in-interest with standing against any of the DIP Lenders or the Prepetition Lenders, or their respective agents and employees, to subordinate or avoid any liens made in connection with the Prepetition Credit Documents or the DIP Credit Documents or to avoid any obligations incurred in connection with the Prepetition Credit Documents or the DIP Documents; (e) any order shall be entered granting relief from the stay arising under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, set-off or any similar remedy with respect to any assets of the Debtors with an aggregate value of more than $250,000; (f) any Debtor shall assert in any pleading filed in any court that any material provision of the Interim Order or this Final Order is not valid and binding for any reason; (g) any Debtor files, withdraws or modifies a motion to approve the sale of all or substantially all of the Debtors' assets without the prior written consent of the Required DIP Lenders and the Required Prepetition Lenders; (h) any Debtor shall fail in any material respect to comply with any provisions in the DIP Credit Agreement or the Prepetition Credit Agreement governing the maintenance of the Debtors' insurance coverage on the DIP Collateral; (i) solely as it relates to the Debtors' use of the Cash Collateral of the Prepetition Lenders, the Debtors shall fail to file a plan reasonably acceptable to the Required Prepetition Lenders by September 27, 2019 and obtain confirmation of such plan within eighty (80) days after the filing of such plan, or such later dates as may be agreed to in writing by the Prepetition Agent at the direction of the Required Prepetition Lenders; or (j) the occurrence of an "Event of Default" under the DIP Credit Agreement.

28.   <u>Rights and Remedies Upon Occurrence of Termination Event</u>. Upon the occurrence and during the continuation of a Termination Event and notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to the expiration of the Remedies Notice Period (as defined below):

(i)      the DIP Agent, in its discretion or at the direction of the Required DIP Lenders, may declare: (a) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (b) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, (c) the termination of the DIP Facility and the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations, (d) that the Carve-Out has been triggered through the delivery of the Carve-Out Trigger Notice (as defined below), (e) the termination, reduction or restriction on the ability of the Debtors to use Cash Collateral, and (f) the imposition of the default rate of interest set forth in the DIP Credit Agreement; and

(ii)      the Prepetition Agent, in its discretion or at the direction of the Required Prepetition Lenders, may declare the termination, reduction or restriction on the ability of the Debtors to use Cash Collateral; *provided*, *however*, notwithstanding anything to the contrary herein, the Debtors' ability to use and access any proceeds that are funded into any reserve(s) or escrow(s) (collectively, the "<u>Sale Escrows</u>") established pursuant to any Sale Order or pursuant to the DIP Motion Concessions shall not be subject to a Termination Event but rather shall be subject to the governing escrow agreement or DIP Motion Concession for use consistent with the purpose for which the applicable Sale Escrow was created or as otherwise ordered by the Court; *provided*, *further*, *however*,

that any Cash Collateral remaining in such Sale Escrow(s) established pursuant to the Sale Order, upon termination of the underlying escrow agreement shall be subject to a Termination Event.

Either of the foregoing shall be referred to as a "Termination Declaration". The Termination Declaration shall be given by electronic mail or facsimile (or other electronic means) to counsel to the Debtors, counsel to the Creditors' Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). Any automatic stay otherwise applicable to the DIP Agent, DIP Lenders, and the Prepetition Secured Parties is hereby modified so that three (3) business days after the Termination Declaration Date (the "Remedies Notice Period"): (a) the DIP Agent or the Prepetition Agent, as applicable, shall be entitled to immediately exercise its rights and remedies in accordance with the DIP Documents, the Prepetition Credit Documents and/or this Final Order, as the case may be, and shall be permitted to satisfy the DIP Obligations, the DIP Superpriority Claim, the DIP Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claim, as applicable, in each case subject to the Carve-Out and, as applicable, the DIP Motion Concessions; and (b) may, unless otherwise provided in any separate agreement by and between the applicable landlord or licensor and the DIP Agent and/or the Prepetition Agent, as applicable (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any leased or licensed premises of the Debtors for the purpose of exercising any remedy with respect to any DIP Collateral or the Prepetition Collateral located thereon; *provided, however,* notwithstanding anything to the contrary in this Final Order, the DIP Documents or the Prepetition Credit Documents, the rights of the DIP Agent, the DIP Lenders and/or the Prepetition Secured Parties to enter onto the Debtors' leased premises shall be limited to (I) any

such rights agreed to in writing by the applicable landlord in favor of the DIP Agent, DIP Lenders, the Prepetition Secured Parties or their designees (including, without limitation, in the governing lease agreement itself or in any landlord waiver or similar agreement), (II) any rights that the DIP Agent, the DIP Lenders or the Prepetition Secured Parties have under applicable non-bankruptcy law, if any, or (III) such rights as may be granted by the Court on a separate motion with notice to the applicable landlords of the leased premises and an opportunity for such landlords to respond and be heard; *provided, further* that nothing herein shall require the Debtors, the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to assume any lease, license or other contract under Bankruptcy Code section 365(a) as a precondition to the rights afforded to the DIP Agent and the DIP Lenders in this paragraph 28. During the Remedies Notice Period (A) the Debtors may use Cash Collateral solely to pay payroll and other expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget, and (B) the Debtors and/or the Creditors' Committee shall be entitled to seek an emergency hearing, before the Court, within the Remedies Notice Period, for the sole purpose of contesting whether a Termination Event has occurred and/or is not continuing, and such other matters the Court may wish to consider. Unless the Court determines otherwise during the Remedies Notice Period, the automatic stay, as to the DIP Agent and the Prepetition Agent, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration of the Remedies Notice Period, the DIP Agent and the Prepetition Agent respectively shall be permitted to exercise all remedies set forth herein, in the DIP Documents and/or the Prepetition Credit Documents, and as otherwise available at law without further order of or application or motion to the Court; *provided*, that so long as there are any DIP Obligations outstanding, or the DIP Lenders' commitments to extend credit under the DIP Documents are in

37

effect, no Prepetition Secured Party shall be permitted to take any action in the Court or otherwise related to the enforcement of the Adequate Protection Liens without the prior written consent of the DIP Agent and the Required DIP Lenders.

29.     DIP Termination Date. Upon the earlier of (a) the expiration of the Remedies Notice Period or (b) the termination of the DIP Credit Agreement in accordance with the terms of this Final Order or the DIP Documents (whether by acceleration or otherwise) (the "DIP Termination Date"), the Debtors' authority to borrow and obtain other credit accommodations from the DIP Agent and the DIP Lenders pursuant to the terms of this Final Order and the DIP Documents shall terminate automatically without any application, motion or notice to, hearing before, or order of the Court (unless permitted by the DIP Agent and the requisite DIP Lenders in accordance with the DIP Documents), and (x) all DIP Obligations shall be immediately due and payable, (y) all commitments to extend credit under the DIP Facility will terminate, and (z) the DIP Agent, in its discretion or at the direction of the Required DIP Lenders, or the Prepetition Agent, in its discretion or at the direction of the Required Prepetition Lenders, may declare that the Debtors' authority to use Cash Collateral has ceased or is restricted. Upon the occurrence and during the continuance of a Termination Event, and during the pendency of any Remedies Notice Period, the DIP Lenders shall have no further obligation to provide financing under the DIP Credit Documents.

30.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Final Order. The DIP Agent, DIP Lenders and the Prepetition Secured Parties have acted in good faith in connection with the Interim Order and this Final Order and are entitled to rely upon the protections granted herein and by section 364(e) of the Bankruptcy Code. Based on the findings set forth in the Interim Order and this Final Order, and the record made during the

Interim Hearing and the Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of the Interim Order or this Final Order are hereafter reargued, reconsidered, reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties are entitled to the protections provided in section 364(e) of the Bankruptcy Code to the maximum extent set forth therein.

31.    <u>DIP and Other Expenses</u>. The Debtors are authorized and directed to pay all reasonable and documented expenses of the DIP Agent and the DIP Lenders (including the allocated costs (with no profit margin) of the DIP Lenders' internal counsel in connection with the Cases) incurred in connection with the DIP Facility and the preparation and negotiation of the DIP Documents, as provided in the DIP Documents, whether or not the transactions contemplated hereby are consummated, including without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses. Payment of all such fees and expenses shall not be subject to allowance by the Court, except to the extent of the Court's resolution of a timely Fee Objection (as defined below). Professionals for the DIP Agent or any DIP Lender shall not be required to comply with the U.S. Trustee fee guidelines; <u>provided</u>, <u>however</u>, that on or before receiving payment or reimbursement after the Petition Date for any professional fees incurred by the DIP Agent or any DIP Lender pursuant to the DIP Documents, the DIP Agent or the DIP Lender, as applicable, shall provide a summary fee statement along with a summary of tasks performed by all professionals during such period (such statement, a "<u>Fee Statement</u>") to the U.S. Trustee and counsel for the Creditors' Committee contemporaneously with the delivery thereof to the Debtors. To the extent that the U.S. Trustee

or Creditors' Committee has an objection to the reasonableness of the fees and expenses of any such professional, and cannot resolve the objection within ten (10) days of receipt of the Fee Statement, then the U.S. Trustee or Creditors' Committee shall file with this Court and serve on such professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such professionals' fees and expenses, and any failure by the U.S. Trustee or Creditors' Committee to file a Fee Objection within the ten (10) day period shall constitute a waiver of any right of such party to object to the applicable Fee Statement. The Fee Statement shall not be required to comply with any particular format, may be in summary form only, but at least include a general, brief description of the nature of the matters worked on, a list of the professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, shall include the year of law school graduation for each attorney; provided, that the U.S. Trustee and Creditors' Committee reserve the right to seek that copies of such invoices containing the detailed time entries of the applicable professional be provided to such party (and each applicable professional reserves all rights to object to such request and to redact privileged, confidential or sensitive information from any information provided to such parties). Any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a Fee Statement shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtors shall promptly pay (a) the undisputed fees, costs, and expenses reflected on any Fee Statement to which a Fee Objection has been timely filed, (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed and (c) all fees, costs and expenses subject to a Fee Objection that are ultimately allowed by a final, non-appealable order resolving such Fee Objection. All unpaid fees, costs, expenses, and

charges of the DIP Agent or a DIP Lender, as applicable, that have not been disallowed by this Court on the basis of a timely filed Fee Objection shall constitute DIP Obligations and shall be secured by the DIP Collateral. Any and all fees, commissions, costs, and expenses paid prior to the Petition Date by any Debtor to the DIP Agent or DIP Lenders in connection with or with respect to the DIP Facility or DIP Documents are hereby approved in full and nonrefundable and shall not otherwise be subject to any challenge.

32.    Indemnification. The Debtors shall indemnify and hold harmless the DIP Agent and the DIP Lenders in accordance with the terms and conditions of the DIP Credit Agreement.

33.    Proofs of Claim. The Prepetition Secured Parties shall not be required to file proofs of claim in any of the Cases or Successor Cases for any of the Prepetition Obligations. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases to the contrary, the Prepetition Agent on behalf of itself and the Prepetition Secured Parties is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in each of the Cases or Successor Cases for any of the Prepetition Obligations. Any proof of claim filed by the Prepetition Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties. Any order entered by the Court in relation to the establishment of a bar date in any of the Cases or Successor Cases shall not apply to the DIP Agent, DIP Lenders or the Prepetition Secured Parties.

34.    Rights of Access and Information. Without limiting the rights of access and information afforded the DIP Agent and DIP Lenders under the DIP Documents or paragraph 22 of this Final Order, the Debtors shall be, and hereby are, required to afford, in accordance with

the DIP Documents and Prepetition Credit Documents, as applicable, representatives, agents and/or employees of the DIP Agent and the Prepetition Agent reasonable access to the Debtors' premises, including the ability to visit and inspect any of the Debtors' respective properties and their books and records, including the ability to examine and make abstracts or copies from any of their respective books and records, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and the Prepetition Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any of the Debtors.

35. _Consent to Priming and Adequate Protection_. The Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties, consents to the Adequate Protection Liens and Adequate Protection Superpriority Claim and the priming provided for herein; _provided, however,_ that the consent of the Prepetition Agent, on behalf of itself and the other Prepetition Secured Parties, to the priming of the Prepetition Liens and the use of Cash Collateral is expressly conditioned upon the entry of the Interim Order and this Final Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Loan Documents; and _provided, further,_ that such consent shall be of no force and effect in the event this Final Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition Agent and the Required Prepetition Lenders) or the DIP Loan Documents and DIP Facility as set forth herein are not approved on a final basis.

42

36.    <u>Right to Seek Additional Adequate Protection</u>. The Court finds that the adequate protection provided herein is reasonable to protect the interests of the Prepetition Secured Parties. However, the Prepetition Agent, on behalf of the Prepetition Secured Parties, may request Court approval for additional or alternative adequate protection (subject to any DIP Motion Concessions), without prejudice to any objection of the Debtors or any other party in interest to the grant of any additional or alternative adequate protection; <u>*provided*</u> that any additional or alternative adequate protection shall at all times be subordinate and junior to the claims and liens of the DIP Agent and DIP Lenders granted under the Interim Order, this Final Order and the DIP Documents. The consent of the Prepetition Secured Parties to the priming of the Prepetition Liens by the DIP Liens, the Adequate Protection Liens and the Carve-Out and the Debtors' use of Cash Collateral on the terms set forth herein does not constitute, and shall not be construed as constituting, an acknowledgment or stipulation by the Prepetition Secured Parties that their respective interests in the Prepetition Collateral are adequately protected pursuant to this Final Order or otherwise.

37.    <u>Carve-Out</u>.

(iii)    Subject to the terms and conditions set forth herein, the DIP Liens, DIP Superpriority Claim, Prepetition Liens, Adequate Protection Liens, and Adequate Protection Superpriority Claim shall be subject to the payment of the Carve-Out. As used in this Final Order, the "<u>Carve-Out</u>" means the following expenses, subject, in each case, to application of any retainers that may be held by the applicable professionals as well as proceeds from unencumbered assets then currently available: (a) the payment of unpaid fees and disbursements incurred after delivery of a Carve-Out Trigger Notice (as defined below) in connection with the Cases by professionals employed by the Debtors in the aggregate amount not in excess of

43

$200,000 and by professionals employed by the Creditors' Committee and any other statutory committees in the aggregate amount not in excess of $50,000, in each case such professionals (the "Case Professionals") having been employed pursuant to section 327 and/or 1103 of the Bankruptcy Code and to the extent such fees and disbursements are allowed by the Court at any time, regardless of whether allowed by interim order, procedural order or otherwise (collectively, the "Wind-Down Carve-Out Amounts"); (b) all accrued and unpaid professional fees and disbursements incurred by Case Professionals, and all reasonable, documented and out-of-pocket expenses incurred by members of the Creditors' Committee in performing their duties as such, on or prior to the delivery of a Carve-Out Trigger Notice to the extent allowed by the Court at any time, regardless of whether allowed by interim order, procedural order or otherwise (collectively, the "Pre-Trigger Amount Professional Fees"); (c) all fees to be paid to the clerk of the Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930 and 31 U.S.C. § 3717 plus interest at the statutory rate; (d) without duplication, amounts owing to Houlihan Lokey Capital, Inc. ("Houlihan") pursuant to that certain Consent and Acknowledgement, among Houlihan, Holdings, the Borrowers, and the Prepetition Agent and effective as of January 24, 2019; (e) all reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by this Court in an amount not to exceed $50,000; and (f) $750,000.00 (the "Carve-Out Funded Healthcare Costs") in respect of healthcare related costs and expenses of the Debtors' employees that have accrued from and after the Petition Date and that are payable by the Debtors pursuant to the Debtors' employees' existing health insurance policies (the "Administrative Healthcare Claims").  As used in this Final Order, the term "Carve-Out Trigger Notice" means the DIP Agent's delivery (and, following the Facility Termination Date (as defined in the DIP Credit Agreement), the Prepetition Agent's delivery) of a written

44

notice to the Debtors, the U.S. Trustee and counsel to the Creditors' Committee following the occurrence and during the continuation of a Termination Event, expressly stating that the Wind-Down Carve-Out Amounts are invoked. Upon the Debtors' receipt of a Carve-Out Trigger Notice, the Wind-Down Carve-Out Amounts and the Pre-Trigger Amount Professional Fees (collectively, the "Carved-Out Professional Fees") shall immediately be funded into an escrow account (the "Professional Fee Escrow"), and the Carve-Out Funded Healthcare Costs shall immediately be funded into an escrow account (the "Healthcare Escrow"), in each case with an escrow agent selected by the Debtors and approved by the DIP Agent and the Prepetition Agent (which such approval shall not be unreasonably withheld, conditioned or delayed) pursuant to one or more escrow agreements reasonably acceptable to the DIP Agent and the Prepetition Agent, from any and all available Cash Collateral or cash held by the Debtors and, if the then-available cash and Cash Collateral is not sufficient to cover the Carved-Out Professional Fees and the Carve-Out Funded Healthcare Costs, the first proceeds from the sale of the DIP Collateral shall be funded into the Professional Fee Escrow until the Carved-Out Professional Fees are fully funded therein and then into the Healthcare Escrow until the Carve-Out Funded Healthcare Costs are fully funded therein; *provided*, that the funding of the Pre-Trigger Amount Professional Fees into the Professional Fee Escrow shall not occur unless the Debtors provide, on or before the fifteenth (15th) calendar day after the DIP Agent's or the Prepetition Agent's delivery of the Carve-Out Trigger Notice, the DIP Agent and the Prepetition Agent with detailed time and expense records in the form required for fee applications pursuant to Section 330 of the Bankruptcy Code, Bankruptcy Rule 2016 and applicable Local Rules confirming the amount thereof. The Professional Fee Escrow shall be subject to a first-priority lien securing the Carved-Out Professional Fees, a second priority lien securing the Carve-Out Funded Healthcare Costs, a

RLF1 21998212v.1

third priority lien securing the DIP Obligations and a fourth priority lien securing the Adequate Protection Superpriority Claim.  The Healthcare Escrow shall be subject to a first-priority lien securing the Carve-Out Funded Healthcare Costs, a second priority lien securing the Carved-Out Professional Fees, a third priority lien securing the DIP Obligations and a fourth priority lien securing the Adequate Protection Superprioority Claim.  Notwithstanding anything to the contrary herein, upon the delivery of a Carve-Out Trigger Notice, the DIP Agent (and, following the Facility Termination Date (as defined in the DIP Credit Agreement), the Prepetition Agent) shall be required to transfer cash that it sweeps, receives or forecloses upon at any time from and after the delivery of a Carve-Out Trigger Notice into the Professional Fee Escrow and the Healthcare Escrow until such time as the Carved-Out Professional Fees have been fully funded into the Professional Fee Escrow and the Carve-Out Funded Healthcare Costs have been fully funded into the Healthcare Escrow. Upon the closing of the first Sale Transaction (as defined below), the Carved-Out Professional Fees shall be funded into the Professional Fee Escrow, the Carve-Out Funded Healthcare Costs shall be funded into the Healthcare Escrow and all such other Carve-Out amounts identified in subsections (i)(c) – (g) of this paragraph shall be funded into an escrow account (or accounts) (such escrow(s), together with the Professional Fee Escrow, the "Carve-Out Escrow"), with an escrow agent selected by the Debtors and approved by the DIP Agent and the Prepetition Agent (which such approval shall not be unreasonably withheld, conditioned or delayed) pursuant to an escrow agreement reasonably acceptable to the DIP Agent and the Prepetition Agent, from the proceeds of such Sale Transaction; *provided*, that prior to the funding of the Carved-Out Professional Fees and such other Carve-Out amounts identified in subsections (i)(c) – (g) of this paragraph into the Carve-Out Escrow, the Debtors shall provide the DIP Agent and the Prepetition Agent with such information and supporting

documents as the DIP Agent and the Prepetition Agent may reasonably request to confirm the amount thereof. The Carve-Out Escrow shall be subject to a first-priority lien securing the Carve-Out amounts, a second priority lien securing the DIP Obligations and a third priority lien securing the Adequate Protection Superpriority Claim. For the avoidance of doubt, (i) upon delivery of a Carve-Out Trigger Notice, in no instance shall any DIP Obligations or Prepetition Secured Obligations be repaid until the Professional Fee Escrow and the Healthcare Escrow are fully funded or as further set forth in other order(s) of the Court, and (ii) upon the occurrence of any Sale Transaction, in no instance shall any DIP Obligations or Prepetition Secured Obligations be repaid out of any Sale Transaction proceeds until the Carve-Out Escrow and the Healthcare Escrow are fully funded or as further set forth in other order(s) of this Court. So long as no Carve-Out Trigger Notice has been delivered, the Debtors shall be permitted to pay compensation and reimbursement of expenses to Case Professionals allowed and payable under sections 330 and 331 of the Bankruptcy Code, but solely to the extent the same are incurred in compliance with the Approved Budget and as allowed at any time by the Court, regardless of whether allowed by interim order, procedural order or otherwise; *provided*, that, for the avoidance of doubt, the payment of such compensation and reimbursement of such expenses prior to the delivery of a Carve-Out Trigger Notice shall not reduce the applicable Wind-Down Carve-Out Amount. No portion of the Carve-Out may be used in contravention of the restrictions or the limitations on the use of the Carve-Out set forth in the Interim Order or this Final Order.

(iv)     *No Direct Obligation to Pay Professional Fees.* Neither the DIP Agent, the DIP Lenders nor the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code.

Nothing in this Final Order or otherwise shall be construed to obligate the DIP Agent, DIP Lenders or Prepetition Secured Parties in any way to pay compensation to or to reimburse expenses of any Case Professionals, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(v)     *Payment of Carve-Out After Carve-Out Trigger Notice.* Any payment or reimbursement made on or after the date of the delivery of the Carve-Out Trigger Notice in respect of any Carved-Out Professional Fees accrued or incurred after delivery of the Carve-Out Trigger Notice shall permanently reduce the Wind-Down Carve-Out Amount on a dollar-for-dollar basis.

38.     <u>Limitations on Use of DIP Proceeds, Cash Collateral and Carve-Out</u>. No loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any retainer held by any professionals for the below-referenced parties), Prepetition Collateral, or any portion of the Carve-Out may be used by any Debtor, the Creditors' Committee or trustee or other estate representative appointed in the Cases or any Successor Cases, or any other person, party, or entity (including any of the Debtors' professionals, the Creditors' Committee's professionals or the individual members of the Creditors' Committee) to: (i) investigate (except as set forth below) or prosecute any challenge (including any litigation or other action) in connection with the value of the Prepetition Collateral or the DIP Collateral (or to pay any professional fees and disbursements incurred in connection therewith) at any time; (ii) (a) request or seek authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Agent and DIP Lenders, (b) request or seek any modification to the Interim Order or this Final Order not approved by the DIP Agent and, to the extent such modification would affect the rights of any of the Prepetition

48

Secured Parties, the Prepetition Agent or (c) pay any professional fees and disbursements incurred in connection with any of the foregoing; (iii) investigate (except as set forth below), assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination, or similar relief against, or adverse to the interests of, in any capacity, any or all of the DIP Agent, DIP Lenders or Prepetition Secured Parties, their respective affiliates, assigns or successors and the respective officers, directors, employees, agents, attorneys, representatives and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action, or other matter (including formal or informal discovery proceedings in anticipation thereof), including, without limitation, (a) any challenges and any avoidance actions or other actions arising under chapter 5 of the Bankruptcy Code, (b) any action with respect to the validity, enforceability, priority, extent or amount of the DIP Obligations and/or the Prepetition Obligations, or the validity, extent, and/or priority of the DIP Liens, the Prepetition Liens, or the Adequate Protection Liens, (c) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or in part, (I) the DIP Liens, the Prepetition Liens, the Adequate Protection Liens or any other adequate protection provided to the Prepetition Secured Parties pursuant to the terms of the Interim Order or this Final Order or (II) any of the DIP Obligations or the Prepetition Obligations, (d) subject to the right of the Debtors to seek an emergency hearing to contest in good faith the occurrence or continuance of any Termination Event as permitted in paragraph 28, any action seeking, or having the effect of, preventing, hindering, or otherwise delaying (I) the DIP Agent's assertion, enforcement, or realization on the Cash Collateral or the DIP Collateral in accordance with the DIP Documents, the Interim Order or this Final Order, as applicable, or (II) the Prepetition Agent's assertion, enforcement, or

realization on the Cash Collateral, the Adequate Protection Liens or the Prepetition Collateral in accordance with the Prepetition Credit Documents, the Interim Order or this Final Order, as applicable, (e) any action seeking to modify any of the rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP Agent, DIP Lenders and Prepetition Secured Parties hereunder, under the Interim Order or under the DIP Loan Documents or the Prepetition Credit Documents, as applicable, or any payments made thereunder or in respect thereof, (f) pay any fees or similar amounts to any person (other than the Prepetition Secured Parties) who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Agent and Prepetition Agent, or (g) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral or Prepetition Collateral, unless otherwise permitted hereby or by the DIP Documents, without the prior written consent of the DIP Agent, at the direction of the Required DIP Lenders, and the Prepetition Agent, at the direction of the Required Prepetition Lenders. Notwithstanding the foregoing, up to $50,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral and proceeds of the DIP Facility may be used by the Creditors' Committee to investigate (but not to draft, file or prosecute claims or challenges relating to) the claims and/or liens of the Prepetition Secured Parties under the Prepetition Credit Documents (but not the claims and/or liens of the DIP Agent and DIP Lenders) so long as such investigation occurred prior to the entry of this Final Order.

39.   <u>Payment of Compensation</u>. Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties to object to the allowance and payment of such fees and expenses.

50

40.     <u>Termination of Challenge Period</u>. The findings set forth in this Final Order and the Debtors' Stipulations shall be binding upon the Debtors, the Creditors' Committee and all other parties in interest in these Cases in all circumstances upon the conclusion of the Final Hearing on September 11, 2019.

41.     <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

42.     <u>Parties Including Trustees; Bankruptcy Court Proceedings</u>. The DIP Liens, DIP Superpriority Claim, Adequate Protection Liens, Adequate Protection Superpriority Claim and all other rights and privileges created by or pursuant to the Interim Order, this Final Order or the DIP Documents shall be binding upon each of the Debtors and their estates, the Creditors' Committee and any trustee, other estate representative or any successor in interest of the Debtors in the Cases or any Successor Cases. The Interim Order, this Final Order and the DIP Documents shall be binding upon, and inure to the benefit of, the successors of the DIP Agent, any DIP Lender and their respective assigns, transferees and endorsees. The DIP Liens and Adequate Protection Liens shall be and remain valid and perfected in the event of the substantive consolidation or conversion of the Cases or any Successor Case to a case under chapter 7 of the Bankruptcy Code or in the event of dismissal of the Cases or the release of any DIP Collateral from the jurisdiction of the Court for any reason, without the necessity that the DIP Agent or the Prepetition Agent file financing statements or otherwise perfect its liens under applicable law. No Debtor may assign, transfer, hypothecate or otherwise convey its rights, benefits, obligations or duties hereunder or under any of the DIP Documents without the prior express written consent of the DIP Agent and the DIP Lenders. Any such purported assignment, transfer, hypothecation

or other conveyance by any Debtor without the prior express written consent of the DIP Agent and the DIP Lenders shall be void.

43.    <u>Section 506(c) Claims</u>. No costs or expenses of administration which have been or may be incurred in the Cases or any Successor Case at any time shall be charged against the DIP Agent, DIP Lenders or Prepetition Secured Parties, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Agent, DIP Lenders or Prepetition Secured Parties, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

44.    <u>Lenders Not Responsible Persons</u>.    In (a) making the decision to make the loans under the DIP Facility and consent to the use of Cash Collateral, as applicable, (b) administering the DIP Facility and the extensions of credit made thereunder, (c) extending other financial accommodations to the Debtors under the DIP Documents, and (d) making the decision to collect the indebtedness and obligations of the Debtors, neither the DIP Agent nor any DIP Lender nor any Prepetition Secured Party shall be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent or other rights afforded them under the DIP Documents, the Interim Order or this Final Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, *et seq.*, and the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute) or any federal or state labor law or statute.

45.    <u>Limits on Liability.</u>    Nothing in the Interim Order, this Final Order or in any of the DIP Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender, the Prepetition Agent or any other Prepetition Secured Party of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts or the cessation of their business operations or any portion thereof or any sale of all or a substantial portion of their assets.

46.    <u>Sales</u>. It shall be a Termination Event if any Debtor seeks or supports, directly or indirectly, the entry of any order that provides for either the sale of the stock of the Debtors or the sale of all or substantially all of the assets of any Debtor under section 363 of the Bankruptcy Code to any party unless (a) the Required DIP Lenders and the Required Prepetition Lenders consent and (b) the order approving such sale provides that the sale proceeds shall be distributed in accordance with the DIP Documents, the Prepetition Credit Documents, this Final Order and the Sale Order at the closing of such sale. It shall be a Termination Event if the Debtors fail to adhere to any of the following milestones with respect to the sale of all or substantially all of their assets (collectively, the "<u>Sale Milestones</u>"):

(i)    The Debtors shall file a motion in form and content reasonably acceptable to the DIP Agent and the Prepetition Agent to sell or all or substantially all of their respective assets pursuant to section 363 of the Bankruptcy Code (the "<u>Sale Motion</u>") within one (1) business day of the Petition Date, identifying the stalking horse bidder(s) (each a "<u>Stalking Horse Bidder</u>"), if any, for such sale(s) and embodying the material

terms of the proposed stalking horse bid and to approve bidding procedures and an auction process in connection therewith;

(ii)    The Debtors shall obtain entry of a final order approving bidding procedures and auction process set forth in the Sale Motion within twenty-five (25) days of the Petition Date;

(iii)    The Debtors shall obtain entry of a final order approving the proposed sale(s) as set forth in the Sale Motion (the "Sale Order"), in form and content reasonably acceptable to the DIP Agent and the Prepetition Agent (whether to any Stalking Horse Bidder or a separate third party bidder, each such proposed sale, a "Sale Transaction") within forty-five (45) days of the Petition Date or such later date as may be agreed to by the DIP Agent and the Prepetition Agent; notwithstanding the foregoing, any failure by the Debtors to obtain entry of a Sale Order relating to the sale of "Marie Callender's" branded family dining restaurants and business unit by such date shall not be deemed a failure to meet these Sale Milestones; and

(iv)    The Debtors shall consummate each Sale Transaction in accordance with the terms of the Sale Order within seventy-five (75) days of the Petition Date or such later date as may be agreed to by the DIP Agent and the Prepetition Agent.

In addition to the reporting required under the Prepetition Credit Agreement and the DIP Credit Agreement, the Debtors shall provide or cause to be provided to the DIP Agent and the Prepetition Agent a weekly report from Houlihan and the management team of the Debtors (with any written reports being in form and substance satisfactory to DIP Agent and the Prepetition Agent), which report will address such items as are reasonably requested by the DIP Agent and the Prepetition Agent, including the status of the marketing and sale process of the Debtors. Any

non-legally privileged written materials prepared or produced by Houlihan for any of the Debtors will be shared with the DIP Agent and the Prepetition Agent may be shared respectively with the DIP Lenders and the Prepetition Lenders. The Debtors shall also cause its management team and Houlihan to be made available to provide periodic telephonic updates of such reports to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Lenders from time to time (but not less than weekly), as reasonably requested by the DIP Agent.

47.     <u>Concessions for Support of Creditors' Committee</u>.  To resolve objections and concerns of the Creditors' Committee with respect to, among other things, the DIP Motion and the relief sought thereby, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties (collectively with the DIP Agent and the DIP Lenders, the "<u>Senior Secured Parties</u>"), the Creditors' Committee and the Debtors have agreed to the following (the "<u>DIP Motion Concessions</u>") among other matters:

(a)     *Disposition of Net Sale Proceeds*.  The proceeds of all Sale Transactions shall be distributed in accordance with the applicable Sale Order; <u>provided</u>, notwithstanding anything in any Sale Order to the contrary, the Debtors shall establish the following reserves before any amounts are distributed to the Prepetition Secured Parties in respect of their prepetition claims under the Sales Orders: (i) to be held for the benefit of general unsecured creditors, a reserve equal to the sum of the GUC Fixed Recovery Fund and the GUC Percentage Recovery Fund (each as defined below) (collectively, the "<u>GUC Reserve</u>"); <u>provided</u>, notwithstanding the foregoing, in no event shall the portion of the GUC Reserve composed of the GUC Percentage Recovery Fund be funded until such time as forty percent (40%) of the gross sale proceeds of all Sale Transactions have been reserved for the benefit of the Prepetition Secured Parties; and

55

(ii) to be held for the benefit of the holders of allowed administrative claims and allowed priority claims, including allowed stub rent, Administrative Healthcare Claims, and allowed claims arising under Bankruptcy Code section 503(b)(9), a reserve in an amount estimated by the Debtors, in good faith consultation with the Creditors' Committee and subject to the consent of the Senior Secured Parties (which consent may not be unreasonably withheld), to be the full amount of such allowed administrative claims and allowed priority claims (the "<u>Administrative and Priority Claim Reserve</u>" and, collectively with the GUC Reserve, the "<u>Creditor Reserves</u>").  The Debtors shall hold the Creditor Reserves in trust for the indicated beneficiaries pending confirmation of a plan in accordance with applicable law or other direction by the Court for application of such funds in accordance with applicable law.  For the avoidance of doubt, nothing in this Final Order represents final approval of any distribution to holders of general unsecured claims.

(b) *Supported Plan Terms*.  The Senior Secured Parties and the Creditors' Committee hereby acknowledge their consent, support and agreement to a plan of liquidation or reorganization containing the following terms (the "<u>Supported Plan Terms</u>"):

> (i) holders of general unsecured claims shall receive their pro rata share of the sum of (x) $800,000 (the "<u>GUC Fixed Recovery Fund</u>"), (y) the net recoveries, if any, attributable to the assets subject to the Remaining Commercial Tort Claim Exclusion (to the extent such commercial tort claims are not sold or released in connection with a Sale Transaction) and the Avoidance Action Claim Exclusion (the "<u>Excluded Recoveries</u>") and (z) the sum of the following amounts (the "<u>GUC Percentage Recovery Fund</u>"): (I) five percent (5%) of the first $24,500,000 in gross sale proceeds received by the Debtors in connection with all Sale Transactions above the aggregate starting stalking horse bids in the Sale Transactions (approximately $50,000,000); <u>plus</u> (II) ten percent

(10%) of each dollar in gross sale proceeds received by the Debtors above the sum of the aggregate starting stalking horse bids in the Sale Transactions plus $24,500,000; <u>less</u> (III) such amounts that are necessary to ensure that the Prepetition Secured Parties receive no less than forty percent (40%) of the gross sale proceeds of all Sale Transactions in respect of their Prepetition Secured Party Secured Claim (as defined below);

(ii)     under any plan, the Prepetition Secured Parties shall have an allowed secured claim in respect of the Prepetition Obligations (the "<u>Prepetition Secured Party Secured Claim</u>") in an amount not less than the net cash proceeds of the Sale Transactions <u>less</u> the sum of the amount necessary to fund the Carve-Out Escrows, make payment in full of the DIP Obligations, fund the Administrative and Priority Claim Fund, fund the GUC Fixed Recovery Fund and fund the GUC Percentage Recovery Fund; <u>provided</u>, in no event shall the holders of the Prepetition Secured Party Secured Claim receive less than forty percent (40%) of the gross proceeds of all Sale Transactions in respect of the Prepetition Secured Party Secured Claim; and

(iii)    any deficiency claim held on account of the Prepetition Secured Parties' claims in respect of the Prepetition Obligations shall be subordinated to the other allowed general unsecured claims until such time as the general unsecured creditors (other than the Prepetition Secured Parties) receive a percentage of cash recovery in respect of their allowed general unsecured claims in an amount equal to the percentage of cash recovery received by the Prepetition Secured Parties in respect of the full amount of the outstanding Prepetition Obligations as of the Petition Date. Upon the occurrence of such time, the Prepetition Secured Parties shall, in respect of their deficiency claims, share ratably with the other general unsecured creditors in all further allowed general unsecured claim distributions.

For the avoidance of doubt, the funding of the Administrative and Priority Claim Reserve, the GUC Fixed Recovery Fund, the GUC Percentage Recovery Fund (as applicable) and the Sale Escrows shall be without duplication.

(c)     *Limitation on Adequate Protection*.   Notwithstanding anything to the contrary in the Interim Order or this Final Order, any decrease in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral (including the Cash Collateral) attributable to post-petition expenditures of cash paid pursuant to the terms of

57

the Approved Budget or this Final Order shall be deemed not to constitute diminution in value entitling the Prepetition Secured Parties to adequate protection therefor for purposes hereof (the "Diminution Exclusion").

(d)     *Plan Exit*.  As set forth above and in paragraph 57 below, the Creditors' Committee agrees to support a plan incorporating the terms of the DIP Motion Concessions and such other terms agreed by the Creditors' Committee pursuant to good faith negotiations in connection therewith.

48.     No Marshaling/Applications of Proceeds. The DIP Agent, DIP Lenders and Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to this Final Order and the DIP Documents notwithstanding any other agreement or provision to the contrary; provided, however, the DIP Agent and DIP Lenders agree to look to the proceeds and property of Avoidance Actions only after all other available DIP Collateral has been monetized and applied to the DIP Obligations.

49.     Section 552(b). The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552 of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties, with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

50.     No Discharge; Survival of Claims. The DIP Obligations shall not be discharged by the entry of an order confirming a plan of reorganization, compromise or arrangement in any of the Cases (notwithstanding the provisions of section 1141(d)(4) of the Bankruptcy Code) or any Successor Case or any order converting any of the Cases to a case under chapter 7 of the

58

Bankruptcy Code, or dismissing any of the Cases, or withdrawing the reference in any of the Cases or any Successor Case, or terminating the joint administration of the Cases or any Successor Cases, or by any other act or omission. The DIP Superpriority Claim and the DIP Liens granted to the DIP Agent and the DIP Lenders, as applicable, and the Adequate Protection Liens and the Adequate Protection Superpriority Claim granted to the Prepetition Secured Parties pursuant to the Interim Order and this Final Order shall not be affected in any manner by the entry of an order confirming a plan of reorganization or liquidation in the Cases or any Successor Case.

51.    <u>Waiver of any Priming Rights</u>. Except with the prior written consent of the DIP Agent and the Prepetition Agent, as applicable, it shall be a Termination Event if any Debtor seeks or supports, directly or indirectly, the entry of any order that provides for the grant of any lien of equal or greater priority than the liens securing the DIP Obligations and the Prepetition Obligations, or that approves of a claim of equal or greater priority than the DIP Obligations and the Prepetition Obligations, except as expressly provided in this Final Order.

52.    <u>Joint and Several Liability</u>. Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

53.    <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the DIP Agent's, DIP Lenders' and Prepetition Secured Parties' respective rights: (a) to seek any other or supplemental relief in respect of the Debtors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of

the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (b) any other rights, claims or privileges (whether legal, equitable or otherwise).

54.     <u>No Waiver by Failure to Seek Relief</u>. The failure of the DIP Agent, DIP Lenders or Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under the Interim Order, this Final Order, the DIP Documents, the Prepetition Credit Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, DIP Lenders, Prepetition Secured Parties, Creditors' Committee or any party in interest.

55.     <u>Binding Effect of Interim Order</u>. Immediately upon this Court's entry of this Final Order, the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Secured Parties, all other creditors of any of the Debtors, any Creditors' Committee (or any other court appointed committee) appointed in the Cases, and all other parties-in-interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

56.     <u>Debtors' Waivers With Respect to Modification of Final Order</u>. It shall be a Termination Event if any Debtor seeks or supports, directly or indirectly: (a) without the prior written consent of the DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition Agent (at the direction of the Required Prepetition Lenders), as applicable, (i) the entry of any order reconsidering, modifying, staying, vacating or amending the Interim Order or

60

this Final Order, or (ii) the entry of any order granting a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim or Adequate Protection Superpriority Claim, other than the Carve-Out; (b) without the prior written consent of the DIP Agent (at the direction of the Required DIP Lenders) and the Prepetition Agent (at the direction of the Required Prepetition Lenders under the Prepetition Credit Agreement), the entry of any order allowing use of Cash Collateral (other than as permitted during the Remedies Notice Period) derived from DIP Collateral or Prepetition Collateral; (c) without the prior written consent of the DIP Agent (at the direction of the Required DIP Lenders under the DIP Credit Agreement), the granting of any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided in the DIP Documents; or (d) without the prior written consent of the Prepetition Agent (at the direction of the Required Prepetition Lenders), the granting of any lien on any of the DIP Collateral with priority equal or superior to the Prepetition Liens or Adequate Protection Liens. The prior written consent of the DIP Agent or the Prepetition Agent shall not be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agent, as applicable.

57.    Exit.  The Debtors, the Senior Secured Parties and the Creditors' Committee have agreed, and are directed to, negotiate in good faith the terms of a plan of liquidation.  Such a plan shall (a) include provision for a reasonable wind-down budget, (b) include the waiver of (and agreement not to convey) Avoidance Actions against landlords and trade creditors to the extent such Avoidance Actions have not been purchased pursuant to any Sale Transaction, (c) honor the

Diminution Exclusion, (d) embody the Supported Plan Terms, and (e) be otherwise consistent with the terms of this Final Order and contain customary estate releases in favor of the Debtors, their current and former officers and directors and the Senior Secured Parties.  If negotiation in good faith of such a plan cannot be achieved or the plan is not confirmed, such parties shall endeavor in good faith to negotiate an alternative exit in conformance with applicable law that is as consistent as possible with the goals indicated herein.

58.     <u>Final Order Controls</u>. In the event of any inconsistency between the terms and conditions of the DIP Documents and of this Final Order, the provisions of this Final Order shall govern and control.

59.     <u>Survival</u>. The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization or liquidation in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders and Prepetition Secured Parties granted pursuant to the Interim Order, this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until the Consummation Date. The terms and provisions concerning the indemnification of the DIP Agent and DIP Lenders, and any other terms or provisions contained in the DIP Facility which survive the repayment and discharge of the DIP Facility, shall continue in the Cases, in any Successor

Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or repayment in full and discharge of the DIP Obligations.

60.     *Nunc Pro Tunc* Effect of this Final Order. This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon execution thereof.

61.     Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

**Dated: September 11th, 2019**
**Wilmington, Delaware**

KEVIN GROSS
**UNITED STATES BANKRUPTCY JUDGE**