## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____ | ) |  |
| In re: | ) | Chapter 11 |
|  | ) |  |
| Perkins & Marie Callender's, LLC, *et al.*,[1] | ) | Case No. 19-11743 (KG) |
|  | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
| _____ | ) | **Re: Docket No. 33 & 118** |

### ORDER (A) APPROVING AND AUTHORIZING SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' PERKINS BUSINESS ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES RELATED THERETO, AND (C) GRANTING RELATED RELIEF

Upon the *Debtors' Motion for Entry of an Order (A) Approving and Authorizing Sale of Substantially All of the Debtors' Assets, Free and Clear of All Liens, Claims, Encumbrances and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* (the "**Motion**") [Docket No. 33][2] of the above-captioned debtors (collectively, the "**Debtors**"), and the *Supplement* related thereto (the "**Supplement**") [Docket No. 118], for entry of an order (this "**Order**"), pursuant to Bankruptcy Code sections 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, 6006, 9006, 9007 and 9014, and Local Rules 2002-1 and 6004-1, (i) authorizing the sale of the Perkins Business (the "**Sale**") free and clear of liens, claims, encumbrances, and other interests; (ii)

---

[1]    The Debtors, together with the last four digits of each Debtor's federal tax identification number, are:  Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions, LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225).  The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion, the Supplement, or the Asset Purchase Agreement (as defined herein), as applicable.

approving the assumption and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto; and (iii) granting related relief; and an auction having been commenced on September 9, 2019 (the "**Auction**") with respect to the Sale of the Perkins Business in accordance with the Bid Procedures following the receipt of more than one Qualified Bid for such assets; and Huddle House, Inc. (together with any Buyer Designee, the "**Buyer**") having been selected as the Successful Bidder at the Auction; and the Court having reviewed and considered the Motion and the Supplement; and the Court having held a hearing with respect to the Sale on September [17], 2019 (the "**Sale Hearing**"); and upon all of the proceedings had before the Court; and all parties in interest having been heard or having had the opportunity to be heard regarding the Motion and the relief requested in this Order; and due and sufficient notice of the Auction, the Sale Hearing and the relief sought herein having been given under the particular circumstances and in accordance with the Bidding Procedures Order; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion with respect to the Sale of the Perkins Business to the Buyer is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and upon the record of the Sale Hearing and these Chapter 11 Cases, and after due deliberation and sufficient cause appearing therefore and no further notice being required,

> **IT IS FOUND, CONCLUDED AND DETERMINED THAT:**

**I.      Jurisdiction, Final Order and Statutory Predicates**

A.      This Court has jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of the Debtors' Chapter 11 Cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2

B.       This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order and the prompt consummation of the transactions and transfers contemplated under the Asset Purchase Agreement, and expressly directs entry of judgment as set forth herein.

C.       The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105(a), 363(b), (f), (m), and 365 and Bankruptcy Rules 2002(a)(2), 6004(a)-(c), (e), (f), and (h), 6006(a), (c), and (d), 9007 and 9014.

D.       The findings of fact and conclusions of law set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

E.       To the extent any of the following findings of fact constitute conclusions of law, they are hereby adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are hereby adopted as such.

F.       Good and sufficient notice of the Motion and the relief requested therein have been afforded to all known interested persons and entities, including, but not limited to the following parties (the "**Notice Parties**"): (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the agent under the Debtors' Prepetition Bank of America Credit Agreement; (iv) counsel to the agent under the DIP Credit Agreement; (v) counsel to the Stalking Horse Purchaser; (vi) the Interested Parties identified by Houlihan Lokey ("**Houlihan Lokey**") and any other entity known by Houlihan Lokey to have

3

expressed an interest in a sale transaction; (vii) all counterparties to any of the Debtors' contracts or leases; (viii) all known holders of known claims against and equity interests in the Debtors; (ix) all affected federal, state and local governmental regulatory and taxing authorities, including the Internal Revenue Service; (x) all parties that have filed and not withdrawn requests for notices pursuant to Bankruptcy Rule 2002; and (xi) to the extent not already included above, all parties in interest listed on the Debtors' creditor matrix.

G.      In accordance with the provisions of the *Order (A) Approving Bidding Procedures for Sale of Substantially All of the Debtors' Assets, (B) Approving Stalking Horse Bid Protections, (C) Scheduling Auction for, and Hearing to Approve, Sale of Substantially All of the Debtors' Assets, (D) Approving Form and Manner of Notices and Sale, Auction and Sale Hearing, (E) Approving Assumption and Assignment Procedures and (F) Granting Related Relief* [Docket No. 141] (the "**Bidding Procedures Order**"), the Debtors have served the Potential Assumption and Assignment Notice, the Amended Potential Assumption and Assignment Notice, and any Supplemental Assumption and Assignment Notices (collectively, the "**Assumption and Assignment Notices**") upon the relevant counterparties informing such counterparties:  (i) that the Debtors seek to assume and assign to the Buyer all or some of the Assigned Contracts (as defined in the Asset Purchase Agreement), effective as of the Closing Date (as defined in the Asset Purchase Agreement); and (ii) of the proposed Cure Costs, if any, for all such Assigned Contracts.  Pursuant to Bankruptcy Rule 6006(c), the Court finds that the service of such Assumption and Assignment Notices was good, sufficient and appropriate under the circumstances, and was effected in compliance with the Bidding Procedures Order, and that no further notice need be given in respect of establishing the Cure Costs for the Assigned Contracts.  The counterparties thereto have had an opportunity to object to the Cure Costs set

4

forth in the Assumption and Assignment Notices and the Buyer's showing of adequate assurance of future performance pursuant to Bankruptcy Code sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B).

H.    As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Bidding Procedures, Auction, Sale Hearing, Sale and assumption and assignment of the Assigned Contracts (including all applicable objection deadlines with respect to Cure Costs) has been provided in accordance with Bankruptcy Code sections 102(1), 363 and 365 and Bankruptcy Rules 2002, 6004, 6006 and 9014. The Debtors also have complied with all obligations to provide notice of the Bidding Procedures, Auction, the Sale Hearing, Sale and assumption and assignment of the Assigned Contracts (including all applicable objection deadlines with respect to any Cure Costs) required by the Bidding Procedures Order. The notices described in paragraphs F, G, H, J and K herein were good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, Bidding Procedures, Auction, Sale Hearing, Sale, or assumption and assignment of the Assigned Contracts (including all applicable objection deadlines with respect to any Cure Costs) is required.

I.    The Debtors have articulated good and sufficient reasons for the Court to grant the relief requested in the Motion regarding the Sale.

J.    The Sale Notice served by the Debtors on the Notice Parties, which was also published in the National Edition of USA Today and posted on the case website maintained by the Debtors' claims and noticing agent, provided all interested parties with timely and proper notice of the Auction, Sale, and Sale Hearing.

5

K.      The Assumption and Assignment Notices provided the counterparties with proper notice of the potential assumption and assignment of the Assigned Contracts and any Cure Costs relating thereto, and the procedures set forth therein with regard to any such Cure Costs to satisfy Bankruptcy Code section 365 and Bankruptcy Rule 6006.

L.      The disclosures made by the Debtors concerning the Motion, the Auction, the Sale, and the Sale Hearing, were good, complete and adequate.

## II.     Good Faith of the Buyer

A.      Based on the record established at the Sale Hearing, the Buyer is purchasing the Acquired Assets (as defined in the Asset Purchase Agreement) in good faith and is a good faith buyer for value within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to the full protection of Bankruptcy Code section 363(m) and any other applicable or similar bankruptcy and non-bankruptcy law with respect to all of the Acquired Assets and the relief provided for in this Order, and otherwise has proceeded in good faith in all respects in connection with this proceeding in that, *inter alia:* (a) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (b) the Buyer complied in good faith in all respects with the provisions of the Bidding Procedures Order and the Bidding Procedures applicable to it; (c) the Buyer agreed to subject its bid to the competitive bidding procedures set forth in the Bidding Procedures Order; (d) all payments to be made by the Buyer, all releases and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; (e) the Buyer has not violated Bankruptcy Code section 363(n) by any action or inaction, and no common identity of directors or controlling stockholders exists between the Buyer and the Debtors; (f) the Buyer did not in any way induce or cause the Chapter 11 filing of the Debtors; (g) the Buyer has not acted in a collusive manner with any person; and (h) the negotiation and execution of the final purchase agreement (together with any

6

schedules, exhibits and any other documents or instruments related thereto, as the same may be amended and in effect from time to time, the "**Asset Purchase Agreement**," which is attached hereto as **Exhibit A**, and which is based upon the stalking horse asset purchase agreement attached to the Motion) and any other agreements or instruments related thereto were at arms' length, in good faith, and without collusion or fraud, and at all times each of the Buyer and the Debtors were represented by competent counsel of their choosing. Neither the Buyer, nor any of its affiliates, successors, assigns, or their respective members or shareholders is an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code.

### III.    Highest or Best Offer

A.    The Debtors solicited offers and noticed the Auction in accordance with the provisions of the Bidding Procedures Order and Bidding Procedures.  The Bidding Procedures were non-collusive, formulated and implemented in good faith, were substantively and procedurally fair to all parties, and obtained the highest and best value for the Acquired Assets for the Debtors and their estates and creditors.  On September 9, 2019, the Debtors held the Auction in which Qualified Bidders were invited to participate.  The Debtors received three Qualified Bids for the Acquired Assets and, at the conclusion of the Auction, deemed the bid submitted by the Buyer as the highest or otherwise best offer for the Acquired Assets.  A modified bid submitted by the Stalking Horse Purchaser was declared the Back-Up Bid.  The Auction was duly noticed, the sale process was conducted in a non-collusive manner and in compliance in all respects with the Bidding Procedures and the Bidding Procedures Order, the Debtors afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets, and all interested parties have been afforded a full, fair and reasonable opportunity to object or be heard with respect to the Sale and the relief granted by this Order.

B.      The Debtors and their professionals have, under the circumstances, adequately and appropriately marketed the Acquired Assets in compliance in all respects with the Bidding Procedures and the Bidding Procedures Order.  The Asset Purchase Agreement constitutes the highest or best offer for the Acquired Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Asset Purchase Agreement and the Sale were negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions.  Neither the Debtors nor the Buyer, nor their respective agents, officials, personnel, representatives, and advisors have engaged in any conduct that would cause or permit the Asset Purchase Agreement to be avoided under Bankruptcy Code section 363(n).  The terms and conditions of the Asset Purchase Agreement, including the consideration to be realized by the Debtors pursuant to the Asset Purchase Agreement, are fair and reasonable, and the transactions contemplated by the Asset Purchase Agreement are in the best interests of the Debtors' estates.  The Debtors' determination that the Asset Purchase Agreement constitutes the highest or best offer for the Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

C.      The Asset Purchase Agreement represents a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these Chapter 11 Cases.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer.

D.      Approval of the Sale and the Asset Purchase Agreement and the consummation of the transactions contemplated hereby and thereby is in the best interests of the Debtors, their creditors, their estates and other parties in interest.

8

E.    The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification for the Sale prior to, and outside of, a plan of reorganization.

**IV.    No Fraudulent Transfer**

A.    The consideration provided by the Buyer pursuant to the Asset Purchase Agreement is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia and any other applicable law.  The Asset Purchase Agreement was not entered into for the purposes of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia and any other applicable law.  The Buyer is not a mere continuation, and is not holding itself out as a mere continuation, of any of the Debtors or their respective estates and there is no continuity between the Buyer and the Debtors.

B.    The consideration provided by the Buyer for the Acquired Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including the Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act) and any other applicable law, and the Sale may not be avoided under Bankruptcy Code section 365(n) or under any other law of the United States, any state, territory, possession or the District of Columbia (including the Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act) or any other applicable law.

9

**V.     Legal, Valid Transfer**

A.     The consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transactions contemplated under the Asset Purchase Agreement.

B.     The Debtors have full corporate power and authority to execute and deliver the Asset Purchase Agreement and all other documents contemplated thereby, and, other than entry of this Order, no further consents or approvals are required for the Debtors to consummate the transactions contemplated by the Asset Purchase Agreement, except as otherwise set forth in the Asset Purchase Agreement.

**VI.     Free and Clear**

A.     Prior to the Closing Date, the Debtors were the sole and lawful owners of the Acquired Assets.  The transfer of the Acquired Assets to the Buyer will be as of the Closing Date a legal, valid, and effective transfer of such assets, and on the Closing Date will vest the Buyer with all right, title, and interest of the Debtors to the Acquired Assets free and clear of all Liens (as defined in the Bankruptcy Code), Claims (as defined in the Bankruptcy Code), Encumbrances (as defined in the Asset Purchase Agreement) and other Interests (as defined below), including, without limitation and for the avoidance of doubt, all Liens, Claims, Encumbrances and interests asserted under any theory of successor or transferee liability or any similar theory under applicable state, provincial or federal law or otherwise (such interests, the "**Interests**"), in each case whether known or unknown, mature or inchoate, filed or unfiled,

10

scheduled or unscheduled, allowed or disallowed, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, matured or unmatured, material or nonmaterial, disputed or undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases, and whether imposed by agreement, understanding, law, equity, statute or otherwise, other than the Permitted Encumbrances and the Assumed Liabilities as and to the extent set forth under the Asset Purchase Agreement, with all such Liens, Claims, Encumbrances and Interests to attach to the net cash proceeds of the Sale when received by the Debtors with the same priority, validity, force and effect as such Liens, Claims, Encumbrances and Interests had in the Acquired Assets, subject to the escrow arrangements set forth in the Asset Purchase Agreement and herein and any claims and defenses the Debtors, their estates or other parties may possess with respect thereto.

B.     Not transferring the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests, including, without limitation, all Liens, Claims, Encumbrances and Interests based on any successor or transferee liability or any similar theory under applicable state, provincial or federal law or otherwise, would adversely impact the Debtors' efforts to maximize the value of their estates, and the transfer of the Acquired Assets other than pursuant to a transfer that is free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever would be of substantially less benefit to the Debtors' estates.

C.     The Buyer and its affiliates, successors and assigns are not and will not be liable to any agent, broker, person or firm or purporting to act on behalf of either the Debtors or the Buyer for any commission, broker's fee, or finder's fee with respect to the Sale and the transactions contemplated by the Asset Purchase Agreement or the other Transaction Documents.

11

## VII.    Section 363(f) Is Satisfied

A.    The Debtors may sell the Acquired Assets free and clear of all Liens, Claims, Encumbrances and Interests (including, for the avoidance of doubt, all Liens, Claims, Encumbrances and Interests asserted under any theory of successor or transferee liability or any similar theory under applicable state, provincial or federal law or otherwise), other than the Permitted Encumbrances and the Assumed Liabilities as and to the extent set forth in the Asset Purchase Agreement, because, in each case, one or more of the standards set forth in Bankruptcy Code section 363(f)(l)-(5) has been satisfied.  Those holders of Liens, Claims, Encumbrances or Interests who did not object, or who withdrew their objections, to the Sale or the Motion are deemed to have consented pursuant to Bankruptcy Code section 363(f)(2).  Those holders of the Liens, Claims, Encumbrances or Interests who did object and whose objection was not resolved or withdrawn fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, Claims, Encumbrances or Interests, if any, attach to the net cash proceeds of the Sale as described herein attributable to the Acquired Assets in which such holder alleges a Lien, Claim, Encumbrance or Interest, in the same order of priority, with the same validity, force and effect that such Lien, Claim, Encumbrance or Interest therein had prior to the Sale, subject to any claims and defenses the Debtors, their estates or other parties may possess with respect thereto.

B.    The Debtors have, to the extent necessary, satisfied the requirements of Bankruptcy Code section 363(b)(1).

## VIII.    No Successor Liability

A.    The Buyer and its affiliates, successors and assigns shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Liens, Claims, Encumbrances or Interests, including under any theory of successor or transferee liability, de-

12

facto merger, or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as transferee or successor or otherwise, asserted or unasserted, liquidated or unliquidated, of any kind, nature, or character whatsoever, including, without limitation, with respect to any of the following: (a) any foreign, federal, state or local revenue, pension, ERISA, tax (including, without limitation, the Internal Revenue Code of 1986, as amended), labor, employment (including the Worker Adjustment and Retraining Notification Act of 1988), antitrust, environmental, or other law, rule, or regulation; (b) any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (c) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, collective bargaining agreements, or other similar agreement to which the Debtors are a party; (d) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (e) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, or obligations that might otherwise arise from or pursuant to, among others, (i) ERISA, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Worker Adjustment and Retraining Notification Act of 1988 (the "**WARN Act**"), (vii) the Age Discrimination in Employment Act, as amended, of 1967, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state and local discrimination laws, (xii) state and local unemployment compensation laws or other similar state

13

and local laws, (xiii) state workers' compensation laws, and (xiv) any other state, local, or federal employee benefit laws, regulations, or rules or other state, local, or federal laws, regulations, or rules relating to wages, benefits, employment, or termination of employment with any or all Debtors or any predecessors; (f) any liability to any employee of a Debtor, in connection with, salaries, wages, benefits, vacation, expenses or other compensation or remuneration or in connection with any workers' compensation or other employee health, accident, disability, or safety claims; (g) any Franchise Agreements (as defined in the Asset Purchase Agreement) or any applicable franchise law; (h) any mortgages, deeds of trust and security interests; (i) any bulk sales or similar law; and (j) any acts or omissions of any Debtor in the conduct of the Business or arising under or related to the Acquired Assets. Neither the Buyer nor its affiliates, successors or assigns shall be deemed to be holding themselves out as a continuation of the Debtors based on the Sale, the Asset Purchase Agreement or this Order. Neither the Buyer nor any of its affiliates, successors or assigns is a successor to any of the Debtors or their estates, and none of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates, successors, or assigns with or into any of the Debtors.

B.      The Buyer has not merged or consolidated with or into the Debtors and is not a mere or substantial continuation of the Debtors or the enterprises of the Debtors. Without limiting the foregoing, the Buyer is not a successor employer (including as described under ERISA and COBRA and applicable regulations thereunder or any other law) to any Debtor, including, without limitation, with respect to any Benefit Plan and any collective bargaining agreements. Neither the Buyer nor any of its affiliates, successors, or assigns are, and none of

14

them shall be deemed or considered to be, liable for any acts or omissions of any Debtor in the conduct of the Business arising under or related to the Acquired Assets other than as set forth in the Asset Purchase Agreement, in each case by any law or equity, and the Buyer or its affiliates, successors or assigns have not assumed nor are they in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise set forth in the Asset Purchase Agreement.

C.      Without limiting the generality of the foregoing, none of the Buyer, its affiliates, successors, or assigns and their respective present or contemplated members or shareholders, or the Acquired Assets will have any liability whatsoever with respect to, or be required to satisfy in any manner, whether at law or equity, or by payment, setoff, recoupment or otherwise, directly or indirectly, any Claims relating to any U.S. federal, state, provincial or local income tax liabilities, that the Debtors may incur in connection with consummation of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts, or that the Debtors have otherwise incurred prior to the consummation of the transactions contemplated by the Asset Purchase Agreement.

D.      The Buyer would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby (by paying the Purchase Price and assuming the Assumed Liabilities) if the sale of the Acquired Assets to the Buyer, and the assumption and assignment of the Assigned Contracts to the Buyer, were not (except and only to the extent expressly provided in the Asset Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities) free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever, or if the Buyer would, or in the future could

15

(except and only to the extent expressly provided in the Asset Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities), be liable for any of such Liens, Claims, Encumbrances and Interests.

**IX.    Assumptions and Assignment of Executory Contracts and Unexpired Leases**

A.    The assumption and assignment of the Assigned Contracts pursuant to the terms of this Order is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

B.    Except as otherwise provided for in this Order or another order of the Bankruptcy Court or as mutually agreed upon between the Buyer and the relevant counterparty, the amounts set forth on the Assumption and Assignment Notices are the sole amounts necessary under Bankruptcy Code sections 365(b)(l)(A) and (B) and 365(f)(2)(A) to cure all monetary defaults and pay all actual pecuniary losses under the Assigned Contracts (the "**Cure Costs**").

C.    Pursuant and subject to the terms of the Asset Purchase Agreement and this Order, the Buyer will as of the Closing Date: (i) cure, or provide adequate assurance of cure, of any default under any of the Assigned Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(A) and 365(b)(2)(A); and (ii) provide compensation or adequate assurance of compensation to each counterparty for any actual pecuniary loss to such counterparty resulting from a default prior to the Closing Date under any of the Assigned Contracts, within the meaning of Bankruptcy Code section 365(b)(1)(B) and 365(f)(2)(B).

D.    The Buyer has provided adequate assurance of future performance under the Assigned Contracts within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

**X.    Compelling Circumstances for an Immediate Sale**

16

A.   To enhance the Debtors' liquidity and to maximize the amount of funding available to provide for a timely exit from these Chapter 11 Cases, it is essential that the sale of the Acquired Assets occur within the time constraints set forth in the Asset Purchase Agreement. Time is of the essence in consummating the Sale.

B.   Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the Purchase Price under the Asset Purchase Agreement, the proposed sale of the Acquired Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

## XI.   Not a Sub Rosa Plan

A.   The Sale does not constitute a *de facto* or *sub rosa* plan of reorganization or liquidation because it does not propose to (i) impair or restructure existing debt of, or equity interests in, the Debtors, (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors, (iii) circumvent Chapter 11 safeguards, including those set forth in Bankruptcy Code sections 1125 and 1129, or (iv) classify claims or equity interests.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

## I.   General Provisions

1.   The relief requested in the Motion with respect to the Perkins Business is granted and approved, and the Sale of the Acquired Assets to the Buyer contemplated by the Asset Purchase Agreement is approved as set forth in this Order.

2.   This Court's findings of fact and conclusions of law, set forth in the Bidding Procedures Order, are incorporated herein by reference.

3.   All objections to the Motion with respect to the sale of the Perkins Business and the related relief requested in the Motion that have not been withdrawn, waived, adjourned, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and

17

all reservations of rights included therein, are hereby overruled on the merits or have been otherwise satisfied or adequately provided for.

**II.      Approval of the Asset Purchase Agreement**

4.      The Asset Purchase Agreement and all ancillary documents, including, without limitation, the Bill of Sale, Assignment and Assumption Agreement, the Amended and Restated Foxtail Agreement, the Transition Services Agreement, the Estate Transition Services Agreement, and any amendments, supplements and modifications thereto, and all of the terms and conditions thereof, are hereby approved.

5.      Pursuant to Bankruptcy Code section 363(b), the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (i) consummate the Sale of the Acquired Assets to the Buyer pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (ii) close the Sale as contemplated by the Asset Purchase Agreement and this Order, and (iii) execute and deliver, perform under, consummate, implement and close the Asset Purchase Agreement, together with all other Transaction Documents and any additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Asset Purchase Agreement and such ancillary documents.

6.      The terms and provisions of the Asset Purchase Agreement, the other Transaction Documents and this Order shall be binding in all respects upon the Debtors and their respective affiliates, successors and assigns, their estates and their creditors, all holders of equity interests in any Debtor, all holders of any Claims, Liens, Encumbrances and Interests, whether known or unknown, all counterparties, the Buyer, all successors and assigns of the Buyer, any other bidders for the Acquired Assets, including the Stalking Horse Purchaser, trustees, if any,

18

subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to Chapter 7 under the Bankruptcy Code of any of the Debtors' cases, and any affected third parties including, but not limited to, all persons asserting any Liens, Claims, Encumbrances or Interests on the Acquired Assets to be sold to the Buyer pursuant to the Asset Purchase Agreement.  This Order, the Asset Purchase Agreement and the other Transaction Documents shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer, and their respective successors and assigns.

### III.    Transfer of the Acquired Assets

7.    Pursuant to Bankruptcy Code sections 105(a), 363(b), 363(f), 365(b) and 365(f), the Debtors are authorized to transfer the Acquired Assets to the Buyer on the Closing Date and consummate the Sale in accordance with, and subject to the terms and conditions of, the Asset Purchase Agreement, and to transfer and assign all right, title and interest (including common law rights) to all property, licenses and rights to be conveyed in accordance with and subject to the terms and conditions of the Asset Purchase Agreement.  The Acquired Assets (including the Assigned Contracts) shall be transferred to the Buyer (or any Buyer Designee) upon and as of the Closing Date and such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets (including the Assigned Contracts) free and clear of all Liens, Claims, Encumbrances and Interests, including, for the avoidance of doubt, all Liens, Claims, Encumbrances and Interests asserted under any theory of successor or transferee liability or any similar theory under applicable state, provincial or federal law or otherwise (other than the Permitted Encumbrances and the Assumed Liabilities as and to the extent set forth under the Asset Purchase Agreement).  Upon the Closing, the Buyer (or any Buyer Designee) shall take title to and possession of the Acquired Assets subject only to the Permitted Encumbrances and the Assumed Liabilities as expressly and to the extent set forth in the Asset Purchase Agreement;

19

*provided, however*, that the Buyer shall not be relieved of liability with respect to such Permitted Encumbrances and the Assumed Liabilities, including any obligations first arising under the Assigned Contracts from and after the Closing Date. All such Liens, Claims, Encumbrances and Interests shall attach solely to the net cash proceeds of the Sale with the same validity, priority, force and effect that they now have as against the Acquired Assets, subject to the escrow arrangements contemplated by the Asset Purchase Agreement and hereunder, any claims and defenses the Debtors, their estates or other parties may possess with respect thereto.

8.      The sale of the Acquired Assets to the Buyer, and the assumption and assignment of the Assigned Contracts to the Buyer (or any Buyer Designee), shall be, except as otherwise provided in the Asset Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, free and clear of all Liens, Claims, Encumbrances and Interests of any kind or nature whatsoever, including, for the avoidance of doubt, all Liens, Claims, Encumbrances and Interests asserted under any theory of successor or transferee liability or any similar theory under applicable state, provincial or federal law or otherwise.

9.      The Debtors and their respective officers, employees and agents are authorized to take any and all actions necessary, appropriate or requested by the Buyer to perform, consummate, implement and close the Sale, including, without limitation, executing, acknowledging and delivering such deeds, assignments, conveyances and other assurance, documents and instruments of transfer and taking any action for purposes of assigning, transferring, granting, conveying and confirming to the Buyer, or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Asset Purchase Agreement. The Debtors are further authorized to pay, without further order of this Court, whether before, at or after the Closing

20

Date, all fees, costs and expenses that are required to be paid in order to consummate the Sale or perform their obligations under the Asset Purchase Agreement, as the case may be, pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement.

10.     Except only as expressly and to the extent provided by the Asset Purchase Agreement with respect to the Permitted Encumbrances and the Assumed Liabilities, all persons and entities (and their respective successors and assigns), including, without limitation, all debt security holders, equity security holders, foreign, federal, state and local governmental, tax and regulatory authorities, lenders, customers, vendors, suppliers, franchisees, employees, benefit plan participants and beneficiaries, trade and other creditors, litigation claimants and other persons, holding Liens or Encumbrances on, Claims affecting, or Interests in, all or any portion of the Acquired Assets and/or the Debtors (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), including, without limitation, the non-debtor party or parties to each Assigned Contract, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, continuing, or otherwise pursuing any Liens, Claims, Encumbrances, Interests or seeking to collect, offset, or recover on account of any such Liens, Claims, Encumbrances or Interests or any other cause of action or any process or other act against the Buyer or its affiliates, successors, assigns, employees, professionals, and their respective present or contemplated members or shareholders and their respective property or the Acquired Assets, arising under or out of, in connection with, or in any way relating to, the Debtors, the Debtors' predecessors or insiders, the Acquired Assets, the ownership, sale or operation of the Acquired Assets prior to Closing or the transfer of the Debtors' interests in the Acquired Assets to the Buyer, including, without limitation, Liens, Claims, Encumbrances or Interests based on any successor or transferee liability under any

21

theory, whether based in law, equity, or otherwise, under state, provincial, federal, or any other law, or rights or claims based on setoff, a right of subrogation, or recoupment of any kind for any obligation of any of the Debtors as against any obligation due to Buyer, or its affiliates, successors, assigns, employees, professionals, or their respective present or contemplated members or shareholders or their respective property, including the Acquired Assets.

11.     On the Closing Date, each holder of a Claim, Lien, Interest or Encumbrance is authorized and directed to execute such documents and take all other actions as may be deemed by the Buyer to be necessary or desirable to release its Claims, Liens, Interests or Encumbrances on the Acquired Assets, as provided for herein, as such Liens, Claims, Interests or Encumbrances may have been recorded or may otherwise exist.  Following the Closing, no holder of any Liens, Claims, Encumbrances and Interests shall interfere with the Buyer's title to or use and enjoyment of the Acquired Assets based on or related to any such Liens, Claims, Encumbrances and Interests, or based on any action the Debtors may take in the Chapter 11 Cases.

12.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Asset Purchase Agreement and this Order.

13.     All persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are directed to surrender possession of such Acquired Assets to the Buyer or its assignee at the Closing.

14.     If any person or entity which has filed statements or other documents or agreements evidencing Liens, Claims, Encumbrances or Interests on all or any portion of the Acquired Assets shall not have delivered to the Debtors prior to the Closing, in proper form for

22

filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of Liens and easements, and any other documents necessary or desirable to the Buyer for the purpose of documenting the release of all Liens and Encumbrances, which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized and directed, and the Buyer is hereby authorized, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.

15.     The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local transfer laws or requirements.

16.     This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, provincial, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized and empowered to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

17.     Following the Closing, the Debtors or the Buyer are authorized to execute and file a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all obligations, Liens, Claims, Encumbrances, Interests, and Excluded Liabilities in the Acquired Assets of any kind or nature whatsoever.  On the Closing

Date, this Order will be construed, and constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to the Buyer. On the Closing Date, this Order also shall be construed, and constitute for any and all purposes, a complete and general assignment of all right, title and interest of the Debtors and each bankruptcy estate to the Buyer (or any Buyer Designee) in the Assigned Contracts.

18.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license or similar grant relating to the operation of the Acquired Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the transactions contemplated by the Asset Purchase Agreement, including the Sale and the assumption and assignment of the Assigned Contracts.

## IV.     Executory Contracts and Unexpired Leases

19.     Subject to payment of the applicable Cure Cost, if any, the Debtors are authorized to (a) assume and assign the Assigned Contracts to the Buyer free and clear of all Liens, Claims, Interests and Encumbrances of any kind or nature whatsoever and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Assigned Contracts to the Buyer. With respect to each Assigned Contract, the payment of the applicable Cure Costs shall (a) effect a cure of all defaults (monetary and non-monetary) existing thereunder as of the Closing Date with respect to Assigned Contracts, (b) compensate the applicable counterparty for any actual pecuniary loss resulting from such default, and (c) together with the assumption of the Assigned Contract by the Buyer, constitute adequate assurance of future performance thereof. As to any Assigned Contract, the Buyer shall be deemed to have assumed such Assigned Contract as of the Closing Date and, pursuant to Bankruptcy Code section 365(f), the assignment by the Debtors of such Assigned Contracts shall

24

not be a default thereunder.  Unless objected to prior to the deadline set forth in the Assumption

and Assignment Notice, for each Assigned Contract listed therein, the Cure Cost set forth in such

notice is hereby fixed and determined to be the dollar amount set forth in such notice as the Cure

Cost and any counterparty shall be prohibited from challenging, objecting to or denying the

validity and finality of the Cure Cost at any time.

20.     Pursuant to the terms of the Asset Purchase Agreement and this Order, the Buyer

has until the Determination Date to amend the Execution Date Contract Schedule (as defined in

the Asset Purchase Agreement) by adding or removing Contracts or Leases.  Any Contract or

Lease that remains on the Execution Date Contract Schedule as of the Closing Date, and that is

not a Disputed Contract, shall be assumed by the Debtors and assigned to the Buyer as part of the

Sale.  Other than with respect to Disputed Contracts, all Contracts and Leases that are not on the

Execution Date Contract Schedule as of the Determination Date shall not be considered an

Assigned Contract or Acquired Asset and shall be deemed "Rejected Contracts" under the Asset

Purchase Agreement.

21.     Upon objection by the non-debtor counterparty to any Assigned Contract to the

Cure Costs asserted by the Debtors with respect thereto or in the event of an other dispute with

the counterparty thereto as to the assumption or assignment of said Assigned Contract that has

not been resolved to the mutual satisfaction of the Buyer, the Debtors, and said counterparty

prior to the Determination Date (such contract, a "**Disputed Contract**"), unless the Buyer

designates such Disputed Contract as a "Rejected Contract," then the Debtors and the Buyer

shall use reasonable efforts to settle such objection or litigate such objection under procedures

approved or proscribed by the Bankruptcy Court.  In the event that a dispute regarding the Cure

Costs with respect to an Assigned Contract has not been resolved as of the Closing Date, the

RLF1 22040405v.1

Buyer shall nonetheless remain obligated to consummate the Sale in accordance with the Asset Purchase Agreement.  Upon the written permission of the counterparty to the Disputed Contract and the Debtors (or as ordered by the Court), the Determination Date may be extended to the Extended Contract Period at no cost or Liability to Sellers as defined in section 2.5(a) of the APA during which time the Buyer shall have the option to assume such Contract or to designate the Disputed Contract as a Rejected Contract.  For the avoidance of doubt, if the Buyer does not assume the Disputed Contract by the end of the Extended Contract Period, such Disputed Contract shall be deemed a Rejected Contract and Buyer shall not be responsible for the Cure Costs associated with such Disputed Contract.  Any Cure Costs associated with any Disputed Contract which becomes an Assigned Contract shall be paid in accordance with the terms of the Asset Purchase Agreement and this Order.

22.    Within one (1) Business Day of the Closing Date, or as soon as practicable thereafter, the Debtors shall file with the Bankruptcy Court a notice which shall include (i) the Closing Date, (ii) a list of Contracts and Leases assumed and assigned as part of the Sale and (iii) a list of Contracts and Leases that are Disputed Contracts and are subject to the Extended Contract Period.

23.    If prior to or following the Closing, (a) it is discovered that a Contract or Lease should have been listed on the Execution Date Contract Schedule but was not listed thereon (any such Contract or Lease, a "**Previously Omitted Contract**"), the Debtors shall use commercially reasonable efforts to promptly deliver to Buyer, or make available at Buyer's request, a true, correct and complete copy of all such Previously Omitted Contracts (including amendments and modifications thereto).  On or after the Closing, but in any event prior to the Extended Contract Period, Buyer shall have the right (but not the obligation) in its sole and absolute discretion to

26

have any Previously Omitted Contract assumed and assigned to Buyer (for no additional consideration), and upon any assumption and assignment of such Previously Omitted Contract to Buyer, such Contract shall become an Assigned Contract, effective as of the Closing Date, and any Cure Costs associated with such Assigned Contract shall be paid in accordance with the terms of the Asset Purchase Agreement and this Order. The Debtors shall provide not less than 14 days' notice to any such contract counterparty to provide adequate time to object to any proposed Cure Amounts. Any Previously Omitted Contract not assumed and assigned to Buyer pursuant to this paragraph shall be deemed a Rejected Contract.

24.    With respect to any Assigned Contract subject to a Supplemental Assumption and Assignment Notice, if no objection is received by the applicable objection deadline set forth on such Supplemental Assumption and Assignment Notice (which time period shall not be less than 14 days, unless otherwise ordered by the Court or agreed to by the Debtors and the applicable counterparty), then the Assigned Contract shall be deemed assumed and assigned to the Buyer pursuant to this Order. To the extent a non-debtor Contract or Lease counterparty objects to the Cure Costs asserted by the Debtors with regard to any Contract or Lease on such Supplemental Assumption and Assignment Notice, such objection shall be resolved in accordance with paragraph 21 above. Unless objected to prior to the deadline set forth in any Supplemental Assumption and Assignment Notice, for each Assigned Contract listed therein, the Cure Cost set forth in such notice is hereby fixed and determined to be the dollar amount set forth in such notice as the Cure Cost and any counterparty shall be prohibited from challenging, objecting or denying the validity and finality of the Cure Cost at any time.

25.    Upon the Debtors' assignment of Assigned Contracts to the Buyer and the payment of Cure Costs by the Buyer, if applicable, no default (monetary or non-monetary) shall

RLF1 22040405v.1

exist under any Assigned Contracts, and no counterparty to any Assigned Contracts shall be permitted to declare or enforce a default by any Debtor or the Buyer or otherwise take action against the Buyer as a result of any Debtor's financial condition, change of control, bankruptcy or failure to perform any of its obligations under the relevant Assigned Contract. Any provisions in any Assigned Contract that prohibits or conditions the assignment of such Assigned Contract or allows the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect pursuant to Bankruptcy Code section 365(f).   All other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to the Buyer of the Assigned Contracts have been satisfied, and such assumption and assignment shall not constitute a default thereunder.   To the extent not inconsistent with applicable law, the failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assigned Contract shall not be a waiver of such terms or conditions, or of the Buyer's right to enforce every term and condition of the Assigned Contract.   Upon the Closing and the payment of the required Cure Cost, if any, in accordance with Bankruptcy Code sections 363 and 365, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under each Assigned Contract.

26.     Upon the payment of the Cure Costs payable with respect to any Assigned Contract, if any, the Buyer shall be deemed to be substituted for the relevant Debtor as a party to such Assigned Contract as of the Closing Date and the Debtors shall be relieved, pursuant to Bankruptcy Code section 365(k), from any further liability under such Assigned Contract.

27.    Upon the assignment of any Assigned Contract to the Buyer as provided herein, such Assigned Contract shall remain in full force and effect, and no default shall exist thereunder nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

28.    Other than as expressly provided under the Asset Purchase Agreement, there shall be no rent accelerations, assignment fees, deposits, increases or any other fees charged to the Buyer, its affiliates, successors, assigns and their respective present or contemplated members or shareholders or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

29.    Pursuant to Bankruptcy Code sections 105(a), 363 and 365 of the Bankruptcy Code, all counterparties to Assigned Contracts are forever barred, estopped and permanently enjoined from (i) raising or asserting against the Debtors, their estates, the Buyer, or any of their respective affiliates, successors, assigns and their respective present or contemplated members or shareholders, or the property of any of them, any default existing as of Closing or any counterclaims, defense, setoff, recoupment or any other Liens, Claims, Interests or Encumbrances asserted or assertable against the Debtors; and (ii) imposing or charging against the Buyer or its affiliates, successors, assigns and their respective present or contemplated members or shareholders, any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing or effective as of the Closing Date, or arising by reason of the Closing.  No counterparty under any Assigned Contract may terminate any such Assigned Contract, nor shall the Buyer's rights and obligations under such Assigned Contracts be adversely affected in any way, by reason of any default under such Assigned Contract prior to Closing.  Any party that may have had the right to consent to the

assignment of an Assigned Contract is deemed to have consented to such assignment for purposes of Bankruptcy Code sections 365(c)(l)(B) and 365(e)(2)(A)(ii) and otherwise if such party failed to file a timely objection to the assumption and assignment of such Assigned Contract.

30.    All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, any instruments, applications, consents or other documents which may be required or requested by any public or quasi-public authority or other entity to effectuate the applicable transfers in connection with the Sale of the Acquired Assets.  Subject to the Asset Purchase Agreement, notwithstanding anything to the contrary in the Motion, the Bidding Procedures Order or any previously filed notices, the Contract and Lease procedures set forth in these paragraphs 19-30 shall govern.

31.    No party to a contract that has been rejected by any of the Debtors and that is any way related to the Acquired Assets shall have a claim against the Buyer, its affiliates, successors, assigns and their respective present or contemplated members or shareholders in connection with the Sale, whether under the Bankruptcy Code or any other statutory or non-statutory federal, state, local law or otherwise.

## V.    Application of Sale Proceeds

32.    Upon the Closing of the Sale, all Cash Consideration paid or payable to any of the Debtors shall be allocated as set forth on Schedule A attached hereto; *provided, that,* for the avoidance of doubt, such Cash Consideration shall first be allocated to the Specified Adjustment Escrow, established in accordance with the terms of the Asset Purchase Agreement and the Specified Adjustment Escrow agreement contemplated thereby (the "**Specified Adjustment Escrow Agreement**"), in an amount equal to $2,000,000, with any distribution therefrom being governed by the Asset Purchase Agreement and the Specified Adjustment Escrow Agreement.

30

## VI.    No Successor Liability

33.    Effective upon the Closing Date and except as otherwise provided by stipulations filed with or announced to the Court with respect to a specific matter, all persons and entities (and their successors and assigns) are forever prohibited and permanently enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, its affiliates, successors, assigns, and their respective present or contemplated members or shareholders or the Acquired Assets, with respect to (a) any Lien or Encumbrance on, or Claim affecting, or Interest in, the Acquired Assets arising prior to the Closing of the Sale; (b) all claims for successor liability or similar theories under applicable state, provincial or federal law or otherwise with respect to the Acquired Assets; or (c) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

34.    Under no circumstances shall the Buyer (or its affiliates, successors and assigns) be deemed a "successor" of or to the Debtors or their estates by reason of any theory of law or equity, and effective upon the Closing Date, the Buyer (or its affiliates, successors and assigns) shall not assume, or be deemed to assume, or in any way be responsible for any Liens, Claims, Encumbrances or Interests with respect to the Debtors and/or their estates, the Acquired Assets or otherwise, other than the Assumed Liabilities and Permitted Encumbrances as expressly and to the extent set forth under the Asset Purchase Agreement.  Without limiting the generality of the foregoing, and except as to the Assumed Liabilities and Permitted Encumbrances as expressly and to the extent set forth under the Asset Purchase Agreement, the Buyer and its affiliates, successors and assigns shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any Liens, Claims, Encumbrances or Interests, including

31

under any theory of successor or transferee liability, de-facto merger, or continuity, whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as transferee or successor or otherwise, asserted or unasserted, liquidated or unliquidated, of any kind, nature, or character whatsoever, including, without limitation, with respect to any of the following: (a) any foreign, federal, state or local revenue, pension, ERISA, tax (including, without limitation, the Internal Revenue Code of 1986, as amended), labor, employment (including the WARN Act), antitrust, environmental, or other law, rule, or regulation; (b) any products liability law, rule, regulation, or doctrine with respect to the Debtors' liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (c) any employment or labor agreements, consulting agreements, severance arrangements, collective bargaining agreements, change-in-control agreements, or other similar agreement to which any Debtor is a party; (d) any welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (e) the cessation of the Debtors' operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, or obligations that might otherwise arise from or pursuant to, among others, (i) ERISA, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the WARN Act, (vii) the Age Discrimination in Employment Act, as amended, of 1967, (viii) the Americans with Disabilities Act of 1990, (ix) the Consolidated Omnibus Budget Reconciliation Act of 1985, (x) the Multiemployer Pension Plan Amendments Act of 1980, (xi) state and local discrimination laws, (xii) state and local unemployment compensation laws or other similar state and local laws, (xiii) state workers' compensation laws,

and (xiv) any other state, local, or federal employee benefit laws, regulations, or rules or other state, local, or federal laws, regulations, or rules relating to wages, benefits, employment, or termination of employment with any or all Debtors or any predecessors and (f) any liability to any employee of a Debtor, in connection with, salaries, wages, benefits, vacation, expenses or other compensation or remuneration or in connection with any workers' compensation or other employee health, accident, disability, or safety claims; (g) any Franchise Agreements or any applicable franchise law; (h) any mortgages, deeds of trust and security interests; (i) any bulk sales or similar law; and (j) any acts or omissions of any Debtor in the conduct of the Business or arising under or related to the Acquired Assets.  Neither the Buyer nor any of its affiliates, successors or assigns is holding itself out to the public as a continuation of any of the Debtors. Neither the Buyer nor any of its affiliates, successors or assigns is a successor to any of the Debtors or their estates, and none of the transactions contemplated by the Asset Purchase Agreement, including, without limitation, the Sale and the assumption and assignment of the Assigned Contracts amounts to a consolidation, merger, or *de facto* merger of the Buyer or any of its affiliates, successors and assigns with or into any of the Debtors.

35.     The Buyer has not merged with or into the Debtors and is not a mere or substantial continuation of the Debtors or the enterprises of the Debtors.  Without limiting the foregoing, the Buyer is not a successor employer (including as described under ERISA and COBRA and applicable regulations thereunder or any other law) to any Debtor, including, without limitation, with respect to any Benefit Plan or any collective bargaining agreement. Neither the Buyer nor any of its affiliates, successors, or assigns are, and none of them shall be deemed or considered to be, liable for any acts or omissions of any Debtor in the conduct of the Business arising under or related to the Acquired Assets other than as and to the extent set forth

33

in the Asset Purchase Agreement, in each case by any law or equity, and the Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise and to the extent set forth in the Asset Purchase Agreement.

36.     Except for the Permitted Encumbrances and the Assumed Liabilities as expressly and to the extent set forth in the Asset Purchase Agreement, the Buyer and its affiliates, successors and assigns shall not have any liability for any Claim of the Debtors, any obligation of the Debtors or any Liens, Claims, Encumbrances and Interests arising under or related to any of the Acquired Assets. Without limiting the generality of the foregoing, and except for the Permitted Encumbrances and the Assumed Liabilities as expressly and to the extent set forth in the Asset Purchase Agreement, the Buyer and its affiliates, successors and assigns shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates solely by virtue of the acquisition of the Acquired Assets.  By virtue of the Sale, the Buyer and its affiliates, successors and assigns shall not, and shall not be deemed or considered to: (i) be the successor of, or successor to, any Seller; (ii) be a successor employer (including as described under ERISA and COBRA and applicable regulations thereunder or any other law) to any Seller, including with respect to any Benefit Plan or any collective bargaining agreement; (iii) have, *de facto* or otherwise, merged with or into any Seller; (iv) be a mere continuation or substantial continuation of any Seller or the enterprise(s) of any Seller; or (v) be liable for any acts or omissions of any Seller in the conduct of the Business or arising under or related to the Acquired Assets other than as expressly and to the extent set forth in the Asset Purchase Agreement, in each case by any law or equity, and the Buyer and its affiliates, successors and assigns have not assumed nor are they in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect to the Permitted Encumbrances and the Assumed Liabilities as and to the

34

extent set forth in the Asset Purchase Agreement.  The Buyer and its affiliates, successors and assigns shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, *de facto* merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the Closing.

37.    The substantial consideration given by the Buyer under the Asset Purchase Agreement shall constitute valid and valuable consideration for the release of any potential claims against the Successful Bidder and its affiliates, successors and assigns for successor liability or similar theories under applicable state, provincial or federal law or otherwise with respect to the Acquired Assets, which release shall be deemed to have been given in favor of the Buyer and its affiliates, successors and assigns by all holders of Liens, Claims, Interests or Encumbrances against the Debtors or with respect to the Acquired Assets.

**VII.    Good Faith**

38.    The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in Bankruptcy Code section 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assigned Contracts).  The Buyer is a good faith buyer within the meaning of Bankruptcy Code section 363(m) and, as such, is entitled to the full protections of Bankruptcy Code section 363(m).

39.     As a good faith purchaser of the Acquired Assets, the Buyer has not entered into an agreement with any other potential bidders at the Auction, and has not colluded with any of the other bidders, potential bidders or any other parties interested in the Acquired Assets, and, therefore, neither the Debtors nor any successor in interest to the Debtors' estates shall be entitled to bring an action against the Buyer, and the Sale may not be avoided, pursuant to Bankruptcy Code section 363(n).

## VIII.   No Fraudulent Transfer

40.     The consideration provided by the Buyer for the Acquired Assets pursuant to the Asset Purchase Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia (including the Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act) and any other applicable law, and the Sale may not be avoided under Bankruptcy Code section 365(n) or under any other law of the United States, any state, territory, possession or the District of Columbia (including the Uniform Voidable Transactions Act, Uniform Fraudulent Conveyance Act and the Uniform Fraudulent Transfer Act) or any other applicable law.

## IX.   Other Provisions

41.     Upon the closing of the Sale, the Debtors and their estates, predecessors, successors and assigns shall be deemed to have waived any and all actions related to, and released, the Buyer and its affiliates, successors, assigns, employees, professionals, and their respective present and contemplated members and shareholders and their respective property (including, without limitation, the Acquired Assets) from any and all Liens, Claims,

Encumbrances and Interests of the Debtors or their estates and any and all claims or causes of action of any kind, whether known or unknown, now existing or hereafter arising, asserted or unasserted, mature or inchoate, contingent or non-contingent, liquidated or unliquidated, material or nonmaterial, disputed or undisputed, and whether imposed by agreement, understanding, law, equity, or otherwise, related to or arising out of the Chapter 11 Cases, the Asset Purchase Agreement, the other Transaction Documents (as defined in the Asset Purchase Agreement), the formulation, preparation, negotiation, investigation, execution, delivery, implementation or consummation of the Asset Purchase Agreement and the other Transaction Documents and the transactions contemplated by the Asset Purchase Agreement and the other Transaction Documents, the entry into and consummation of the Sale and the assumption and assignment of the Assigned Contracts, the Cure Costs, or any other contract, instrument, release, agreement, settlement or document created, modified, amended, terminated or entered into in connection with the Asset Purchase Agreement, except to the extent expressly assumed or provided under the Asset Purchase Agreement or this Order, including any rights and remedies thereunder.

42.     Buyer agrees to comply with the terms of the Debtors' existing privacy policy (as disclosed to Buyer) with respect to "personally identifiable information" as that term is defined in section 101(41A) of the Bankruptcy Code and used in section 363(b)(1)(B) of the Bankruptcy Code.

43.     Nothing in the Motion, the Asset Purchase Agreement, this Order, the Bidding Procedures Order, any Assumption and Assignment Notice, or any other list or schedule of assumed contracts, assumed and assigned contracts, or cure amounts (including, without limitation, any other provision that purports to be preemptory or supervening) shall be deemed to permit or otherwise effect a sale, assignment, or any other transfer at this time of (a) any

37

insurance policies that have been issued by ACE American Insurance Company, Federal Insurance Company, or any of their respective affiliates, predecessors or successors (collectively, the "**Chubb Companies**") that provide insurance coverage, proceeds, or benefits relating thereto at any time to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto (collectively, the "**Chubb Insurance Contracts**"), and/or (b) any rights, benefits, claims, rights to payments and/or recoveries under such Chubb Insurance Contracts unless and until a further order is entered by this Court at a subsequent hearing, or is submitted to the Court by agreement of the Debtors, the Successful Bidder, the Prepetition Secured Parties, and the Chubb Companies, with the rights of the parties fully preserved pending entry of such further order.

44.    Pursuant to Bankruptcy Rules 7062, 9014, 6004(h), and 6006(d), this Order shall be effective immediately upon entry and the Debtors and the Buyer are authorized to close the Sale immediately upon entry of this Order.

45.    As provided in the Asset Purchase Agreement, this Order approved and provides for the transfer to the Buyer of the Avoidance Actions (as defined in the Asset Purchase Agreement).

46.    No bulk sales law or any similar law of any state, provincial or other jurisdiction applies in any way to the Sale.

47.    The Asset Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or on the interests of the Buyer and its affiliates, successors and assigns.

38

48.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

49.     The automatic stay pursuant to Bankruptcy Code section 362 is hereby lifted with respect to the Debtors to the extent necessary, without further order of this Court, to (i) allow the Buyer to deliver any notice provided for in the Asset Purchase Agreement or any ancillary documents and (ii) allow the Buyer to take any and all actions permitted under the Asset Purchase Agreement and any ancillary documents in accordance with the terms and conditions thereof.

50.     Nothing in this Order shall modify or waive any closing conditions or termination rights in the Asset Purchase Agreement, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

51.     To the extent that this Order is inconsistent with any prior order or pleading with respect to the Motion filed in these Chapter 11 Cases, the terms of this Order shall govern.  For the avoidance of doubt, the terms of any plan of reorganization or liquidation, or any order of this Court confirming such plans or any other order in these Chapter 11 Cases, including any order entered upon or after any conversion of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or otherwise, submitted to this Court or any other court for confirmation or sanction shall not conflict with, supersede, abrogate, nullify, modify or restrict the terms of the Asset Purchase Agreement or this Order or the rights of Buyer and its affiliates, successors and assigns thereunder or hereunder, or in any way prevent or interfere with the consummation or performance of the transactions contemplated by this Asset Purchase Agreement or this Order. The provisions of this Order and the Asset Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered confirming or

39

consummating any chapter 11 plan of the Debtors, or which may be entered converting these Chapter 11 Cases from chapter 11 to chapter 7 of the Bankruptcy Code, and the terms and provisions of the Asset Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Asset Purchase Agreement shall continue in these Chapter 11 Cases or any superseding case and shall be specifically performable and enforceable against and binding upon the Debtors, their estates and the Buyer and their respective successors and permitted assigns, including any trustee, responsible officer or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code, and the Asset Purchase Agreement shall not be subject to rejection or avoidance under any circumstances.

52.     The failure specifically to include any particular provisions of the Asset Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement is authorized and approved in its entirety.

53.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the Asset Purchase Agreement, all amendments thereto and any releases, waivers and consents hereunder and thereunder, and each of the agreements executed in connection therewith to which any of the Debtors are a party or which has been assigned by the Debtors to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to any of the foregoing.

54.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure,

as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order and the prompt consummation of the transactions and transfers contemplated under the Asset Purchase Agreement, and accordingly: (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay of this Order or in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.


**Dated: September 18th, 2019**            **KEVIN GROSS**
**Wilmington, Delaware**                   **UNITED STATES BANKRUPTCY JUDGE**

RLF1 22040405v.1