**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| Pancakes & Pies, LLC, *et al.*,[1] | ) | Case No. 19-11743 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Obj. Deadline: Dec. 12, 2019 at 4:00 p.m. (ET)**<br>**Hearing Date: Dec. 19, 2019 at 2:00 p.m. (ET)** |

**MOTION OF DEBTORS FOR ENTRY OF AN ORDER EXTENDING THE EXCLUSIVITY PERIODS TO FILE AND SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN AND GRANTING RELATED RELIEF**

The above-captioned debtors (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") hereby file this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Order**"), under section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), extending the Debtors' exclusive periods to file a chapter 11 plan and to solicit acceptances of such plan each by approximately ninety (90) days to March 2, 2020, and April 30, 2020, respectively. In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This is a core proceeding within the meaning

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Pancakes & Pies, LLC (2435); Pancakes & Pies Holding, LLC (3381); Pancakes & Pies Shop, LLC (1620); Pie Wholesalers, LLC (2420); Pancakes & Pies Promotions, LLC (7308); Idaho Pies, Inc. (2015); Pie and Beverage, Inc. (5887); Pasta & Pie, LLC (9288); Pancakes & Pies Real Estate Holding LLC (8553); and Pies & Pancakes Holding Corp. (2225). The mailing address for the Debtors is 6075 Poplar Avenue, Suite 800, Memphis, Tennessee 38119-4709.

of 28 .U.S.C. § 157(b)(2), and pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

2. Venue of the above-captioned cases and this Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3. On August 5, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing the Chapter 11 Cases. The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. No request has been made for the appointment of a trustee or examiner in these Chapter 11 Cases. On August, 14, 2019, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Committee**") in these Chapter 11 Cases.

5. Additional information regarding the Debtors' businesses and affairs, capital structure and prepetition indebtedness and the events leading up to the Petition Date can be found in the *Declaration of Jeffrey D. Warne in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**"),[2] filed on the Petition Date and incorporated herein by reference.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the First Day Declaration.

6. On September 18, 2019, the Court entered orders approving the sale of the Debtors' (a) Ohio Business Assets to Fairfield Gourmet Food Corp. (the "**Fairfield Sale**") [Docket No. 303] (the "**Fairfield Sale Order**"), (b) MC Business Assets and the California Business Assets to Marie Callenders, Inc. (the "**MC Sale**") [Docket No. 304] (the "**MC Sale Order**"), and (c) Perkins Business Assets to Huddle House, Inc. (the "**Huddle House Sale**", and together with the Fairfield Sale and the MC Sale, the "**Sale Transactions**") [Docket No. 306] (the "**Huddle House Sale Order**").

7. The Sale Transactions closed on October 22, 2019 (the "**Closing Date**"). *See Notice of (I) Closing of Sales of Substantially All of the Debtors' Assets; and (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Cure Costs* [D.I. 379], dated October 24, 2019.

8. On November 7, 2019, the Debtors filed the solicitation version of the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* (as amended, modified, or supplemented from time to time, the "**Combined Disclosure Statement and Plan**") [Docket No. 418].[3]

9. On November 7, 2019, the Court entered the *Order (A) Conditionally Approving the Combined Disclosure Statement and Plan for Solicitation Purposes Only, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Combined Disclosure Statement and Plan, (C) Approving the Form of Ballot and Solicitation Materials, (D) Establishing Voting Record Date, (E) Fixing the Date, Time and Place for the Confirmation Hearing and the Deadline for Filing Objections Thereto, (F) Approving Related Notice*

[3] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the First Day Declaration or the Combined Disclosure Statement and Plan, as applicable.

*Procedures and (G) Establishing Administrative Claims Deadline* [Docket No. 416] (the "**Disclosure Statement Order**"). Pursuant to the Disclosure Statement Order, the Bankruptcy Court, among other things, approved the Disclosure Statement and established certain solicitation and voting procedures. In addition, a hearing to consider confirmation of the Combined Disclosure Statement and Plan is scheduled for December 19, 2019 (the "**Confirmation Hearing**").

10. As of the date hereof, the Combined Disclosure Statement and Plan has not yet been confirmed. Accordingly, the Debtors file this Motion in order to provide sufficient time to obtain confirmation and, ultimately, consummation of the Combined Disclosure Statement and Plan without distraction from competing plans of reorganization that may be filed by third parties.

## RELIEF REQUESTED

11. By this Motion, the Debtors seek entry of the Proposed Order, substantially in the form attached hereto as **Exhibit A**, extending the periods within which only the Debtors may file a chapter 11 plan, and solicit acceptances thereof, pursuant to section 1121(d)(1) of the Bankruptcy Code. Unless extended, the Debtors' exclusive period to file a chapter 11 plan (the "**Filing Exclusivity Period**") and exclusive period to solicit votes for a chapter 11 plan (the "**Soliciting Exclusivity Period**", and together with the Filing Exclusivity Period, the "**Exclusivity Periods**") will expire on December 3, 2019, and January 31, 2020, respectively.[4] The Debtors seek to extend the Filing Exclusivity Period and Soliciting Exclusivity Period by approximately 90 days each, through and including March 2, 2020, and April 30, 2020, respectively, without

[4] Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusive Periods shall automatically extend the Exclusive Periods until such time as the Court rules on this Motion. *See* Del. Bankr. L.R. 9006-2.

prejudice to the Debtors' right to seek further extensions of the Exclusivity Periods, as may be appropriate under the circumstances.

## BASIS FOR RELIEF

12. Section 1121(b) of the Bankruptcy Code provides for an initial Exclusive Filing Period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a plan. Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the Exclusive Filing Period, it has an initial Exclusive Solicitation Period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such plan. Section 1121(d) of the Bankruptcy Code permits the Bankruptcy Court to extend the Exclusive Periods for "cause" and, for the reasons set forth herein, the Debtors believe that "cause" exists.

### A. Factors Considered by Courts in Determining Whether to Extend Exclusivity Periods for "Cause"

13. The Exclusive Periods are intended to afford a debtor the opportunity to propose a plan and to solicit acceptances of the plan without the deterioration of, and the disruption to, the debtor's business operations that might be caused by the filing of competing plans by third parties. Section 1121(d) of the Bankruptcy Code allows the Bankruptcy Court to extend the Exclusive Periods "for cause." Specifically, section 1121(d) of the Bankruptcy Code provides:

> (1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.
>
> (2) (A) The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
>
> (B) The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

14. It is well established that the decision to extend the Exclusive Periods is left to the sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances of the particular case.[5] *See First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986). Although the Bankruptcy Code does not define "cause" for purposes of extensions to Exclusive Periods, courts have looked to the legislative history of section 1121(d) of the Bankruptcy Code for guidance. *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996). Indeed, courts have found that Congress did not intend the 120- and 180-day periods to be a hard and fast rule. *See Amko Plastics*, 197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [Section 1121(d)] is flexibility."). Rather, Congress intended the Exclusive Periods to be of an adequate length, given the circumstances, for a debtor to formulate, negotiate, and draft a viable plan of reorganization, which by definition means one supported by some or all of a debtor's key constituents, without the disruption to its business that would occur with the filing of competing plans. *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business.").

---

[5] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") amended section 1121(d) of the Bankruptcy Code by prohibiting extensions of the Exclusive Filing Period and Exclusive Solicitation Period beyond eighteen (18) and twenty (20) months of the petition date, respectively, there was no revision to the standards for obtaining interim extensions. Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of these Chapter 11 Cases.

15. Courts have relied on each of the following factors, among others, in determining whether cause exists to extend the Exclusive Periods: (i) the size and complexity of the case; (ii) the necessity of sufficient time to negotiate and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) whether the debtor is paying its debts as they come due; (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress in negotiating with creditors; (vii) the length of time the case has been pending; (viii) whether the debtor is seeking the extension to pressure creditors; and (ix) whether unresolved contingencies exist. *See, e.g.*, *Cont'l Casualty Co. v. Burns & Roe Enters., Inc.*, 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); *In re Gibson*, 101 B.R. at 409-10 (E.D.N.Y. 1989); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re Grand Traverse Dev. Co. Ltd. P'ship*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); *In re Sw. Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987). The application of these factors to the facts and circumstances of these Chapter 11 Cases demonstrates that the requested extensions are both appropriate and necessary.

**B. Cause Exists for an Extension of the Exclusive Periods**

16. As described in the First Day Declaration, prior to the Petition Date, the Debtors diligently evaluated, in consultation with their advisors, their options to address the Debtors' looming liquidity issues. Given the lack of alternatives and the Debtors' defaults under the Prepetition Credit Facility, the Debtors focused their efforts on developing and implementing plans for long term operational and financial restructuring and a potential sale of the Debtors' assets. In the time after the Petition Date, the Debtors and their advisors focused their time and effort on consummating the Sale Transactions. Since the Closing Date, the Debtors filed the

Combined Disclosure Statement and Plan. The Debtors believe that it is in the best interest of their estates and all parties in interest for the Debtors to pursue confirmation of the Combined Disclosure Statement and Plan. Accordingly, the Debtors believe cause exists to grant the extension of the Exclusive Periods to ensure a successful emergence from bankruptcy without the distraction of competing, third-party chapter 11 plans.

17. Additionally, the Debtors believe that cause exists to extend the Exclusive Periods for the following reasons:

**a. The Size, Complexity, and Duration of these Chapter 11 Cases**

18. These Chapter 11 Cases are large in size and complex in nature. As described in more detail in the First Day Declaration, the Debtors were leading operators and franchisors of family-dining and casual-dining restaurants, under two (2) highly-recognized brands: (i) their full-service family dining restaurants under the name "Perkins Restaurant and Bakery" and (ii) their mid-priced, full-service casual-dining restaurants, specializing in the sale of pies and other bakery items, under the name "Marie Callender's Restaurant and Bakery". As of the Petition Date, the Prepetition Lenders were owed on account of the Prepetition Facility approximately (i) $14,541,010.00 in revolving loan principal obligations, including reimbursement obligations in the amount of approximately $8,541,010.00 in respect of face amount of outstanding letters of credit; (ii) $94,001,172.55 in term loan principal obligations, (iii) $6,304,256.59 in accrued and unpaid interest, (iv) $160,677.75 in respect of accrued and unpaid letters of credit fees and (v) $91,821.22 in respect of accrued and unpaid commitment fees. The Debtors' total net revenue from the year ended December 31, 2018 was approximately $335 million. Moreover, the Debtors filed these Chapter 11 Cases less than four (4) months ago, and this is the Debtors' first request for an extension of the Exclusive Periods.

19. Accordingly, the size, complexity, and length of the Chapter 11 Cases weighs in favor of granting an extension of the Exclusive Periods.

**b. The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

20. Given the progress that the Debtors have made in these Chapter 11 Cases and the ongoing negotiations and pending confirmation process, the Debtors believe that it is reasonable to request extensions of the Exclusive Periods. Granting the requested extensions will give the Debtors a full and fair opportunity to confirm a plan without the distraction, cost and delay of a competing plan process. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan. It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (citation and internal quotation marks omitted). Accordingly, the Debtors submit that this factor supports the relief requested.

**c. Good-Faith Progress Made in these Chapter 11 Cases**

21. The Debtors have made significant and material progress in these Chapter 11 Cases, all of which has culminated in the filing and prosecution of the Combined Disclosure Statement and Plan. The Debtors have worked diligently on a number of critical matters since the Petition Date in addition to the typical day-to-day obligations that debtors in possession face. Specifically, since the Petition Date, the Debtors have addressed several complex and/or contested issues, including but not limited to the following.

i. **Obtaining First Day Relief**. The Debtors stabilized their business operations through various operational first day motions and orders. This allowed them to, among other things, pay certain critical vendors and shippers, and continue using their cash management system.

ii. **Obtaining Debtor-in-Possession Financing**. The Debtors negotiated extensively with the Prepetition Lenders regarding entry into the DIP Facility, and the Court entered interim and final orders approving the DIP Facility.

iii. **Filing, and Responding to Inquiries Regarding Schedules of Assets and Liabilities and Statements of Financial Affairs**. The Debtors filed their schedules and statements after compiling information from books, records, and documents relating to claims, assets, and contracts of each Debtor and responded to inquiries regarding such schedules and statements, as appropriate.

iv. **Consummating a Sale of Substantially All of the Debtors' Assets.** On October 22, 2019, the Debtors closed the Sale Transactions and effectively ceased all operations.

v. **Obtaining Entry of the Disclosure Statement Order and Solicitation of the Plan**. On November 7, 2019, the Debtors obtained entry of the Disclosure Statement Order and, subsequently thereto, solicited votes to accept the Combined Disclosure Statement and Plan.

22. The Debtors continue to make good faith progress towards confirmation of the Combined Disclosure Statement and Plan. These good faith efforts and progress support an extension of the Exclusive Periods.

23. In addition, the Debtors have made significant efforts to resolve open issues regarding numerous matters in these Chapter 11 Cases with the U.S. Trustee, their creditor constituencies, and certain third parties. From in-person meetings to frequent telephone conferences, the Debtors and their advisors have maintained regular contact with such parties on material matters. Further, by filing revised versions of the Combined Disclosure Statement and Plan, the Debtors have attempted to address and resolve certain issues relating to certain outstanding comments from various parties. The Debtors' efforts to promote consensus further support the extension of the Exclusive Periods. *See, e.g.*, *In re MSR Resort Golf Course LLC*, No. 11-10372 (SHL) (Bankr. S.D.N.Y.), Hr'g Tr. Nov. 3, 2011, 377:2-8 (granting debtors' second exclusivity extension based, in part, on compromises reached between the debtors and their

stakeholders and concluding that the debtors' "good-faith progress is also evidenced by these settlements, which evidence . . . progress in trying to reach some consensus on the end game strategy in these cases, and the timing for such a strategy"); *In re Tribune Co.*, No. 08-13141 (KJC) (Bankr. D. Del.), Hr'g Tr. Dec. 7, 2009, 70:2-4 (extending exclusivity period based, in part, on the fact that "there are ongoing discussions, which may or may not result in a global resolution").

24. Consistent with their fiduciary duties, the Debtors will use the extended Exclusive Periods to confirm the Combined Disclosure Statement and Plan, or, if necessary, to continue to negotiate with all interested parties to reach an alternative resolution of these Chapter 11 Cases. The Debtors' substantial progress in negotiating with their creditors and administering their cases supports the extension of the Exclusive Periods.

**d. The Debtors are Paying Their Debts as They Come Due**

25. Extension of the Exclusive Periods will not prejudice the legitimate interests of postpetition creditors because the Debtors continue to make timely payments on their undisputed postpetition obligations. As such, this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

**e. The Debtors Are Not Seeking an Extension to Pressure Creditors**

26. Granting the requested extensions of the Exclusive Periods will not pressure the Debtors' creditor constituencies or grant the Debtors any unfair bargaining leverage. The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods. The Debtors have been in regular communication with creditors on numerous issues facing their estates, including the terms of any Combined Disclosure Statement and Plan, and have worked diligently in the prepetition and postpetition periods to maximize the value of their estates. The Debtors are not seeking an extension to pressure their creditors to take any action, but only to ensure that the Debtors can confirm a chapter 11 plan free from distraction.

**f. Termination of the Debtors' Exclusive Periods Would Adversely Impact the Chapter 11 Cases**

27. Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize the value of their estates and the progress of the Chapter 11 Cases. Such termination may disincentivize creditors from negotiating with the Debtors, and would certainly undermine the Debtors' efforts to successfully confirm a chapter 11 plan. Moreover, the proposal and solicitation of any competing plan could greatly complicate and increase the cost of administering the Chapter 11 Cases.

28. Based upon the foregoing, the Debtors respectfully submit that cause exists in these Chapter 11 Cases to extend the Exclusive Periods as requested herein.

**NOTICE**

29. The Debtors will serve notice of this Motion upon: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the lenders under the Debtors' postpetition debtor-in-possession financing; and (iv) all parties entitled to notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

**NO PRIOR REQUEST**

30. No prior request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, and grant such other and further relief the Court deems just and proper.

Dated: December 3, 2019
Wilmington, Delaware

*/s/ Sarah E. Silveira*

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Michael J. Merchant (No. 3854)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
Megan E. Kenney (No. 6426)
Sarah E. Silveira (No. 6580)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Scott L. Alberino (admitted *pro hac vice*)
Joanna Newdeck (admitted *pro hac vice*)
2001 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

-and-

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Gary A. Ritacco (*admitted pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Counsel to the Debtors and*
*Debtors in Possession*