**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>PERKINS & MARIE CALLENDER'S, LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>No. 19-11743 (KG)<br><br>Jointly Administered<br><br>Honorable John T. Dorsey |

**MOTION OF LIBERTY PROPERTY LIMITED PARTNERSHIP
FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSES
PURSUANT TO 11 U.S.C. § 503(b)(1)(A) AND 11 U.S.C. § 503(b)(9)**

Liberty Property Limited Partnership ("**Liberty**"), a creditor and party-in-interest, by its undersigned counsel, seeks allowance and payment of $151,949.78 in administrative expenses pursuant to 11 U.S.C. § 503(b)(1)(A) and 11 U.S.C. § 503(b)(9). In support of this Motion, Liberty respectfully represents as follows:

**JURISDICTION**

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory basis for the relief requested in this motion is 11 U.S.C. §§ 365(d)(5), 503(b) and 507.

---

[1] The Debtors, together with the last four digits of each Debtor's federal tax identification number, are: Perkins & Marie Callender's, LLC (2435); Perkins & Marie Callender's Holding, LLC (3381); Marie Callender Pie Shops, LLC (1620); MC Wholesalers, LLC (2420); PMCI Promotions LLC (7308); MCID, Inc. (2015); Wilshire Beverage, Inc. (5887); FIV, LLC (9288); P&MC's Real Estate Holding LLC (8553); and P&MC's Holding Corp. (2225).

4834-5980-8469.1   1

## BACKGROUND

2.   Liberty is a commercial real estate company that owns a warehouse in Ohio ("**Warehouse**") located at 6880 Fairfield Busines Center Drive, Fairfield, Ohio.

3.   The Debtors signed a 10-year lease with Liberty for the Warehouse on August 19, 1992. The two parties amended the lease three times. The lease and amendments are attached as **Exhibit A**.

4.   The lease requires the Debtors to maintain and repair the property. It states:

> "Tenant, at Tenant's expense, shall keep in good order, condition and repair (reasonable wear and tear excepted) the Demised Premises and every part thereof (whether or not the damaged portion of the Demised Premises or the means of repairing the same are reasonably or readily accessible to Tenant) **including, without limiting the generality of the foregoing, all plumbing, heating, ventilating and air conditioning systems**."

Lease, page 7, ¶ 7.2 (emphasis added).

5.   The Debtors also agreed to indemnify Liberty. The lease states:

> "**Tenant shall indemnify, defend and hold harmless Landlord from and against any and all claims**, demands, losses, expenses, damages, liabilities, fines, penalties, charges, **judgments,** remedial action requirements, enforcement actions of any kind, **and all reasonable costs and expenses (including, but not limited, to attorneys' reasonable fees)** including, without limitation, any claims relating directly or indirectly to Hazardous Materials, arising from Tenant's use of the Demised Premises, or from the conduct of Tenant's business or from any activity, work or things done, permitted or suffered by Tenant in or about the Demised Premises . . . and **shall further indemnify and hold harmless Landlord from and against any and all claims arising from any breach or default in the performance of any obligation on Tenant's part to be performed under the terms of this Lease, or arising from any act or omission of Tenant,** or any of Tenant's agents, contractors, invitees, or employees, and from and **against all reasonable costs, attorneys' fees, expenses and liabilities incurred in the defense of any such claim or any action or proceeding brought thereon; and in case any action or**

>       **proceeding be brought against Landlord by reason of any such claim**."

Lease, page 12, ¶ 8.8 (emphasis added).

6. The Warehouse is one of two facilities the Debtors used to manufacture goods to supply and sell to restaurants, supermarket in-store bakeries, and branded food companies.

7. Before the Debtors filed their bankruptcy petition, they contracted with Freije-RSC Engineered Solutions Company ("**Freije**") to repair the Warehouse. The Debtors did not inform Liberty about this contract.

8. On August 5, 2019, (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

9. Freije claims that it did not receive notice of the Debtors' bankruptcy.

10. Freije performed pre-petition repairs from around May 2019 to around August 2019. A July 17, 2019 invoice from Freije lists materials Freije delivered to the Debtors in the amount of $1,678.47. A copy is attached as **Exhibit B**.

11. Freije performed post-petition repairs and has invoices for this work from August 27, 2019 to September 12, 2019. These repairs total $150,271.31. These invoices are attached as **Exhibit C**.

12. On September 18, 2019, the Court entered the *Order (A) Approving and Authorizing Sale of Substantially All of the Debtors' Perkins Business Assets Free and Clear of All Liens, Claim, Encumbrances and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Related Relief* [Docket 306] (the "**Sale Order**").

13. The order references the Warehouse as one of the Debtors' facilities.

14. On October 24, 2019, the Debtors filed their *Notice of (I) Closing of Sales of Substantially All of the Debtors' Assets; and (II) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Cure Costs* [Docket 379] (the "**Notice**").

15. The Notice lists Liberty's contract as one of the assumed and assigned contracts in Exhibit B.

16. The Notice does not list any contracts with Freije. Freije claims that it did not receive notice of the sale.

17. On October 4, 2019, Freije filed mechanics' liens on the Warehouse. Copies of the liens' affidavits are attached as **Exhibit D**.

18. Liberty received notice of the Debtors' contract for repairs with Freije around October 29, 2020 when it received Freije's demand letter. A copy of the letter is attached as **Exhibit E**.

19. The Debtors incurred administrative expenses from Freije's post-petition repairs and by accepting goods from Freije within 20 days of filing their petitions.

20. Liberty is entitled compensation for these administrative expenses which consist of the equipment the Debtors received and the costs of the Warehouse repairs.

## RELIEF REQUESTED

21. By this Motion, Liberty seeks the entry of an order pursuant to 11 U.S.C. § 503(b)(9) and 11 U.S.C. § 503(b)(1)(A) allowing and directing payment of these administrative expenses.

22. Section 503(b)(1)(A) of the Bankruptcy Code provides administrative expense priority for "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

23. As stated above, the Debtors used the Warehouse to supply and sell to restaurants, supermarket in-store bakeries and branded food companies. Freije repaired the HVAC system at the Warehouse and replaced old or malfunctioning parts. Freije improved the estate by replacing condensers and oil pumps, calibrating ammonia sensors, replacing fan motors, installing a new motor and belts, and completing oil changes on a compressor. *See* Exhibit C. The repairs and materials were necessary because they allowed the Debtors to continue to use the Warehouse to distribute items to its restaurants. As a result, these repairs were beneficial to the estate and should be allowed as administrative expense claims.

24. Section 503(b)(9) of the Bankruptcy Code provides administrative expense priority for "the value of any goods received by the debtor within 20 days before the commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of business." 11 U.S.C. § 503(b)(9).

25. As set forth above, Freije provided equipment that the Debtors needed for pusposes of repairing the HVAC system at the Warehouse. The equipment was delivered by Freije to the Debtors at their Warehouse within the 20-day period prior to the Petition Date. *See* Exhibit B. The Debtor received this equipment in the ordinary course of its business and to fulfill its obligations under its lease with Liberty. Accordingly, the 503(b)(9) claim is properly characterized as an administrative expense and Liberty is entitled its allowance.

26. The deadline to object to the cure amount was September 12, 2019. Liberty did not include the amount owed to Freije in its cure claim because it was not aware of the contract between Freije and the Debtors. Liberty became aware of the contract when it received the demand letter from Freije on or about October 29, 2020.

27. The lease requires that the Debtors pay for labor and materials used to maintain the Warehouse. *See* Lease at Exhibit A, page 7, ¶ 7.2. It also requires that they indemnify Liberty and reimburse it for the costs of defending these types of claims. *Id.*, page 12, ¶ 8.8. Freije alleges that it did not have notice of the Debtors' bankruptcy. It is attempting now to collect on this contract from Liberty and has filed a mechanics lien foreclosure action on the property due to the Debtors failure to pay for the labor and equipment that was provided by Freije pursuant to its contract with the Debtors..

28. The Court should allow Liberty's request for payment of an administrative expense claim so it can reimburse Freije and seek dismissal of the mechanics lien foreclosure proceeding or order the Debtors to pay Freije directly pursuant to the terms of the contract.

## NOTICE

29. Notice of this Motion will be provided (A) by electronic mail and/or hand delivery to: (i) counsel to the Debtors; (ii) the United States Trustee; (iii) counsel to the Official Committee of Unsecured Creditors; and (iv) counsel to the Buyer under the Sale Order; and (B) by ECF generated notice to all other parties that have requested notice pursuant to Bankruptcy Rule 2002. Considering the nature of the relief requested herein, Liberty submits that no other or further notice is necessary.

## CONCLUSION

30. Liberty respectfully requests that the Court enter an Order, substantially in the form attached hereto, allowing the $151,949.78 claim for administrative expenses, authorizing and directing the Debtors to pay the same, and for such other and further relief as is just and proper.

Dated: December 23, 2020
Wilmington, Delaware

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

*/s/ Cheneise V. Wright*
Francis G.X. Pileggi (No. 2624)
Cheneise V. Wright (No. 6597)
500 Delaware Avenue, Suite 720
Wilmington, Delaware 19801
Tel.: 302.985.6000
Francis.Pileggi@lewisbrisbois.com
Cheneise.Wright@lewisbrisbois.com

4834-5980-8469.1   7

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 23rd day of December, a copy of the foregoing document was served upon counsel of record via CM/ECF.

*/s/ Cheneise V. Wright*
Cheneise V. Wright
Del. Bar No. 6597
