IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Pancakes & Pies, LLC[1] | Case No. 19-11743 (JTD) |
| Post-Effective Date Debtor. | Hearing Date: Nov. 10, 2021 at 1:00 p.m. (ET)<br>Objection Deadline: Nov. 1, 2021 at 4:00 p.m. (ET) |

**MOTION OF THE PLAN ADMINISTRATOR FOR ENTRY OF AN ORDER
PURSUANT TO BANKRUPTCY RULE 2004 AND LOCAL RULE 2004-1
DIRECTING THE PRODUCTION OF DOCUMENTS BY
<u>UNITED HEALTHCARE SERVICES, INC.</u>**

MorrisAnderson & Associates, Ltd., as plan administrator (the "**Plan Administrator**") for the Chapter 11 Plan of Liquidation of the above-captioned debtor and debtor in possession (the "**Debtors**" and, from and after the Effective Date (as defined herein), the "**Post-Effective Date Debtor**"), by and through its undersigned counsel, hereby submits this motion (the "**Motion**"), pursuant to section 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "**Proposed Order**"), directing United Healthcare Services, Inc. ("**United Healthcare**") to produce certain records and documents or things within its possession, custody or control that relate to payments made by the Debtors[2] under the Debtors' Medical Plans

---

[1] The Post-Effective Date Debtor is and the last four digits of its taxpayer identification number are Pancakes and Pies, LLC (2435). The mailing address for the Post-Effective Date Debtor is Pancakes & Pies, LLC c/o MorrisAnderson & Associates, Ltd., 55 West Monroe Street, Suite 2350, Chicago, Illinois 60603.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the *Debtors' Combined Disclosure Statement and Chapter 11 Plan of Liquidation* [Docket No. 562-1] (the "**Combined Disclosure Statement and Plan**").

(as defined herein), as more fully set forth in the document request attached hereto as **Exhibit B** (the "**2004 Document Requests**"), by no later than thirty (30) days from the entry of the Proposed Order. In further support of the Motion, the Plan Administrator respectfully states as follows:

## INTRODUCTION

1. Prior to and during the Chapter 11 Cases, the Debtors offered eligible employees the ability to participate in benefits and health care plans, including, but not limited to, medical insurance and prescription drug coverage (the "**Medical Plans**"). The Medical Plans were "self-funded" plans, such that the Debtors cut out the insurance company and paid benefits directly from company money thereby saving on premiums that they otherwise would have paid to an insurance company.

2. The Debtors hired United Healthcare under an Administrative Services Agreement (the "**ASA**"), attached hereto as **Exhibit C**, as "third party administrator" to manage and administer the Medical Plans. Among other things, pursuant to the ASA, United Healthcare, in its discretion, decided which claims to approve and what benefits to pay, based on its assessment of whether a claim satisfied the terms of the Medical Plans. *See* ASA, Ex. A, § E. If United Healthcare approved a claim, then it paid benefits to various healthcare and pharmaceutical providers (collectively, the "**Providers**") using money that was reimbursed by the Debtor. In exchange for these services, the Debtors paid United Healthcare a monthly servicing fee. *See* ASA, Ex. B. As the administrator, United Healthcare is in possession of the books and records related to the Medical Plans, including information about what benefits were paid to which Providers, how much, and why. *See* ASA, § 10.

3. Under the Medical Plans, United Healthcare paid the covered employee's healthcare costs directly to the Providers (other than any required deductible or similar payment)

from a network of bank accounts maintained by United Healthcare on behalf of its customers and then sought reimbursement from the Debtors on a weekly basis (the "**Health Benefit Claims**"). *See* ASA, § 7.4.  The Debtors then paid United Healthcare each week on account of the previous week's Health Benefit Claims.  *See* ASA, § 7.7.  Upon information and belief, in the years prior to bankruptcy, the Debtors (under United Healthcare's management) paid approximately $9 million in benefits per year on account of Health Benefit Claims.

4. The Plan Administrator believes that the Debtors may have overpaid certain Providers on account of claims and benefits under the Medical Plans.  The Plan Administrator wishes to pursue and recover these potential overpayment claims for the benefit of the Debtors' estate, but it is not in possession of documents that could substantiate such claims.  Those documents are in United Healthcare's possession.

5. Thus, the Plan Administrator requested that United Healthcare voluntarily turn over certain records documenting benefits payments to, or rebates received from, Providers under the Medical Plans so that the Plan Administrator could review these documents and determine if there were overpayments to the Providers, and if so, pursue such claims against the Providers.  Unfortunately, after a number of email and telephone requests over the course of several months[3], United Healthcare has refused to produce any records, documents, or information related to the Medical Plans.[4]  As a result, the Plan Administrator and its advisors have been prevented from obtaining the documents necessary to meaningfully analyze potential claims related to

---

[3] For further information, see the Local Rule 2004-1 Certification attached hereto as **Exhibit D**.

[4] United Healthcare has asserted that the rights to audit such records terminated along with the ASA. However, the ASA is wholly irrelevant to this Motion because the Plan Administrator is not seeking an audit under the ASA or seeking production of documents pursuant to the ASA.  Rather, by this Motion, the Plan Administrator is seeking production of the documents pursuant to Bankruptcy Rule 2004 as detailed herein.

overpayments made to Providers – the recovery of which will maximize the value of the Debtors' assets for the ultimate benefit of certain of the Debtors' creditors.

6. Accordingly, the Plan Administrator requests the production of documents as set forth in **Exhibit B** relevant to the Medical Plans, which can be summarized as follows: the patient's name and claim number; the date and place of service; the name, address, and identification numbers of the applicable healthcare provider; the diagnosis codes; the total charge, eligible amount, ineligible amount, and deductible; any co-insurance amounts; the amount paid; the check numbers; and similar data.[5] In other words, it is the basic accounting and financial records for the Medical Plans for all claims exceeding the amount of $5,000.00 during the time period of August 5, 2015 through and including August 4, 2019. The Plan Administrator submits that it has shown good cause to support this Bankruptcy Rule 2004 request.

## JURISDICTION

7. The United States Bankruptcy Court for the District of Delaware (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, and paragraph 25 of the Confirmation Order (as defined herein).

8. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and pursuant to Local Rule 9013-1(f), the Plan Administrator consents to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

---

[5] The Plan Administrator and its professionals are prepared to enter into appropriate confidentiality agreements to the extent necessary to comply with applicable non-bankruptcy law with respect to this information.

9.   Venue of the Chapter 11 Cases and this Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

10.   On August 5, 2019 (the "**Petition Date**"), the above-captioned Debtor and certain of its affiliates each filed a voluntary petition in this Court commencing the Chapter 11 Cases.

11.   On January 14, 2020, the Court entered the *Order (I) Approving the Debtors' Combined Disclosure Statement and Plan on a Final Basis and (II) Confirming the Debtors' Combined Disclosure Statement and Plan* [Docket No. 562] (the "**Confirmation Order**") approving the Combined Plan and Disclosure Statement on a final basis. The effective date of the Combined Disclosure Statement and Plan occurred on January 28, 2020 (the "**Effective Date**"). *See Notice of Effective Date and Entry of Order Confirming the Debtors' Combined Disclosure Statement and Plan* [Docket No. 590].

12.   The Confirmation Order appointed MorrisAnderson & Associates, Ltd. as the Plan Administrator. The Plan Administrator's purpose is to "liquidate and convert to Cash any of the Administered Assets which are not in the form of Cash as of the Effective Date, make timely Distributions in accordance with [the Plan Administrator Agreement] and with the Plan, and not unduly prolong the administration of the Administered Assets." *Plan Administrator Agreement* § 1.2 [Docket No. 560]. The Plan Administrator has authority to, among other things, "assert any of the Debtors' claims, Causes of Action, rights of setoff, or other legal or equitable defenses." *Combined Plan and Disclosure Statement*, Article IX.B.

13.   The Post-Effective Date Debtor is the same entity as the pre-Effective Date Debtor Pancakes & Pies, LLC (f/k/a Perkins & Marie Callender's) with the only difference being that the Plan Administrator became the sole interest holder of Pancakes & Pies, LLC (f/k/a Perkins &

Marie Callender's, LLC) on the Effective Date. *See* Confirmation Order ¶ 13. Pursuant to the Plan Administrator Agreement, the Plan Administrator is authorized to manage and conduct the business of the Debtors and Post-Effective Date Debtor(s). Plan Administrator Agreement [D.I. 560-1], § 1.2.

## RELIEF REQUESTED

14. The Plan Administrator requests entry of the Proposed Order attached hereto as **Exhibit A** directing United Healthcare to produce the documents requested in the 2004 Document Requests as set forth on **Exhibit B**.

15. Pursuant to Bankruptcy Rule 2004, United Healthcare should be directed to produce, at the office of the Plan Administrator's attorney, Cousins Law LLC, 1521 Concord Pike, Suite 301, Wilmington, Delaware 19803, all documents described in the 2004 Document Requests for examination and copying. Production of the documents requested should be required within thirty (30) days from the entry of the Proposed Order.

16. The Plan Administrator reserves its right to seek additional documents based on any information that may be revealed as a result of the 2004 Document Requests.

## BASIS FOR RELIEF REQUESTED

17. The Plan Administrator believes that United Healthcare possesses vital information relating to "acts, conduct, or property or to the liabilities and financial condition of the [D]ebtors" and to matters that "affect the administration of the [D]ebtors' estate[s]." Fed. R. Bankr. P. 2004(b).

18. The Plan Administrator believes that the facts and circumstances outlined *supra* demonstrate that good cause exists to pursue the requested 2004 discovery. The 2004 Document Requests are intended to provide a more complete picture and will provide the Plan Administrator

with the requisite facts needed to determine whether potential causes of action exist against United Healthcare and/or the Providers.

19.  Bankruptcy Rule 2004 grants the Court broad authority to order examinations and the production of documents.  "Rule 2004 is the basic discovery device in bankruptcy cases." Lawrence P. King, et al., 9 Collier on Bankruptcy, ¶ 2004.01[1], at 2004-3 (15th ed. 2003). Bankruptcy Rule 2004 provides in relevant part:

> (a)  Examination on Motion.  On motion of any party in interest, the court may order the examination of any entity.
>
> (b)  Scope of Examination.  The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.
>
> (c)  Compelling Attendance and Production of Documentary Evidence.  The attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

Fed. R. Bankr. P. 2004(b).

20.  The purpose of a Bankruptcy Rule 2004 examination is to assist a party in interest in determining the nature and extent of the bankruptcy estate, revealing assets and examining transactions. *See In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996).  Its objective is "'to show the condition of the estate and to enable the court to discover its extent and whereabouts and to come into possession of it that the rights of creditors may be preserved.'" *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (*citing Cameron v. United States*, 231 U.S. 710, 717 (1914)).  Additionally, bankruptcy courts retain jurisdiction to hear and consider post-confirmation Rule 2004 motions. *See, e.g., In re Millennium Lab Holdings II, LLC*, 562 B.R. 614, 625 ("The Court's subject matter jurisdiction over the Rule 2004 Motion stems from

the fact that it is a proceeding that 'arises in' title 11 of the Bankruptcy Code (*i.e.* it is a core proceeding)").

21. Bankruptcy Rule 2004 is frequently employed by debtors who seek to compel discovery of information maintained by creditors or third parties where such information is critical to the effective administration of the estate and its assets. *See, e.g., In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 354 n.6 (3d Cir. 2007) (discussing debtors' use of Bankruptcy Rule 2004 to conduct discovery concerning possibility of bringing claims against debtors' former parent company); *In re Analytical Sys., Inc.*, 71 B.R. 408, 413 (Bankr. N.D. Ga. 1987) (granting debtor's motion to compel discovery of information maintained by creditor and examination of creditor's officers, directors or managing agents pursuant to Rule 2004).

22. In accordance with this aforementioned purpose, courts have consistently emphasized that the scope of Bankruptcy Rule 2004 is extremely broad—broader than discovery permitted under the Federal Rules of Civil Procedure—and that it may properly be in the nature of a "fishing expedition." *See, e.g., In re Szadkowski*, 198 B.R. 140, 141 (Bankr. D. M.D. 1996) ("Discovery under Rule 2004 serves a far different purpose than discovery propounded under the Federal Rules of Civil Procedure. A Rule 2004 examination allows a broad 'fishing expedition' into an entity's affairs for the purpose of obtaining information relevant to the administration of the bankruptcy estate") (*citing In re M4 Enters., Inc.*, 190 B.R. 471, 474 (Bankr. N.D. Ga. 1995)); *In re Wash. Mut., Inc.*, 408 B.R. 45, 49-50 (Bankr. D. Del. 2009) (noting that a "Rule 2004 examination is commonly recognized as more in the nature of a fishing expedition") (internal citations and quotations omitted); *In re Ecam Publ'ns, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991) ("Discovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure. In fact, the scope of a Rule 2004 examination is so broad that it can be in the nature of

a 'fishing expedition'") (*citing In re Drexel Burnham Lambert Group*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991)); *see also* 9 Lawrence P. King, et al., 9 *Collier on Bankruptcy*, ¶ 2004.02[1], at 2004-06 (15th ed. 2003) ("The scope of Rule 2004(b) is very broad").

23.  Additionally, "[b]ecause the purpose of Rule 2004 investigation is to aid in the discovery of assets, any third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." *In re Ionosphere Clubs*, 156 B.R. at 432. A party seeking authority to use Bankruptcy Rule 2004 must establish "good cause" for the relief requested. *See, e.g., In re Eagle-Picher Indus., Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) ("[t]he one seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks.").

24.  Good cause exists to conduct the proposed discovery. This Motion and the relief requested herein falls squarely within the scope of Bankruptcy Rule 2004 because it relates to issues affecting potential assets of the Debtors, and thus, the administration of the Debtors' estates. Specifically, United Healthcare managed and administered the Debtors' Medical Plans, including reviewing, assessing, and determining which claims are payable under the Medical Plans. *See* ASA, Ex. A, § E.

25.  As the administrator of the Medical Plans, United Healthcare determined those benefits on the Debtors' behalf. It decided what benefits to pay using the Debtors' money. To the extent claims benefits were materially overpaid to Providers, the Plan Administrator intends to recover such amounts in order to maximize value of the Debtors' estates and, consequently, recoveries available to certain creditors.

26.  The only reason why the Post-Effective Date Debtor and the Plan Administrator, do not already have this information is because the Debtor and its affiliates hired and paid United

Healthcare to manage the Medical Plans as a third-party administrator.  Thus, United Healthcare – being the sole custodian of documents and records that could maximize the value of the Debtors' estates – should be required to produce documents responsive to the 2004 Document Requests. *See* ASA, § 10.1.

27.     Accordingly, the Court should compel United Healthcare to produce the requested documents attached hereto as **Exhibit B** pursuant to Bankruptcy Rule 2004.

### CERTIFICATION UNDER LOCAL RULE 2004-1

28.     The undersigned counsel certifies that he and the Plan Administrator have conferred multiple times through email with United Healthcare and its outside counsel in an attempt to resolve this issue.  For further, see Local Rule 2004-1 Certification attached hereto as **Exhibit D**.

### NOTICE

29.     The Plan Administrator will serve this Motion on: (i) the United States Trustee; (ii) the Liquidating Trustee; (iii) United Healthcare; and (iv) any party entitled to receive notice pursuant to Bankruptcy Rule 2002 in accordance with paragraph 24 of the Confirmation Order.

*[Remainder of page left intentionally blank]*

WHEREFORE the Plan Administrator respectfully requests entry of an order, substantially in the form attached as **Exhibit A** hereto, (i) authorizing the Plan Administrator to issue a subpoena directing the production of documents from United Healthcare, and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: October 18, 2021
Wilmington, Delaware

/s/ *Scott D. Cousins*
Scott D. Cousins (No. 3079)
Scott D. Jones (No. 6672)
**COUSINS LAW LLC**
Brandywine Plaza West
1521 Concord Pike, Suite 301
Wilmington, Delaware 19803
Telephone:    (302) 824-7081
Facsimile:    (302) 295-0331
Email:    scott.cousins@cousins-law.com
    scott.jones@cousins-law.com

*Counsel to the Plan Administrator*